1  ELEONORA DE GRAY
2  23/25 RUE JEAN JACQUES ROUSSEAU
   75001 PARIS, FRANCE
   Phone : +33660329401
3  Email : infodegray@gmail.com

FILED
CLERK, U.S. DISTRICT COURT
10/16/2019
CENTRAL DISTRICT OF CALIFORNIA
BY:____CW____ DEPUTY

4

5

6                  UNITED STATES DISTRICT COURT

7                  CENTRAL DISTRICT OF CALIFORNIA

8

9

10 RUNWAY TV, LLC.                    )   Case No.: 2:18-CV-02503-FMO (JCx)
                                      )
11                        Plaintiff   )   DEFENDANT'S NOTICE OF MOTION
                                      )   AND MOTION TO DISMISS FOR LACK
12      vs.                           )   OF MERIT AND MALICIOUS
                                      )   PROSECUTION
13 ELEONORA DE GRAY, A French citizen )
                                      )   Hearing Date: November 14, 2019
18 And DOES 1-10, INCLUSIVE, EURL     )   Time: 10:00 AM
                                      )   Hon. Fernando M. Olguin Presiding
15 ELEONORA DE GRAY                   )
                          Defendant   )
16                                    )
                                      )
18  _                                 )
                                      )
18 Court: California Central District Court )
   Referring Judge: Jacqueline Chooljian )
19 Presiding Judge: Fernando M. Olguin )
                                      )
20                                    )

21

22

23

24

25

26

27

28

                              - 1 -

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF
MERIT AND MALICIOUS PROSECUTION

TO THE HONORABLE COURT AND ALL PARTIES:

NOTICE IS HEREBY GIVEN that Defendant ELEONORA DE GRAY, French citizen, resident of France would like to move this Court for an Order to dismiss this claim for the lack of merit and malicious prosecution for both Defendants. This motion based on the grounds:

- Plaintiff (general manager of RUNWAY TV LLC, RUNWAY BEAUTY LLC Vincent Mazzotta aka Vincent Midnight) submitted false facts about his activities, his relation / association to the name RUNWAY / RUNWAY MAGAZINE, distribution channels, beginning of his activities under name RUNWAY or RUNWAY MAGAZINE, numbers of online distributions etc. Plaintiff actively advertises on his web-sites and social media networks local porno activities, porno related events, XXX awards, porno models and actresses, "dating sex x one-night stand" web-sites (networks related to prostitution), porno web-sites, drugs (opioids). In addition Plaintiff participates in felonies in cryptocurrency exchange (bitcoin) together with his partners.

- Plaintiff presented to this Court a license contract, which was used as a part of felony organized by Mr Mazzotta and his associate Mr Buccelli convicted for 3 years in Federal Prison for identity theft, felony and fraud. Mr Mazzotta proposed this contract for 3 months in April 2014 during the negotiation of "investment" with hope that Defendant cancels her registered in France trademarks, which prevented Mr Mazzotta to register his trademark RUNWAY in Europe. Contract never had any legal bond, as it was not sign by Mr Mazzotta until April 2017. In addition contract DOES NOT HAVE and NEVER HAD any mediators clauses and signatures on the contract – legal witnesses (mostly attorneys) from both sides, who sign the contract to confirm the legal bond, to prevent felonies, and false complaints

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF MERIT AND MALICIOUS PROSECUTION

like this one. Mediators, legal witnesses, confirming legal bond between two parties, are obligatory for license contracts in US and Europe.

– Plaintiff uses Federal Courts to obtain intellectual property assets of different individuals outside of US. He files frivolous claims without merit based on false facts as he has possesory interest and uses Court to obtain these assets. Complaint filed in this Court March 28, 2018 against Mrs de Gray is a third claim. Plaintiff is not seeking for relief, but uses it as a way to harm Defendant, emotionally and financially, damage her business activities by removing her online presence – her web-site www.RUNWAYMAGAZINES.com and her accounts on social media networks.

– Plaintiff uses this Court proceeding / discovery rules to obtain lists of Defendant's clients and partners in Europe, intellectual property assets (copyrighted materials) produced in Europe, Defendant's "victim's testimony" in criminal case Mr Mazzotta's associate Mr James Buccelli submitted to French Police and transferred to LAPD for appropriate actions. In addition Plaintiff uses discovery as a tool to admit things that never happen and produce documents which never existed to support his claim.

– Multiple abusive actions, intentional torts, by definition, related to malicious prosecution has been already submitted to this Court. Sabotage and financial damages to Defendant's health and business caused by Plaintiff and Mr Goldstein recent actions. Mr Goldstein, knowing that Defendant urgently is looking for an attorney to represent her company, and obviously needs time and financial sources, orchestrated filing false claim (based on false facts) by Plaintiff September 11, 2019, right after this Court Order granted service of the complaint, to GoDaddy (hosting provider) under penalties of perjury for trademark infringement directed to damage and / or destroy Defendant's

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF MERIT AND MALICIOUS PROSECUTION

web-site www.RUNWAYMAGAZINES.com, vital for her business activities. September 20, 2019, while Defendant was at scheduled trip to Milan, Italy, her web-site was disabled, which caused serious financial damages to Defendant's business, and put Defendant in very difficult financial situation. For 2 days web-site was down, and it took 10 days to restore it. At the same time September 20, 2019 Mr Goldstein filed abusive Motion to Compel without knowledge of Defendant, putting even higher stress of the Defendant by sending multiple repeated emails with attachments she couldn't open or read. Defendant experienced pain in chest, heavy and fast heart bit, and fainted. She couldn't have instant medical help, as she doesn't own medical insurance in Italy. Heart pain, weakness continues until today, longer than 3 weeks. Financial losses, related only to restoration of the web-site are approximately 10,000 $, which Defendant is still owe to her employees, and not able to pay instantly. In addition to Defendant was not able to conduct business or sign any contract during one of the most important period of the year. Defendant lost multiple clients she hoped to have during her trip to Milan. Defendant had to cancel almost all her scheduled appointments in Paris, at her return from September 26, 2019-October 1, 2019 due to her health problems, and urgent filing an Opposition to Motion to Compel, to inform this Court about all malicious prosecution actions taken by Plaintiff and Mr Goldstein against her and her business. Mr Goldstein calculated very well all these actions, with knowledge about that these actions will seriously damage business and financial situation of Defendant, and Defendant won't be able to afford an attorney, even for the limited appearance. Perpetrators, Plaintiff and his attorney, uses this Court to harass victim, Defendant in this case, damage her business, as the courts are often the only tool left for abusers seeking to traumatize victims.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF MERIT AND MALICIOUS PROSECUTION

Defendant PLEADING for a special Order and protection against intentional torts of Mr Goldstein and Plaintiff, which caused health problems of Defendant, and put Defendant in very difficult financial situation, and heavily damaged her business. Historically, judges have had the power to fight back against vexatious litigation. Federal courts have allowed judges to "discipline" parties who file "frivolous or improper claims" for the purpose of "deter the abusive conduct," according to the 2011 Seattle Journal paper. Courts can also bar someone who continues to file frivolous suits from making new claims against the same person / business entity, according to a 1986 study on "frivolous litigation" written by John W. Wade.

This Motion to dismiss based on Memorandum of points and authorities, concurrently submitted with Declaration of Defendant, and exhibits.

Respectfully submitted,
DATED: October 16, 2019
By: Eleonora de Gray

— 5 —

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF MERIT AND MALICIOUS PROSECUTION

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant Eleonora de Gray submits this brief in support of her Motion to Dismiss for lack of merit and malicious prosecution (intentional tort), and moves this Court to grant this Motion, special Order penalizing and / or sanctioning Plaintiff to protect Defendant against abusive actions and malicious prosecutions organized by Plaintiff and his attorneys, to prevent business of Defendant from complete damage, and financial loses, financial debts, and serious health problems. This Motion is based on Memorandum of points and authorities, concurrently submitted with Declaration of Defendant, and exhibits.

**INTRODUCTION**

This case raised in this Court for "breach" of a Trademark licensing agreement, WHICH NEVER EXISTED, frivolously filed by Mr Goldstein on behalf of Plaintiff March 28, 2018. This complaint was completely meritless, as Mr Vincent Mazzotta aka Vincent Midnight, general manager of RUNWAY TV LLC, and RUNWAY BEAUTY LLC (Plaintiff) knew that when he filed it. As the license contract presented to this Court, as grounds for jurisdiction, dated April 1, 2014, never created a legal bond or ground for Jurisdiction in this Court, as it was not signed by Plaintiff until April 2017, contract has no legal witnesses signatures on it (Mediators), not from the side of Plaintiff, not from the side of the Defendant, obligatory to prevent from this kind of false accusations and meritless complaints. Trademarks of Defendant registered in France in November 2013 and related to her activities since 1995, active business locally started in 2004, first use in international commerce since 2007. The information provided in this complaint is false, allegations were not supported by any material evidence.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF MERIT AND MALICIOUS PROSECUTION

Mr Goldstein presented false image of Plaintiff. He presented him as a producer of high-end fashion magazine "RUNWAY MAGAZINE", and his business activities in designing, advertising, marketing, publishing, distributing, selling and/or offering for sale these editions. He claimed that name RUWNAY MAGAZINE associated with the name of Mr Mazzotta, as he distributes to millions in print and online his editions. Defendant already submitted several facts / evidence that this name never associated with Mr Mazzotta and his associates, as his production does not exist in print, and his online editions have very little number of downloads. In addition Mr Goldstein disregarded the fact that due to an agreement with associate Mr James Buccelli (convicted in March 2016 for identity theft, felony and fraud for 3 years in Federal Prison), already submitted to this Court, Mr Mazzotta entitled to use name RUNWAY and Mr Buccelli RUNWAY MAGAZINE. Due to this agreement USPTO issued to Mr Mazzotta CEASE AND DESIST ORDER in 2015 for the use of the name RUNWAY MAGAZINE. And this Order was never respected by Mr Mazzotta, as he continues to use RUNWAY MAGAZINE in his web-sites and social media networks. He continues his partnership with Mr Buccelli until today, according to public posts, emails addressed to Defendant, submitted to this Court. Activities of Mr Mazzotta are not related to  designing, advertising, marketing, publishing, distributing, selling and/or offering for sale high-end editions, as Mr Goldstein presented it. They are related to the production of online editions in pdf, and distributed on "print-on-demand" web-sites like Magzter.com and Magcoud.com. Plaintiff actively advertises on his web-sites and social media networks local porno activities, porno related events, XXX awards, porno models and actresses, "dating sex x one-night stand" web-sites (networks related to prostitution), porno web-sites, drugs (opioids). In addition Mr Mazzotta participates in felonies in cryptocurrency exchange (bitcoin) together with his another partner Mr David Saffron, who has several complaints filed against him,

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF MERIT AND MALICIOUS PROSECUTION

who has been arrested in January, 2018. Mr Mazzotta announces Mr Saffron in his online editions as FINANCIAL DIRECTOR.

Mr Goldstein presented to this Court trademarks of Mr Mazzotta which are expired or trademarks Mr Mazzotta has possesory interest, as Mr Goldstein already admitted in his filings, and already noted by this Court, Mr Mazzotta doesn't own trademark RUNWAY MAGAZINE®. He tried to confuse this Court about the ownership of Defendant – RUNWAY MAGAZINE® trademarks since November 2013, which are not related to Mr Mazzotta or his associate Mr Buccelli, or any other associates of Mr Mazzotta.

Plaintiff uses this Court proceeding / discovery rules (abuse of process) to obtain lists of Defendant's clients and partners in Europe, intellectual property assets (copyrighted materials) produced in Europe, Defendant's "victim's testimony" related to criminal case of Mr James Buccelli submitted to French Police and transferred to LAPD for appropriate actions. Perpetrators, Plaintiff and his attorney, uses this Court to harass victim, Defendant in this case, damage her business, and trying to obtain her domains and / or social media accounts. Multiple abusive actions, intentional torts, by definition, related to malicious prosecution has been already submitted to this Court. Sabotage and financial damages to Defendant's health and business caused by Plaintiff and Mr Goldstein recent actions. This complaint Mr Goldstein designed for malicious prosecution during this process against Defendant, to damage and destroy Defendant's intellectual property assets, vitals of her business activities, displayed on web-site www.RUNWAYMAGAZINES.com and multiple social media accounts. Defendant already provided the evidence to this Court conforming multiple abusive actions against her intellectual property assets, and possesory interest to her trademarks, web-site and social media accounts, her another business entity

– 8 –

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF MERIT AND MALICIOUS PROSECUTION

OFFICIAL RUNWAY MAGAZINE, and abusive actions to obtain them during this proceeding.

## I. CASE HISTORY

This case raised in this Court for "breach" of a Trademark licensing agreement, WHICH NEVER EXISTED, frivolously filed by Mr Goldstein on behalf of Plaintiff March 28, 2018. This complaint was completely meritless, as Plaintiff knew that when he filed it. It was designed to damage business of Defendant, and obtain her intellectual properties: trademarks in France, domain www.RUNWAYMAGAZINES.com, social media accounts.

The license contract presented to this Court, as grounds for jurisdiction, dated April 1, 2014, never created a legal bond or ground for Jurisdiction in this Court, as it was not signed by Plaintiff until April 2017, contract has no legal witnesses signatures on it (Mediators), not from the side of Plaintiff, not from the side of the Defendant, obligatory to prevent from this kind of false accusations and meritless complaints.

Defendant filed Motion to Dismiss with material evidence, trademarks registrations before April 2014 – November 2013, and additional facts related to merit of this complaint.

Mr Goldstein showed bad faith in serving of original complaint on Defendants, based in Paris France, outside of Federal Jurisdiction of this Court.

This Court issued Order July 16, 2018 to grant Motion to Dismiss for lack of Jurisdiction. This Order was issued with leave to amend if Plaintiff was able to cure the alleged deficiencies and defects in the original complaint, as well as the other relevant defects alleged in Defendants Motion to Dismiss.

Plaintiff filed First Amended Complaint July 30, 2018 in bad faith. All alleged deficiencies and defects in the original complaint has not been cured, all relevant

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF MERIT AND MALICIOUS PROSECUTION

defects in Defendants Motion to Dismiss was ignored, and all false facts and groundless statements were resubmitted from original complaint.

First Amended Complaint showed futility of amendment. Plaintiff fails to state any substantive facts, which would give merit to this complaint.

Mr Goldstein resubmitted all allegations without any evidence and false facts, and by these actions he abused privileged to amend the complaint, revoking futility doctrine. Mr Goldstein demanded jurisdiction over Defendants based on partnership contract between Mr Mazzotta and Mr Buccelli, convicted for identity theft felony and fraud for 3 years in Federal Prison in March 2016, and exchange of intellectual property assets.

Additionally Mr Goldstein abused the process : The First Amended Complaint has been distributed on social media networks on public posts, sent to social media networks with request to remove social accounts of Defendant from these networks (Issue.com, LinkedIn, GoDaddy etc).

Defendant submitted to this Court Motion to Strike August 09, 2018 and 2 Addendum, as foul play of Mr Goldstein in service of original complaint unfolded. Mr Goldstein submitted August 28, 2018 abusive requests for admissions and identification, and production of documents and things, which included request to collect all copyrighted materials from 2012, and transfer of all confidential contracts for distribution and partnership in Europe since 2012 from Defendant, who is based outside of Federal Jurisdiction – Paris, France, "victim testimony" for criminal case of Mr Buccelli, associate of Mr Mazzotta, submitted to French Police and transferred to LAPD. In addition Mr Goldstein wanted to use this Court to admit things and / or events what never happen, and produce documents which never existed to proof merit of this complaint.

This Court denied Motion to Strike as it was not properly filed Motion September 10, 2018. Defendant filed Motion to Dismiss the Case for insufficient service

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF MERIT AND MALICIOUS PROSECUTION

September 11, 2018, Motion for Protective Order and Motion for Sanctions. Motion to Dismiss was denied by resent Court Order at September 11, 2019, as this Court noted that subject of Motion to Dismiss mostly related to lack of merit then to lack of service, Motion for Sanctions has been denied due to not conferred Meet & Confer Local Rule, and Motion for Protective Order has been denied as this Court find discovery requests necessary at that time as Defendant didn't gather sufficient proof of meritless complaint.

This Court well noted that all these Motions were opposed by Mr Goldstain not with the facts and evidence, but with notifications about that Defendant's Motions or cover lists were filed improperly, number of pages exceeded etc with disregard that Defendant, who is based outside of Federal Jurisdiction of this Court – Paris, France, without her French attorney, without any jurisdictional protection in California (as Defendant has no relation to California) maliciously brought to this Court, without any knowledge about Local Rules of Federal Procedure in California, defends and proves abusive nature of this complaint against her and her company, based on material evidence and facts – the main basis of jurisdiction. Defendant is in her best effort showed great respect to this Court by responding and filing corresponding requests. Defendants would like to kindly request the excuses if there were the mistakes in the filings, wrongfully mentioned laws, or wrongfully filed Motions.

On September 11, 2019 the Court granted Plaintiff's Motion to allow service by email, as Defendant pro se actively participates in litigation, and EURL ELEONORA DE GRAY is a business entity with unique associate. It also denied the Defendant's Motion to Dismiss as moot, as this Court find Motion to Dismiss related to Motion to Dismiss for the lack of merit is more appropriate.

- 11 -

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF MERIT AND MALICIOUS PROSECUTION

According to this Court Order Defendant should present an attorney who'll have to file an answer (Motion to Dismiss for lack of jurisdiction) for the Defendant EURL ELEONORA DE GRAY, local business entity, based in Paris France.

Defendant noted highly abusive actions of Plaintiff and / or Mr Goldstein who orchestrated an attack on Defendant's intellectual property published on web-site www.RUNWAYMAGAZINES.com by filing a false intellectual property claim to the hosting provider GoDaddy under penalties of perjury September 11, 2019, right after this Court issued an Order.

Defendant received a complaint from GoDaddy September 13, 2019. Defendant informed Mr Goldstein about her urgent actions in research for an attorney. Mr Goldstein is aware that March and September of every year it is the most busiest time of the year for Defendant, as this is the time of fashion weeks in Paris and Milan. So Mr Goldstein decided to raise the pressure and orchestrated the attack. Defendant repeatedly informed Mr Goldstein September 20, 2019 that she'll have very limited access to her emails, due to her business activities in Milan, Italy, and she is not able to see his pdf files attached on her mobile phone. Mr Goldstein sent repeated multiple emails with multiple pdf attachments, without any notes she could see and read. Detailed explanation about the events related to intentional torts disclosed in Motion to extend time and supported by declaration (Doc 101). Mr Goldstein September 20, 2019 filed Motions to Compel without knowledge of Defendant, simultaneously with the actions GoDaddy acting on false complaint of Mr Mazzotta, disabled access to web-site of Defendant. Mr Goldstein perfectly knew if Defendant doesn't have access to pdf files, Defendant wouldn't have know that Mr Goldstein filed Motion to Compel, and also according to the dates of Defendant's business activities in Milan provided to him, Mr Goldstein knew that Defendant won't have even time to write and file an opposition, as her opposition should be filed already September 26, 2019, the day of Defendant's return to Paris

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF MERIT AND MALICIOUS PROSECUTION

and discover his actions. He also knew that this attack will not allow to do the business, and Defendant will have financial losses.

So by doing so Mr Goldstein created very high level of stress and put Defendant's health under serious danger. Defendant had a high blood pressure, pain in the heart and fainted. This health state continues during last 3 weeks.

These abusive actions shows very well orchestrated and organized attack, directed to damage Defendant's intellectual property assets, business of Defendant, financial losses, and related to malicious prosecution of the complaint, filed in this Court in March 2018.

PLEASE NOTE that not a single event / or action / or fact / or evidence about abusive actions of Defendant against Plaintiff has been provided to this Court during this Court proceeding.

September 20, 2019, this Court suspected misconduct and issued an Order, and give more time to Defendant to file an Opposition.

October 09, 2019 Defendant filed Motion to extend time to file an answer on behalf of EURL ELEONORA DE GRAY.

October 11, 2019 Defendant filed an Medical certificate.

## STATEMENT OF FACTS

1. General manager of RUNWAY TV LLC, RUNWAY BEAUTY LLC Vincent Mazzotta aka Vincent Midnight (Plaintiff) submitted false facts about his activities, his relation / association to the name RUNWAY / RUNWAY MAGAZINE, distribution channels, beginning of his activities under name RUNWAY or RUNWAY MAGAZINE, numbers of online distributions etc.

Plaintiff claims that he is worldwide known, has million distributed copies, downloads etc. This information is false. An example public statistic of Google Play store: Plaintiff has only 50+ downloads, Defendant's app has 5000+

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF MERIT AND MALICIOUS PROSECUTION

downloads. Plaintiff claims that he has million distribution of printed issues since 2006 with Kable distribution until today. This information is false. Kable distribution was a company, who accepted all applicants, and only distributed on demand of the bookstores according to their choice. There were probably some local distributions (Los Angeles) done in 2008-2009, which was 10 years ago. Kable distribution from 2015 stopped this business. Today Kable distribution specializing in packaging. But Mr Mazzotta continues give false information about million distributed copies with Kable distribution until today, including this complaint.

All information provided to this Court was not based on 3d party sources or available public records, but proposed to this Court in press-kit of Plaintiff. Online editions proposed on Magcoud.com and Magzter.com ("print-on-demand" online services) in pdf format have no public statistic, but it could be assumed that they are equal to download statistic on Google Play. Conclusion : all information about business activities of Plaintiff is false, as there's no material facts or evidence to support it, or relate Plaintiff to RUNWAY MAGAZINE name, as public records and available facts are saying otherwise. (Exhibit A).

Plaintiff claims that his activities related to fashion, but he is actively advertises on his web-sites runwaylive.com and runway.net and social media networks local porno activities, porno (sadomasochism oriented) related events, XXX awards, porno models and actresses (proposed on covers and photo editorials of Plaintiff's online editions), "dating sex x one-night stand" web-sites (networks related to prostitution), porno web-sites, drugs (opioids). It appears that Plaintiff uses fashion as a cover for his activities, and source of his financial income. Defendant is aware of specific requirements and limitations related to adult industry in Los Angeles. It appears that Plaintiff doesn't have any license for this kind of activities. And he uses "fashion" to masquerade his actual business activities and financial income.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF MERIT AND MALICIOUS PROSECUTION

And if Plaintiff claims that his audience is 1 million followers on social media networks, it means he advertises to public different porno related events, he is organizing, sadomasochists technics, promotes porno models, porno web-sites and social media accounts of porno models and actresses, networks (dating "sex x one night stand" web-sites) related to prostitution, and drugs to 1 million users of facebook instagram and twitter.

PLEASE NOTE that opiods are class of drugs that include the illegal drug heroin. Medically they are primarily used for pain relief. And there are people who are taking these drugs according to prescription. Although these people DO NOT advertise these drugs on their social media networks. So to advertise this drug to 1 million people (according to Plaintiff's claim about his followers) is absolutely illegal, and should be punishable.

According to CNN United States is in the throes of an opioid epidemic. In 2017, an estimated 1.7 million individuals in the United States suffered from substance use disorders related to prescription opioid pain relievers and 652,000 suffered from a heroin use disorder. (EXHIBIT B).

Plaintiff participates in cryptocurrency exchange (bitcoin - Runwaycoin) together with his partner Mr David Saffron, as it is indicated in their public exchanges on social media. Mr Saffron has several complaints filed against him, and has been arrested in January, 2018 for the reasons related to cryptocurrency exchange. Mr Mazzotta announces Mr Saffron in his online editions as FINANCIAL DIRECTOR since 2018. It means that all financial / business part of Plaintiff's business handled by Mr Saffron, and he is the one who's financing online editions of Plaintiff. Another business activities of Mr Saffron related to rent of the houses for different porno (sadomasochism oriented) events and productions. He and Mr Mazzotta are participate in the organization of these events, and Mr Mazzotta actively gives promotion to these events on his social media networks. Public posts

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF MERIT AND MALICIOUS PROSECUTION

on social media networks of Mr Vincent Mazzotta aka Vincent Midnight and Mr Saffron suggest that they are indeed involved in multiple business activities together related to local porno industry, and they use online editions of Plaintiff to promote their clients : venues, actresses, models, events. And this is another evidence that online editions of Plaintiff, which he called "fashion magazine" serve promotion purpose for local porno industry. (EXHIBIT C).

2. Plaintiff presented to this Court a license contract, which was used as a part of felony organized by Mr Mazzotta and his associate Mr Buccelli convicted for 3 years in Federal Prison for identity theft, felony and fraud.

Mr Buccelli contacted Defendant in 2012, presented himself as CEO of RUNWAY MAGAZINE from California, "very known and very famous fashion magazine", and proposed to collaborate and do "business" together, as he noted that Defendant developed activities / media under name RUNWAY / RUNWAY FRANCE / RUNWAY MAGAZINE in Paris, France, published and distributed locally in relation to organized in Paris events – Le Bal de Paris, Paris Fashion Award (organized by Defendant in partnership), supported by Madame Jacques Chirac, fashion designer Pierre Cardin and many many others. First edition of RUNWAY / RUNWAY FRANCE has been issued and distributed during Le Bal de Paris in 2004, later in 2007 distribution of Defendant editions became regular and was available in big cities of France. From 2007 Defendant opened her first social media accounts under name RUNWAY / RUNWAY EXPERTS / RUNWAY MAGZINE. This activity of Defendant has it's own way and growth, it grew apart from another business activity of Defendant – organization of Balls, Fashion Awards, and showrooms, started as newspaper, then RUNWAY pocket editions, then magazine. During the years name had some change and evaluation. Since 2010 name RUNWAY MAGAZINE was fixed, and never changed since then.

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF MERIT AND MALICIOUS PROSECUTION

Editions, programs, screenshots of the accounts and the dates (which is registered by social media networks and can't be modified by anyone) were submitted to INPI – French trademark registration office in November 2013 for registration of trademark, and transferred to WIPO for approval. Defendant didn't registered trademarks before simply because she didn't find it necessary, as she couldn't imagine that someone could be interested, and specially felons from California, in her production and her intellectual property assets. (EXHIBIT D).

Mr Buccelli, professional felon, contacted Defendant in 2012 with possesory interest of her intellectual property assets, and her social media accounts. He proposed "business development" together. RUNWAY MAGAZINE issues in 2012 and 2013, several videos were produced by Defendant, financed by Defendant fully with both names mentioned. Defendant became victim of Mr Buccelli, she financed all editions printed in France, evenings (including RUNWAY MAGAZINE cover launch party where Mr Karl Lagerfeld was present), organized in France, presence at Cannes film festival etc. She granted access to Mr Buccelli to her social media accounts etc. When Mr Buccelli obtained access to intellectual property assets of Defendant, convinced Defendant to have his name mentioned in her production, he started to sell licenses to different countries from trademark RUNWAY MAGAZINE he didn't have.

Mr Buccelli registered his trademarks in US in 2014 based on intellectual property assets of Defendant, and another victims – 2 individuals in Peru, to whom he sold "license" for RUNWAY MAGAZINE.

In September 2013 Defendant hired new attorney to help her with different business matters. French attorney of Defendant made a research and discovered felony of Mr Buccelli. Urgent actions were taken immediately to protect intellectual property assets – registration of trademarks with notification of First use in commerce in France 2004. Special assistance of INPI Director was given to

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF MERIT AND MALICIOUS PROSECUTION

Defendant in registration of 3 trademarks in November 2013 – RUNWAY MAGAZINE / RUNWAY FRANCE / RUNWAY MAGAZINE FRANCE, in accordance with names used in France since 2004.

In 2014 Defendant discussed matter of this felony, and damages caused to Defendant by felon Mr Buccelli with one of the Directors of French Police. He suggested to gather all known information and file "victim testimony" against Mr Buccelli. Criminal case against Mr Buccelli in French Police has been open in 2014, right after Mr Buccelli was arrested in California. He informed Defendant that after discussion with one of the detectives in LAPD, who was in charge for the case of Mr Buccelli, he had more than 45 victims, related to stolen properties, identities, cars, robberies, drug abuses etc. He requested LAPD that Defendant's "victim testimony" to be added to the criminal case of Mr Buccelli in LAPD. PLEASE NOTE that this "victim testimony" in criminal case Mr Goldstein is so eager to obtain by using this Court proceeding (constant filed Motions to Compel) with disregard that  he is breaking dozen laws related to protection / confidentiality of victims testimony in criminal cases, privacy laws, Federal laws related to intimidation of victims by using Federal Courts proceedings to obtain testimony, and specially the one which was filed outside of Federal Jurisdiction – in Paris, France.

Defendant doesn't have knowledge about Criminal Court proceedings against Mr Buccelli in Los Angeles, it appears there were multiple Court Orders between 2015 until 2018 in relation to every victim of Mr Buccelli. She only has personal knowledge about actions of French Police related to her stolen intellectual property assets. In December 2018 all her intellectual property assets, which was possible to recover, were returned to her by French Police.

In 2012-2013 Defendant didn't' have any knowledge about Mr Mazzotta and his relation / dispute / collaboration and partnership with Mr Buccelli. After she

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF MERIT AND MALICIOUS PROSECUTION

registered her trademarks in November 2013 her attorney informed her that there's another person Mr Vincent Mazzotta who has trademarks in US, just filed for registration in Europe. Defendant also was not aware of possesory interest of Mr Mazzotta in her intellectual property assets, specifically her trademarks in France (at that time), as these trademarks in 2015, and trademarks registered in Italy prohibited Mr Mazzotta from registration in Europe. He received total refuse for registration. (EXHIBIT E).

In January Defendant was in contact with Plaintiff, and his partner at that time Mr Jay Faltz, who convinced her that they are "real" big corporation, offered protection against felon Mr Buccelli, and proposed an investment. Negotiations continued during 3 months. Demanded condition on exchange for the investment was cancellation of trademarks registered in France by Defendant. Defendant was not agree.

Mr Mazzotta proposed during ongoing negotiation related to "investment" the "license" contract for 3 months in April 2014, so negotiation can continue. In fact Plaintiff used these means to force Defendant to cancel her registered in France trademarks, which prevented Mr Mazzotta to register his trademark RUNWAY in Europe in 2015. The day Defendant gave her signature, Plaintiff and his associates disappeared and never answered any emails.

Contract never had any legal bond, as it was not sign by Mr Mazzotta, contract was never returned to Defendant. Mr Mazzotta started to distribute this contract to different social media networks WITHOUT HIS SIGNATURE, with demand to remove social media accounts of Defendant. If Plaintiff signed the contract as he claims, and sealed a legal bond between the parties in April 2014, as he presented it to this Court, why would he distribute it to many social media without his signature in 2015, in 2016, in 2017, and why he never sent original contract with his signature to social media and Defendant? (EXHIBIT F).

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF MERIT AND MALICIOUS PROSECUTION

Plaintiff sent signed contract to French attorney of Defendant only in April 2017, after she mentioned that there's no legal value in unsigned contract.  In addition contract DOES NOT HAVE and NEVER HAD any mediators / attorneys / notaries / legal witnesses  from both sides clauses and signatures on the contract, who sign the contract to confirm the legal bond, to prevent felonies, and false complaints like this one. If there's no mediators, NOTARIZATION can be used as a method to confirm the legal bond. Mediators, legal witnesses, notaries, confirming legal bond between two parties, are ***obligatory*** for license contracts in US and Europe. NONE of the legal signatures and notes stated in the proposed contract to this Court for jurisdiction. And discovery about this matter is not necessary, as there's nothing to discover.

3. Plaintiff uses Federal Courts to obtain intellectual property assets of different individuals outside of US. He files frivolous claims without merit based on false facts. Complaint filed in this Court March 28, 2018 against Mrs de Gray is a third claim. Plaintiff is not seeking for relief, but uses it as a way to harm Defendant, emotionally and financially, damage her reputation by posting public defamatory posts, business activities by removing her social media accounts, as he has possesory interest in her web-site www.RUNWAYMAGAZINES.com and her accounts on social media networks, make this proceeding as costly as it could be to damage financially Defendant's business.

Mr Mazzotta in June 10, 2009 attacked owner of the domain *RUNWAYMAGAZINE.com*, citizen of Canada Mr Errol Z. Hernandez with false complaint filed in WIPO, Case No. D2009-0762. Mr Mazzotta filed ones again false information about his business activities, as he had possesory interest to domains runwaymagazine.com, runwaymagazine.ca, runwaymagazine.net, runwaymagazine.org, and he used Court to obtain these properties, and malicious

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF MERIT AND MALICIOUS PROSECUTION

prosecution methods. Mr Mazzotta used the same accusations as he uses in this complaint, and the same scenario, he didn't serve complaint on defendant, he presented false proof of service. Mr Hernandez won the case, but he was highly traumatized by malicious prosecution actions of Mr Mazzotta. (EXHIBIT G).

Mr Mazzotta in 2009 also attacked Mr James Buccelli in Federal Court Case No.: CVO9-08333-JAK(JEMX) with meritless complaint as he had possesory interest in the name use RUNWAY MAGAZINE. And ones again Mr Mazzotta followed the same scenario: he filed false facts about his local first use in commerce, he didn't serve the complaint and filed false proof of service, demanded default decision. The result of the complaint: Mr Buccelli won the case, as he proved his first use in local commerce, and an agreement has been made between two parties Mr Mazzotta had rights to use RUNWAY trademark, and Mr Buccelli had right to use RUNWAY MAGAZINE in his communication. This agreement Plaintiff submitted to this Court in FAC. The Order has been issued with prejudice that no other claims can be submitted by Mr Mazzotta in relation to possession and use of RUNWAY MAGAZINE name. According to this Order USPTO issued CEASE AND DESIST to Mr Mazzotta and canceled his RUNWAY MAGAZINE trademark in US and worldwide. (EXHIBIT H).

PLEASE NOTE that Mr Mazzotta NEVER respected the Court order or USPTO Cease and Desist Order. Apparently as a result of this agreement Mr Mazzotta and Mr Buccelli came to partnership and collaboration over the years. Defendant is not aware of the details of collaboration between Mr Mazzotta and Mr Buccelli. Plaintiff submitted to this Court a note in FAC that after Mr Mazzotta discovered criminal history of Mr Buccelli in 2013 he stopped all collaboration and partnership. Although Defendant is aware about their present collaboration, based on public communication of Mr Mazzotta and Mr Buccelli, and threatening email

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF MERIT AND MALICIOUS PROSECUTION

of Mr Mazzotta addressed to her in August 2017, where Mr Mazzotta stated that he is continue partnership and collaboration with Mr Buccelli. (EXHIBIT I). PLEASE NOTE that this information is an evidence of Mr Mazzotta's possesory interest to the name RUNWAY MAGAZINE and everything associated with this name, but he never OWNED this name, and per se, this name can't be associated with Mr Mazzotta, as it never was in his possession.

4. Plaintiff uses this Court proceeding / discovery rules to obtain lists of Defendant's clients and partners in Europe, intellectual property assets (copyrighted materials) produced in Europe, Defendant's "victim's testimony" in criminal case Mr Mazzotta's associate Mr James Buccelli submitted to French Police and transferred to LAPD for appropriate actions. In addition Plaintiff uses discovery as a tool to admit things that never happen and produce documents which never existed to support his claim. None of these requests submitted to Defendant has relation to this case. All facts of these abusive requests described in OPPOSITIONS TO MOTIONS TO COMPEL (Doc. 99, Doc. 100).

It is understood that Plaintiff is seeking to prove Defendant's relation to California, or her business activities in US, but if Defendant said that her business activities are only planned but not yet established, it is abusive to use this Court proceeding (Motions to Compel without objections) to admit something which do not exist. In addition to Mr Goldstein already made a research and submitted to this Court information that Defendant DOES NOT have any offices in US, Defendant DOES NOT have any trademarks registered in US, or any other possessions in US, which would be a reason for jurisdiction in Federal Court (it is also related to her business entity – second Defendant in this case). Defendant already mentioned to this Court in her Motion to Dismiss that she has a plan to open offices in US, but she DOES

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF MERIT AND MALICIOUS PROSECUTION

NOT have and never had office in US, she doesn't have any ongoing business partnership sealed by legal contract (Doc 48).

Defendant had the agreements on friendly basis about mutual communication on social media networks, without any financial interest or any contract. But these agreements are no longer active. Defendant has an interest to expand her business activities in US, but at the present time this plan is suspended due to intentional torts and malicious prosecution organized by Plaintiff and his attorneys in submission of this complaint to the Court.

In addition Mr Goldstein constantly insists on telephonic Meet and Confer conferences. Defendant several times gave a legal explanation why it is costly and burdensome for both parties and several times proposed to have it by email, as it doesn't go against the Local Rules, and facilitated the records of this case, as in final decision of this Court will be transferred to French Tribunal. And all documents / proceedings should be submitted, including Meet and Confer conferences in writing. French law states that all litigants, who participate in litigation outside of France, for any telephonic conference should have their attorney to be present, official sworn translator, and a person who'll record the conversation. Therefore French attorney of Defendant prohibited any telephonic conferences during litigation, and specially that many abuses of process has been noted (including personal insults) during the procedure.

Every time Defendant proposes to conduct Meet and Confer by email, as it doesn't go against Local Rules, to avoid costly and burdensome event for her, and every time Mr Goldstein opens the dispute about this subject. And every time Defendant repeatedly explains to Mr Goldstein how it should be done according to French laws, as the final judgment and proceedings will be send to French Court. So it appears that Mr Goldstein in his best effort wants to make this proceeding very costly and very burdensome for Defendant. And this is in addition to financial

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF MERIT AND MALICIOUS PROSECUTION

damages caused by Mr Godlstein and Mr Mazzotta in resent malicious prosecution attack in September 2019.

5. Multiple abusive actions, intentional torts, by definition, related to malicious prosecution has been already submitted to this Court: multiple defamatory public posts with tags and hashtags on social media networks – so public will be able to see when search for the name of Defendant (Twitter), publication of FAC on social media networks (Facebook and LikedIn), submission FAC to social media networks with request to remove social media accounts of Defendant (Issue.com). (EXHIBIT J).

Defendant already submitted financial loses caused by actions of Plaintiff in relation to her business in Europe in 2018. In addition Defendant in May 2019 received a phone call from her Mediator in European WIPO, who informed Defendant that WIPO received a complaint from Mr Mazzotta regarding Defendant's French trademarks. He submitted false complaint to WIPO, he claimed that Defendant trademarks in France were registered fraudulently, and based on the short term license contract he gave in April 2014 to Defendant in France, he also claimed that he filed a complaint in Federal Court of US but Defendant failed to answer. Mr Mazzotta submitted with his claim FAC and demanded WIPO to start the procedure of cancellation of Defendant's trademarks. WIPO answered to Mr Mazzotta that his claim has no ground as trademarks of Defendant are registered before April 2014, and the documents supported registration are related to activities of Defendant in France under name RUNWAY / RUNWAY MAGAZINE since 2004.

Defendant was not able to obtain the copies of Mr Mazzotta claim and answer of WIPO, although Mr Vincent Mazzotta aka Vincent Midnight expressed his

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF MERIT AND MALICIOUS PROSECUTION

frustration related to WIPO refusal publicly on all his social media accounts. (EXHIBIT K).

Sabotage and financial damages to Defendant's health and business caused by Plaintiff and Mr Goldstein recent actions. Mr Goldstein, knowing that Defendant urgently is looking for an attorney to represent her company, and obviously needs time and financial sources, orchestrated filing false claim (based on false facts) by Plaintiff September 11, 2019, right after this Court Order granted service of the complaint, to GoDaddy (hosting provider) under penalties of perjury for trademark infringement directed to damage and / or destroy Defendant's web-site www.RUNWAYMAGAZINES.com, vital for her business activities. September 20, 2019, while Defendant was at scheduled trip to Milan, Italy, her web-site was disabled, which caused serious financial damages to Defendant's business, and put Defendant in very difficult financial situation. For 2 days web-site was down, and it took 10 days to restore it. At the same time September 20, 2019 Mr Goldstein filed abusive Motion to Compel without knowledge of Defendant, putting even higher stress of the Defendant by sending multiple repeated emails with attachments she couldn't open or read. Defendant experienced pain in chest, heavy and fast heart bit, and fainted. She couldn't have instant medical help, as she doesn't own medical insurance in Italy. Heart pain, weakness continues until today, longer than 3 weeks. Financial losses, related only to restoration of the web-site are approximately 10,000 $, which Defendant is still owe to her employees, and not able to pay instantly. In addition to Defendant was not able to conduct business or sign any contract during one of the most important period of the year. Defendant lost multiple clients she hoped to have during her trip to Milan. Defendant had to cancel almost all her scheduled appointments in Paris, at her return from September 26, 2019-October 1, 2019 due to her health problems, and urgent filing an Opposition to Motion to Compel, to inform this Court about all malicious

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF MERIT AND MALICIOUS PROSECUTION

prosecution actions taken by Plaintiff and Mr Goldstein against her and her business. Mr Goldstein calculated very well all these actions, with knowledge about that these actions will seriously damage business and financial situation of Defendant, and Defendant won't be able to afford an attorney, even for the limited appearance. Detailed explanation of the events, financial loses and health state submitted in Motion to extend October 09, 2019. (EXHIBIT L).

Perpetrators, Plaintiff and his attorney, uses this Court to harass victim, Defendant in this case, damage her business, as the courts are often the only tool left for abusers seeking to traumatize victims.

Defendant is in her best effort showed great respect to this Court by responding and filing corresponding motions. Defendants would like to ask the excuses if there were the mistakes in the filings, Motion was not well structured, grammar mistakes in English, no laws mentioned, as Defendant wrote it under calming nerves medication, as heart pain is still continues, it is hard to concentrate, and she feels EXTREMILY EXHAUSTED.

## **CONCLUSION**

Therefore Defendant respectfully moves this Court to grant her MOTION TO DISMISS FOR LACK OF MERIT AND MELICIOUS PROSECUTION. Defendant also would like to request this Court for a special Order to protect her from organized abusive actions and attacks, related to malicious prosecution, and possible quick recovery of the damages for the sum 10,000$, on this Court own motion. Multiple abusive actions has been already submitted to this Court, and if this Court won't take any actions against Plaintiff and Mr Goldstein, the attacks will continue, as Mr Goldstein and Plaintiff assume that this Court allows these

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF MERIT AND MALICIOUS PROSECUTION

abuses and malicious attacks against Defendant and Defendant's business during the litigation, and they allowed to cause more damages to her business and her health.

Respectfully submitted,

DATED: October 16, 2019

By: Eleonora de Gray

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF MERIT AND MALICIOUS PROSECUTION

ELEONORA DE GRAY
23/25 RUE JEAN JACQUES ROUSSEAU
75001 PARIS, FRANCE
Phone : +33660329401
Email : infodegray@gmail.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUNWAY TV, LLC. | Case No.: 2:18-CV-02503-FMO (JCx) |
| vs. | (PROPOSED) ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF MERIT AND MALICIOUS PROSECUTION |
| ELEONORA DE GRAY, A French citizen | |
| And DOES 1-10, INCLUSIVE, EURL | |
| ELEONORA DE GRAY | |
| Defendant | |

Court: California Central District Court
Referring Judge: Jacqueline Chooljian
Presiding Judge: Fernando M. Olguin

- 1 -

(PROPOSED) ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF MERIT AND MALICIOUS PROSECUTION

Having considered Defendant's Motion to Dismiss for lack of merit and malicious prosecution

ORDERED, that Plaintiff and Mr Goldstein on behalf of Plaintiff reimburse to Defendant Eleonora de Gray reasonable sum to cover financial loses caused to her businesses, costs and expenses incurred in responding to the instant actions;

and it is further

ORDERED, that Plaintiff remove all public libel posts against Defendant from social media networks, remove publication of original and first amended complaints from social media accounts, remove name of Defendant's business entities from advertising and selling of his products related to porno industy on social media networks;

and it is further

ORDERED, that Plaintiff be and hereby is enjoined from filing any civil action or otherwise seeking relief against either Eleonora de Gray, or EURL Eleonora de Gray, or any other business entity of Defendant in any court without an order from an appropriate federal judicial officer certifying that the claims are not frivolous.

DATED : _____

_____

District Court Judge Hon. Fernando M. Olguin

- 2 -

(PROPOSED) ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF MERIT AND MALICIOUS PROSECUTION

## DECLARATION OF ELEONORA DE GRAY

I, Eleonora de Gray, hereby declare :

1. I'm Eleonora de Gray, married Christensen, citizen / resident of France, CEO of EURL ELEONORA DE GRAY, French company, based 23-25 rue Jean-Jacques Rousseau, 75001 Paris, France.
2. I'm Defendant / Defendants in this case.
3. I have personal knowledge of the following facts and if called as a witness I could and would testify competently thereto.
4. I declare that all presented facts, documents and other evidence in DEFENDANT'S MOTION TO DISMISS FOR LACK OF MERIT AND MALISIOUS PROSECUTION are true and correct. All screenshots and documents are taken from public sources, public accounts. No electronic modification has been made (except that my personal information was removed).
5. I declare that I experienced very high level of stress and trauma cause by actions of Mr Godlstein and Mr Mazzotta, manifested like pain in heart and dizziness for the last 3 weeks.
6. I declare that physically I'm still very weak, pain in heart persists, I'm still taking calming nerves medication. To write this Motion to Dismiss and gather all necessary evidence and facts, it took me 8 days. I'm extremely exhausted and not able to concentrate, due the intentional torts of Mr Godlstein and Mr Mazzotta.
7. I declare that for the last 3 weeks I was not able to take care about my business activities, and I was absent in my office. So I was not able to take care about any projects or clients. Everything is postponed or suspended. And if I'm not able to function I won't be able to improve financial situation and replenish financial damages caused by Mr Godlstein and Mr Mazzotta.
8. I declare that I've been psychologically traumatized by Plaintiff's actions during this process : distribution original complaint and first amended complaint to my partners, clients and social media networks with intentions to damage my reputation and damage my online presents; publication of insulting and libel public posts on social media networks; demands for removal of my business accounts from social media networks; publication of first amended complaint on social media networks accounts for public observation with intentions to destroy my reputation; use the name of my company OFFICIAL RUNWAY MAGAZINE, instead of the name of his own business entity RUNWAY TV, since August 2018 until today to advertise and increase the sales of his products.
9. I declare that I have psychological trauma, which seriously affected my health from frivolously, libel groundlessly, unjust and perjurious filed by Mr Goldstein complaints and pleadings filed in front of this Court.
10. I declare that me and all my business entities suffer from serious financial losses on a sum 89.950 euros (eighty nine thousands, nine hundred fifty euros) in 2018, as I was not able to function as CEO of my business entities during this

proceeding, and dedicate my time to development, government projects my business entities involved, and work with the clients. And financial damages related to resent attack already counted 9.100 euros in 2019 due to malicious organized attack related to false complaint submitted to hosting provider of my web-site, in addition to that I was not able to conduct business during planned meetings in Milan and Paris, which is obviously leaded to financial losses of my company.

11. I declare that I informed Mr Goldstein about resent Court Order September 13, 2019.

12. I declare that I did all necessary actions related to research for an attorney.

13. I declare that I received trademark infringement complaint from GoDaddy (hosting provider of my web-site www.RUWNAYMAGAZINES.com) submitted by Mr Mazzotta September 13, 2019.

14. I declare that I verified terms and conditions of GoDaddy related to trademark / copyright claims. Proceeding time 24/48h. Which is obviously gives a conclusion that this malicious claim has been submitted at the same day Court Order about service of the complaint was issued September 11, 2019. This is also concludes that Plaintiff knew about the Court Order and decided to proceed with malicious prosecution against me and my business.

15. I declare that I repeated my email to Mr Goldstein September 16, 2019.

16. I declare that I informed Mr Goldstein September 16, 2019 that I plan to file Motion to dismiss and propose to continue to Meet and confer by email to avoid unnecessary burdensome and costly expenses on telephonic conferences. (EXHIBIT M).

17. I declare that I proposed to Mr Goldstein to have a peaceful resolution for this complaint. But he ignored it.

18. I declare that during Meet and Confer related to this Motion to Dismiss he argued the fact of filing Motion to Dismiss, and insisted that it is PROHIBITED to me to file Motion to Dismiss.

19. I declare that I informed Mr Goldstein about the details I plan to file with this Motion. But apparently he was not willing to discuss it, and he confirmed that he noted that Motion will be filed. And immediately started Meet and confer related to Motion to Compel he planed to file.

20. I declare that I continued to confer Meet and Confer with Mr Goldstein related to discovery. Mr Goldstein didn't want to have any discussion about the matters of discovery, he repeatedly demanded to provide him with US laws in objections, with disregard that me and my company residing and based outside of Federal Jurisdiction, in Paris France and in this case European laws should be applied during Federal Jurisdiction. Mr Goldstein ignored that all applicable laws have been already sent to him in Objections submitted in November 2018.

21. I declare that several times I asked Mr Goldstein to give comments related to his requested. He ignored my questions and continued to insist on providing him with

US laws.

22. I declare that I informed Mr Goldstein that I'm in Milan and have very limited access to my emails with my mobile phone, and that I'm not able to see pdf attachments.

23. I declare that I informed Mr Goldstein that I'll be back to Paris by September 26, 2019, and will have more time after October 2, 2019.

24. I declare that I was not able to see any pdf attachments Mr Goldstein repeatedly sent to me September 20, 2019. I responded on each email with notification that I can't open and see pdf attachments. And I was not aware about that Mr Goldstein filed Motions to Compel September 20, 2019, according to which he requests this Court to accept his motions without objections from my side, and admit events that never happen, or produce documents which never existed, in addition to providing him with my "victim testimony" in criminal case filed with French Police, my clients / partners lists in Europe, all my intellectual property assets from 2012 without any explanation how these documents related to this complaint.

25. I declare that September 20, 2019, 3h after last email from Mr Goldstein, I received several calls from my team in Paris in distress about that our web-site www.RUNWAY MAGAZINES.com has been disabled, and down, and no one can have an access to admin panel of the web-site. So I had to take urgent actions, and request my team to work during the weekend and to do urgent reparations during the week.

26. I declare that announced cost related to damages is correct.

27. I declare that I received information from WIPO mediator, who's actively participates in well being of my companies, who informed me that Mr Mazzotta sent false complaint, claimed that French trademarks were registered after I gave my signature, he also attached FAC. He also informed that WIPO after verification of the dates and documents submitted at trademarks registrations in France responded to Mr Mazzotta.

28. I declare that WIPO mediator suggested me to submit to this Court documents I filed at registration of my trademarks in November 2013, in any case if authority and competence of INPI (trademark registration office in France), and WIPO (trademarks registration office in Europe) will be questioned by Mr Godlstein and Mr Mazzotta.

29. I declare that I already provided documents related to first social media accounts and the dates of the registration (2007).

30. I declare that in this Motion I submit EXTENDED file of the documents I submitted at the registration of my trademarks in France – photocopies of original documents since 2004, and use / evaluation in the name use.

31. I declare that history related to Mr Buccelli is true and correct.

32. I declare that dates of submitted "victim testimony" in criminal case of Mr Buccelli and events related to this testimony are correct.

33. I declare that I described all known to me actions of French Police in relation to felony of Mr Buccelli against me and my intellectual properties.

I'm cautious about providing the names of my mediators in WIPO and INPI due to abusive actions of Mr Goldstein, who's without my authorization is able to ask random individual speaking French call them and interrogate, pressure, give them false information about me and this complaint, as it happened in August-September 2018 in relation to service of this complaint and employees of Ministry of Justice in France.

I'd like ones again to inform Mr Goldstein that any kind of interrogatory of the "witnesses" (legal mediators) who are based outside of Federal Jurisdiction (US) should be done with accordance of French law (or law of the country), in presence of my French attorney, on French, with official translator and a person who can record the conversation. And special request should be submitted with explanation why the interrogatory is necessary.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed on October 16, 2019 in Paris, France.

ELEONORA DE GRAY, Declarant

# EXHIBIT A

Application of Mr Mazzotta on Google play, as an example, and number of downloads which can't be modified.



ADDITIONAL INFORMATION

| Updated | size | installs |
|---|---|---|
| October 1, 2019 | 5.0M | 50+ |

| Current Version | Requires Android | Content Rating |
|---|---|---|
| 2.3 | 4.1 and up | PEGI 3 |
| | | Learn More |

| Interactive Elements | permissions | postponement |
|---|---|---|
| Users Interact, Shares Info, Shares Location | View details | Flag as inappropriate |

| Offered By | Developer |
|---|---|
| Google Commerce Ltd | Visit website |
| | editor@runway.net |
| | Privacy Policy |
| | RUNWAY Magazine HQ: 7558 Melrose Ave. Los Angeles, CA 90046 |

Application of Mrs de Gray on Google Play, and number of downloads as an example,
which can't be modified.






ADDITIONAL INFORMATION

| | | |
|---|---|---|
| **Updated** | **Size** | **Installs** |
| August 4, 2019 | 29M | 5,000+ |
| **Current Version** | **Requires Android** | **Content Rating** |
| 2.0 | 4.4 and up | PEGI 3 |
| | | Learn More |
| **Interactive Elements** | **Permissions** | **Report** |
| Users Interact | View details | Flag as inappropriate |
| **Offered By** | **Developer** | |
| Google Commerce Ltd | Visit website | |
| | info@runwaymagazines.com | |
| | Privacy Policy | |
| | Paris, France | |






About Us     Advertise     Subscribe

Search

Topics     Technology     Blogs     Resources     Research     Webinars

Video     Subscribe

**PUBLISHERS' DOJO**           December 10, 2015

# Kable Distribution Services: Another Industry Goodbye

 By **Linda Ruth**

3

Yesterday morning, publishers were informed that Kable Distribution Services Inc. (KDS) is going out of business.

The news was conveyed in a remarkably distant manner, in a general letter that speculated that its recipients would not be astonished or blindsided by the news.

True, the industry was rife with rumors that Kable was holding on by a thread — but those rumors have been going around since I got into this business, more years ago than I care to count. It is also true that TNG, North America's largest wholesale group, had already threatened to refuse Kable product, which would be a disaster large enough to put a national distributor out of business. However, TNG's threat was reportedly due to a squabble over a project that KDS' sister division, Kable Packaging and Fulfillment (KPF), picked up; and it seemed reasonable to assume that KPF would drop that project before allowing KDS to shutter.

The story behind Kable's closure, as I tracked it, is this: Hudson Retail, owner of airport stands throughout the U.S., decided to no longer receive their magazines through TNG, and instead

to use KPF to deliver. The backlash from TNG, wherein they reportedly made good on their threat to refuse service to Kable-distributed titles, leaves publishers scrambling for national distributor alternatives, and KDS employees looking for work.

It's perplexing. The dotted lines in this business are a bonanza for conspiracy theorists. Just for starters, TNG's parent company, the Pattison Group, owns Comag, the national distributor to whom Kable has directed publishers in search of replacement distribution. Hudson News, who no longer owns Hudson Retail but still has, I am told, representation on its board, also has a minority stake in Comag. When the Pattison Group purchased Comag, there was much speculation as to when the industry would start to further consolidate under a single national distributor, or perhaps move past national distribution entirely. The falling of this shoe could seem, to a linear thinker, and despite some indications that lead to contrary conclusions, like a direct result of that purchase.

It's scary. The loss of Hudson Retail can't add to TNG's health, and if TNG sneezes, we all catch cold. After all, TNG is responsible for, well, almost all magazine distribution in North America, and its profitability, or lack thereof, is tied into the dwindling size of a publisher's remit.

And who's to say it will stop with Hudson Retail? The shift to direct, represented by Hudson's disposal of the wholesaler middleman, could easily spread to other airport retailers and beyond. Our industry continues to change rapidly, and publishers must try to keep their heads above water in the midst of it all.

And mostly it's sad. There are lots of good people at Kable, and many have been there for years or decades. The ones I've spoken to today are trying to help their clients transition while dealing with a looming transition themselves.

I wish my friends at Kable luck, and hope to see them in our industry for many years to come.

3 Comments                                                                    **View Comments**

**Categories:**      Magazines



**Linda Ruth**
Author's page

# EXHIBIT B

Mr Vincent Mazzotta aka Vincent Midnight promotion of opiod on his public social media accounts



**vincentmidnight**
Universal Studios Hollywood

· · ·



♡  ⬭  ◁                                          ⬠

5 J'aime

**vincentmidnight** There making my put these stickers all over my body. #opioid #addiction #sexwithdrawel #sex #male , I'm regulated! #omg take me at your own risk . Lol #rockstar #hunger . And there hard to get off! #orgasm #offered

Participation and / or organization and / or coverage and / or promotion of Mr Vincent Mazzotta aka Vincent Midnight in different porno events / porno models / porno actresses

## "Pieces (Of Ass)" Opening Night Los Angeles Performance

LOS ANGELES, CA - MARCH 28: Adult film actress Aiden Ashley (L) and Runway Editor In Chief Vincent Midnight attend the "Pieces (of Ass)" opening night Los Angeles performance at The Fonda Theatre on March 28, 2013 in Los Angeles, California. (Photo by David Livingston/Getty Images)





Home  >  ROMANCE

ROMANCE

# ROMANTIC PLEASURE PARTIES

By **admin** - Nov 28, 2015                                    👁 9665



    



The newer vibrators operate quite efficiently and come in many varieties. Some have dual controls with a number of speeds that are able to stimulate various portions of a woman's body. Others are waterproof or are bullet-shaped, and most of them come in a variety of colors.

Throughout the program the toy representative may decide to share some of her experiences with the various items and invite audience participation in the discussion. This time set aside for sharing heightens awareness about new ways to maximize pleasure using a variety of creative techniques.

As the curtain closes on the pleasure party, guests reluctantly depart with a bright smile and a spring in their step. They leave armed with a new bag of tricks that heighten their pleasure in any future intimate encounter. Part of the beauty of these gatherings is the fact that each woman will ultimately create her own



**Cover girl Tasya Teles Runway Spring 2019**

**She is known by series ROGUE (2013) available on PornHub and many other adult web-sites**







**Cover girl Tasya Teles
Runway Spring 2019**

**She is known by series
ROGUE (2013)
available on PornHub and many
other adult web-sites**



























porn model alex gray



vincentmidnight · Follow
Los Angeles, California

vincentmidnight @xoalexgrey, do I
look scary? I guess I'm not popular
cause I'm frightening. Hopefully Alex
can help with it, she took some
amazing pictures for @Runway,
Check her out, she is so #beautiful
and my bff, follow her.

9h

2 likes
9 HOURS AGO

Add a comment...                    Post









**racheldoll23** • Follow
Los Angeles, California

**racheldoll23** Incredible Day Shooting for Runway Magazine! 🖤 @runway @usa_losangeles #runwaymagazine#magazine#publication#modellife#lamodel#playboymodel#lingeriemodel#livelife#petite#petitemodel#blonde#slim#thin#fit#fitmodel#bikinimodel#swimwear#babesofinstagram#lawofattraction#livelife#goodvibes#inatagood#instafame 🖤🖤🖤 🖤



Promo on Magzter.com where Mr Mazzotta distributes his online editions

 **racheldoll23**
Los Angeles, California

 •••

**MAGZTER**          Login | Register



Image Credit: Playboy Sweden

# Rachel Ashley Johnson

    

I am down to earth, easy going, and genuine.

Mr Vincent Mazzotta aka Vincent Midnight promotions of his online editions and self-harm technics on his social media networks (facebook and instagram), and as he claims for 1 million visitors.









**vincentmidnight** • Follow
Los Angeles, California

**vincentmidnight** Sent into a situation,
#goodsoldier . No love for the wicked.
Another ruined vest, another night alone,

10 likes

JANUARY 23

Log in to like or comment.







**Vincent Mazzotta**

11 hrs · Los Angeles, CA, United States ·

We are in production of RunwayRunway TV new show "promoters" drunk funny people, excitement, drug deals, action , police chases . Scripting now

Like          Share

Pat Fuller GoTime ✔

Like · 11h



Advertisers on web-site runwaylive.com,
links available on the web-sites of Mr Mazzotta









advertiser "sex x one night stand" web-site (prostitution related)



**Vincent Mazzotta**
October 21, 2017 ·

Everyone don't forget the Weinstein/Maxim Party tonight . It's only at least $1000 if you are male and if you are female you have to be good looking or you can not get in. Girls don't forget to get sexy so they can exploit you. It's almost unbelievable, so much for women's rights. Runway Magazine Runway #shame



 14







 **Perish Dignam** updated his profile video.
Yesterday at 12:45pm · 🌐

···

I have a 10' foot fuzzy-pink DICK Parked next to my Lambo in the garage and they both have headlights:) ... guess which one I'm driving to WONDERLUST tomorrow?
#eroticrodeo #mechanicaldicks
#dickridingcompetition #wildwilly #mechanicalbull only at @loveandlustevents #STIMULATIONINC @ the @globe.la theater.
# 👍 Get a VIP PASS & RINGSIDE BOTTLE SERVICE to watch the ladies ride the #BIGPINK !
.... See More



# EXHIBIT C

Credits in online editions of Mr Vincent Mazzotta aka Vincent Midnight
PLEASE NOTE Financial Director DAVID SAFFRON
Mr Brad Lee Axelrood and Mr Goldstein also mentioned
Please note promotion of Bitcoin of Mr Brad Lee Axelrood



# RUNWAY

**FALL HOLIDAY 2018 WORLD ISSUE 41**

**RUNWAYLIVE.COM**

SOPHIA ALI

*exclusive* **INTERVIEWS**
*JE*

**Victoria Konefal**
**Nikki DeLoach**
**Parveen Kaur**

**CONSTANTINE'S DREAM**

SECRECY SOCIETY

10 YEAR ANNIVERSARY

Editor-in-Chief
VINCENT MIDNIGHT

Financial Director
DAVID SAFFRON

Fashion Director
JULIA PERRY

Location Director
CATERINA MAZZOTTA

LA Event Director
KYLE GRAHAM

Graphic Design
MARRY JANE

Managing Editor
CASSIDY TORREY

Chief Fashion Correspondent
MANDI PIMENTAL

Video Editor
JEFF SECORSKI

General Legal Counsel
BRAD AXELROD

International Legal Counsel
WILLIAM GOLDSTEIN

Sales East Coast
JONATHAN LEWKOWICZ

Sales West Coast
STEPHANIE DAVIDSON
ANTHONY DEL CAMPO

Distribution Manager
BOB PETERSON @ KABLE

Advertising Inquiries
844-240-2250

PHOTOGRAPHERS
Francis Gum
Joline Towers
Rodney Ray
Patricia De La Rosa
Oleg Bogdan
Patrice Berchery

CONTRIBUTING WRITERS
Mandi Pimental
Melissa Farley
Tammy Forchion

SPECIAL THANKS
Cathy Mazzotta
Michael Cohen
COHEN LAW GROUP
Dr. Scott Keith
Catherine Pyle Mazzotta
Anderson Group
William Goldstein
Quoc Ly
Megan Zheng



**JENS HANSON**
**ELEGANT DIAMOND RING DESIGN**
Elegant clean lines and modern style grace this semi tension setting Marquise cut diamond ring. The strong white gold band securely clasps the diamond without obvious support, letting it float above the finger in a dazzling display of light. The curves of the ring are elegant and refined, perfect for any occasion.

# RUNWAY
## RUNWAYLIVE.COM

**A Letter from the Editor-in-Chief**



*on the cover*

SOPHIA ALI
Photographer: Mario Barberio
@mariobarberiophotos
Stylist: Julia Perry @juliaperrystyle
Hair/Makeup: Kristen Koskella
sponsored by Becca Cosmetics
@kriskoskella
Assistant Stylist: Megan Zheng  @
megan.z.style
Coat: Michelle Mason
Top: When Freddie Met Lilly
Scarf: Darkest Star
Hat: Gladys Tamez
Jewelry: Ghostline Designs



Fall is here and bring on the warmer clothes and many layers. Layering fashion is what fall is all about and RUNWAY brings you the hottest designers picks in style. Going into the holiday season things get really busy and sometime we don't have time for everything, we compressed it all down into 140 pages of fashion to make it easy.

At RUNWAY we have the new RUNWAY LUX app coming out with its own currency RWC a crypto coin plus the upgraded RUNWAY campus in Hollywood is now available to the public to book.

Take a moment and relax. We are RUNWAY!

Thank you again!
Vincent Midnight





# RUNWAY

SUMMER 2018 WORLD ISSUE 40

RUNWAYLIVE.COM

AMERICAN HERO
FIGHTING ELDER ABUSE WITH
KERRI KASEM

*exclusive*
INTERVIEWS
JENN LYON
IKE KAWAGUCHI

10 YEAR ANNIVERSARY

Editor-in-Chief
VINCENT MIDNIGHT

Financial Director
DAVID SAFFRON

Fashion Director
JULIA PERRY

Location Director
CATERINA MAZZOTTA

LA Event Director
KYLE GRAHAM

Graphic Design
MARRY JANE

Managing Editor
CASSIDY TORREY

Chief Fashion Correspondent
MANDI PIMENTAL

Video Editor
JEFF SECORSKI

General Legal Counsel
BRAD AXELROD

International Legal Counsel
WILLIAM GOLDSTEIN

Sales East Coast
JONATHAN LEWKOWICZ

Sales West Coast
STEPHANIE DAVIDSON
ANTHONY DEL CAMPO

Distribution Manager
BOB PETERSON @ KABLE

Advertising Inquiries
844-240-2250

PHOTOGRAPHERS
Francis Gum
Joline Towers
Rodney Ray
Patricia De La Rosa
Oleg Bogdan
Patrice Berchery

CONTRIBUTING WRITERS
Mandi Pimental
Melissa Farley
Kelli Kickham
Mila Grass

SPECIAL THANKS
Cathy Mazzotta
Michael Cohen
COHEN LAW GROUP
Dr. Scott Keith
Catherine Pyle Mazzotta
Anderson Group
William Goldstein
Quoc Ly
Megan Zheng



**CARTIER LOVE BRACELET**
**PINK GOLD, SAPPHIRES, GARNETS, AMETHYSTS**
Love bracelet, 18K pink gold, set with 2 pink sapphires, 2 yellow sapphires, 2 green garnets, 2 orange garnets and 2 amethysts. Sold with a screwdriver. $7,750 MSRP

# RUNWAY
**RUNWAYLIVE.COM**

**A Letter from the Editor-in-Chief**



*on the cover*

Photographer: Patricia De La Rosa pdelarosa.com
Fashion Editor/ Style: Julia Perry juliaperrystyle.com
Hair: Will Carrillo for The Rex Agency using Rene Furterer Paris products therexagency.com
Makeup: Patrick De Fontbrune patrickdefontbrune.com
Gown: The Royals Paris
Ring: Rouge by Rooj Amir



Summer Runway is always the most far ahead issue as Miami Swim Week comes to an end and we get a full image of what 2019 swim fashion will look like. This is the first of the 4 tenth anniversary edition RUNWAY's. In these special issues we will be bring back parts and pieces of the past that gave everyone joy. The picks are back, and we got a few new writers to balance it all out.

For those of you into financial news you will notice the RW coin is on the rise unlike the competition, who for some reason think they are tech companies and can compete in tech. It did provide us a good laugh here and we are flattered by all the companies copying our crypto coin pattern. By Christmas you will be able to use your RW coin to purchase service worldwide with our RUNWAY LUX app.

As always thank you to my amazing staff and contributors, we had some hurdles to finish this issue including moving RUNWAY to its new fabulous Hollywood Blvd location right off the 101.

Don't forget to check out the app and buy your Runway Coins before they go way up.

Thank you again!
Vincent Midnight



# RUNWAY

**WINTER 2019 WORLD ISSUE 42**

RUNWAYLIVE.COM

GROWING UP HOLLYWOOD

# RONNI HAWK

*exclusive*
## INTERVIEWS
**Lisa Durupt**
**Adam McArthur**
**Krista Stryker**
**Liris Crosse**

**REGENCY RANCH**

A
TOUCH
OF
WINTER

WINTER 2019

**Editor-in-Chief**
VINCENT MIDNIGHT

**Financial Director**
DAVID SAFFRON

**Fashion Director**
JULIA PERRY

**Location Director**
CATERINA MAZZOTTA

**LA Event Director**
KYLE GRAHAM

**Graphic Design**
MARRY JANE

**Managing Editor**
CASSIDY TORREY

**Chief Fashion Correspondent**
MANDI PIMENTAL

**Video Editor**
JEFF SECORSKI

**General Legal Counsel**
BRAD AXELROD

**International Legal Counsel**
WILLIAM GOLDSTEIN

**Sales East Coast**
JONATHAN LEWKOWICZ

**Sales West Coast**
STEPHANIE DAVIDSON
ANTHONY DEL CAMPO

**Distribution Manager**
BOB PETERSON @ KABLE

**Advertising Inquiries**
844-240-2250

**PHOTOGRAPHERS**
Bonnie Holland
Joline Towers
Sid Rane
Patricia De La Rosa
Patrice Berchery
Kristine Cofsky
Katana Triplett
Tamara Muth King
Rafael Clemente
Yasmine Kaleb

**CONTRIBUTING WRITERS**
Mandi Pimental
Melissa Farley

**SPECIAL THANKS**
Cathy Mazzotta
Michael Cohen
COHEN LAW GROUP
Dr. Scott Keith
Catherine Pyle Mazzotta
William Goldstein



**Miadora 10k White Gold Created White Sapphire Bridal Ring Set**



# RUNWAY
### RUNWAYLIVE.COM



*on the cover*

Ronni Hawk

Photographer:
Patricia De La Rosa
@pdelarosa.com
Fashion Editor/Stylist:
Julia Perry
@juliaperrystyle.com
Makeup:
Patrick de Fontbrune
@mchglobal.com
using Creme De La Mer
Hair:
Carlos Ortiz
@cloutierremix.com
IG: carlitos_hair

Jacket & Dress: Once Was
Bustier: Jonathon Marc Stein
Clutch: Modjewel

### A Letter from the Editor-in-Chief

Winter is had been a rush this year, it's been one of the coldest winters in RUNWAY history.

We like to give special thanks to all of our models who worked in extreme cold conditions and helped is thwart the cold of the season. In winter we get ready for the change of the new year and we collect the energy of the one we love. We hope this season has been grateful to all of you. We thank our cover girl Ronni Hawk for visiting children's hospitals with her RUNWAY along with Cat Mazzotta our president elect Editor In Chief. They both brought smiles to so many young hearts.

At RUNWAY there has been lots of changes an addition of a new studio in Hollywood for the Season and a serious upgrade to all our technology. A new Version of RUNWAY LUX is coming out soon so keep your eyes open, as always you can read the past issues of RUNWAY free on the app.

Thank You all that kept RUNWAY alive for one more season, we look forward to a even more variant Spring and to bring joy around the world.

Thank you again!
Vincent Midnight



Case 2:18-cv-02503-FMO-JC Document 106 Filed 10/16/19 Page 79 of 295 Page ID #:3232



Editor-in-Chief
VINCENT MIDNIGHT

Financial Director
DAVID SAFFRON

Fashion Director
JULIA PERRY

Location Director
JACOB MEIR

LA Event Director
KYLE GRAHAM

Graphic Design
CATERINA MAZZOTTA

Managing Editor
CASSIDY TORREY

Chief Fashion Correspondent
MANDI PIMENTAL

Video Editor
JEFF SECORSKI

General Legal Counsel
BRAD AXELROD

International Legal Counsel
WILLIAM GOLDSTEIN

Sales East Coast
JONATHAN LEWKOWICZ

Sales West Coast
STEPHANIE DAVIDSON
ANTHONY DEL CAMPO

Distribution Manager
BOB PETERSON @ KABLE

Advertising Inquiries
844-240-2250

**PHOTOGRAPHERS**
Payam Arzani
Rodney Ray
Bila B
Haldane Morris
Patrice Berchery
Greg Doherty
Marcus Owens
Michele Mattei
Mario Barberio

**CONTRIBUTING WRITERS**
Mandi Pimental
Melissa Farley

**SPECIAL THANKS**
Cathy Mazzotta
Michael Cohen
COHEN LAW GROUP
Dr. Scott Keith
Catherine Pyle Mazzotta
William Goldstein



**Graff Emerald Cut Pink Diamond Ring**
16.88 CT FANCY INTENSE PINK INTERNALLY FLAWLESS EMERALD CUT DIAMOND

# RUNWAY
**RUNWAYLIVE.COM**®

*on the cover*



Tasya Teles

Photographer:
Mario Barberio
@mariobarberiophotos
Fashion Director/Stylist:
Julia Perry
@juliaperrystyle
Makeup:
Elie Maalouf/TMG LA
@elienmaalouf @tmgla
Hair:
Michael Kanyon/Celestine
@michaelkanyon
@celestineagency

Gown: DANY MIZRACHI
Sandals: NOW PR

### A Letter from the Editor-in-Chief

Spring is in full swing and RUNWAY's eyes are on fashion around the world. In this issue we explore the art of localized photography as my very talented photographers have produced each spread with a unique style. There is always so many people to thank every issue as RUNWAY is all our personal styles reflected into one book. I hope you all enjoy these teams work as I always do.

In other news, RUNWAY LUX has been rewritten with a new payment partners. We like to thank Paypal for working with us on this new checkout for your local services. Giving people a way to express their personal style has always been the goal, this app truly brings it to life. Download it for free and put your talents out for use or book someone else to check out what they can do.

As always, we thank our normal partners, Google, Apple and Amazon. RUNWAY LUX will help localize wealth in communities and bring people together. Join up!

Thank you again!
Vincent Midnight



**Editor-in-Chief**
VINCENT MIDNIGHT

**Financial Director**
DAVID SAFFRON

**Fashion Director**
JULIA PERRY

**Location Director**
JACOB MEIR

**LA Event Director**
KYLE GRAHAM

**Graphic Design**
CATERINA MAZZOTTA

**Managing Editor**
CASSIDY TORREY

**Chief Fashion Correspondent**
MANDI PIMENTAL

**Video Editor**
JEFF SECORSKI

**General Legal Counsel**
BRAD AXELROD

**International Legal Counsel**
WILLIAM GOLDSTEIN

**Sales East Coast**
JONATHAN LEWKOWICZ

**Sales West Coast**
STEPHANIE DAVIDSON
ANTHONY DEL CAMPO

**Distribution Manager**
BOB PETERSON @ KABLE

**Advertising Inquiries**
844-240-2250

**PHOTOGRAPHERS**
Payam Arzani
Daniella Hehmann
Mario Barberio
Robert Wilde
Mishan Warnakulasuiya
Oscar Rodriguez
Stacey Bode
Tim Schaeffer
Samuel Whitworth
Haldane Morris
Patrice Berchery
Joline Towers

**CONTRIBUTING WRITERS**
Mandi Pimental
Melissa Farley

**SPECIAL THANKS**
Cathy Mazzotta
Michael Cohen
COHEN LAW GROUP
Dr. Scott Keith
Catherine Pyle Mazzotta
William Goldstein
Emily O'Neill
Tatiana Seligman
Taylor Jones
Art Byington



**14KT White Gold Emerald & Diamond Stackable Ring**
White Gold Emerald & Diamond Ring in 14K White Gold
s Style #:C5831-EWG
Stone Count:9 Emerald:0.25 tcw Rounds:0.13 tcw Top Width:4 mm Bottom Width:2 mm



**RUNWAYLIVE.COM**

*on the cover*

Emma Golijanin

Photographer: PAYAM ARZANI
@payam_official66

Fashion Director/Stylist:
JULIA PERRY
@juliaperrystyle

Makeup/Hair:
RICARDO FERRISE
@ricardoferrise1

### A Letter from the Editor-in-Chief

Summer is here and so is the heat.
This has been the hottest summer
in history and RUNWAY is smoking
hot. This issue includes swim, resort
and bridal to give a complete look
at design from around the world. As
always, I want to thank everyone that
participated in this seasons issue.



Check out the new RUNWAY LUX,
download it free on Apple or Google. It includes the last 8
issues plus our new work to you social media platform. Anyone
interested in freelance, this is your app. Sign up at RunwayLux.
com

Thank You all again for picking up you the print issue or
downloading the pdf. Hope everyone has a rocking summer
break!

Vincent Midnight

Organization and / or participation and / or involvement and / or promotion of local adult events related to sadomasochism on social media networks by Mr David Saffron and Mr Vincent Mazzotta aka Vincent Midnight. These images are screenshots of public posts on facebook and instagram. Models and actresses participating in these events are appearing in online editions of Mr Mazzotta. Styling them in "fashion" photo shoots, organized in studio of Mr Mazzotta, promotion in online editions – is a fact, proving how adult industry in Los Angeles masqueraded under name "fashion" or "runway". And this describes financial income related to these promotions.

Mr Saffron's business is location scout, responsible for rent, and organizer of adult events. Mr Saffron is involved and actively exercises cryprocurency – bitcoin.

 **Vincent Mazzotta**
June 12, 2018 · 🌐

Runway Magazine circa 2014, passing the year in Style , accepting applications now at RUNWAY LUX , welcoming new model scout David Saffron to our team Runway













 **David Saffron** is at Bar Sinister.

August 24, 2016 · ⊙

@clubbarsinister 18th birthday Wax Show. & vodka licking off the breasts of hot tattooed models. @bambujessica & @liryc_suicide good job @officially_nova A special thanks to @kentkaliber for you video skills and being such a wonderful host and friend. And @playmatebk123 for your snapchat videos also shoutout to my roommate @kityfaya for joining me at party Thank you all was fun playing with you.

#sg #tattoos #unicorn #blonde #barsinisterhollywood #vodka #semi #gogodancers #suicidegirls #dreadlocks #dancers #gogo #kentkaliber #masterd #bambujessica #fetish #fetishperformance #instagood #barsin #hollywood #hollyweird #performance #cnn



▶       -0:34  ⚙ ▢ ⤢ ◀))

👍❤ 21                                    6 Comments  709 Views







Ownership of Mr David Saffron multiple business entities, The Broken Door, LLC,
specializations and trademarks



## Personal Information

This section contains known aliases, birth information, and potential imposters gleaned from public records.

### Full Name
David Gilbert Saffron

### Birth Information
Age 46

Birth Date July 24, 1972

### Known Aliases
Davidsaffron Saffron

# Jobs
Company (Industry)
Job Title
Dates
Bit Coin Wallet Recovery Trust

### LFG

### Omicron2012
Ceo

### BROKEN DOOR LLC

### WizKidsNow
Marketing Manager

# Possible Relatives

David Gilbert Saffron's Relatives

### Rebecca Brooke Saffron

Age: 38 (approx.)

Denver, Colorado

### Genevieve Barbara Saffron

1033 N Hazard Ave, Los Angeles, CA 90063-1244

4854nomaddrive, Owls Head, ME 04854

14942 Hamlin St, Van Nuys, CA 91411-1406

4854nomaddrive, Beverly Hills, CA 90213

75464 La Sierra Dr, Palm Desert, CA 92211-3161

6726 Leland Way 1, Los Angeles, CA 90028-7708

6728 Leland Way, Los Angeles, CA 90028

1033 Higard, Los Angeles, CA 90024

4854 Nomad Drive, Burbank, CA 91505

## Criminal Records

A Criminal Search for David Gilbert Saffron (46 years old) in North Hollywood, CA 91601 returned the following possible likely results:

**Charges Filed Dec. 4, 1998**
Source San Bernardino County Historic (California)
Case Number HU16274DS
Source
San Bernardino County Historic
Source State
California
Personal Details
First Name
David G Saffron
Middle Initial
G
Last Name
Saffron
Age
46
Date of Birth

July 24, 1972
Sex Offender
No
Dec. 4, 1998 - Charges Filed
Charges Filed Date
Dec. 4, 1998
Crime Location
San Bernardino, California
Case Number
HU16274DS
Court Name
Court


## Possible Judgments
### Judgment (Jul. 24, 2018)
Name
David G Saffron
Address
4854 Nomad Dr, Woodland Hills, CA 91364-4718
Creditor Name
NOVIAN & NOVIAN LLP
Filing Location
Los Angeles, CA
Court Case Number
SC127823
Total Judgment Amount
$43,120.26
Deed Category Type
Placement
Damar Document Type
Judgment
Recording Number
739218
Recording Date
Jul. 24, 2018
Abstract Issued Date
Jul. 6, 2018

### Judgment (Jun. 18, 2012)
Name
David Saffron
Address
4854 Nomad Dr, Woodland Hills, CA 91364-4718
Creditor Name
RICHARD SEAVER NORTHERN TRUST
Filing Location
Los Angeles, CA
Court Case Number
12B00073
Total Judgment Amount
$19,100

Deed Category Type
Placement
Damar Document Type
Judgment
Recording Number
904744
Recording Date
Jun. 18, 2012
Abstract Issued Date
Jun. 1, 2012



(https://maps.google.com/maps?ll=33.407162,-111.901245&z=12&t=m&hl=en-GB&gl=US&mapclient=apiv3)   Map data ©2018 Google

 1969 E Broadway Rd, Tempe, AZ 85282

 *(888) 784-9997*

✉ info@brokendoormedia.com

Name

Email

Enter Phone Number

Message

I'm not a robot

reCAPTCHA
Privacy - Terms

submit

The Broken Door, LLC Trademarks

# The Broken Door, LLC Trademarks

### 3D FETISH

Entertainment services, namely, providing a web site featuring adult-themed photographs and videos

**Owned by:** The Broken Door, LLC

**Serial Number:** 77820986

### 3D PORN

Entertainment services, namely, providing a web site featuring adult-themed photographs and videos

**Owned by:** The Broken Door, LLC

**Serial Number:** 77821192

We use cookies to improve the experience of our website. By continuing to use our website, you consent to the use of cookies. To understand more about how we use cookies, please see our Privacy Policy.

**Accept & Continue**

Mr Saffron is involved and actively exercises cryprocurrency – bitcoin. Business activities of Mr Saffron and Mr Vincent Mazzotta aka Vincent Midnight in relation to bitcoin, omicron, runwaycoin.



**RUNWAY**
6 637 Tweets

Tweets     Tweets et réponses     Médias     J'aime

#news

RUNWAY @Runway · 11/06/2018



Inside information? RUNWAY checks out top earning #bitcoin #money Company theomicrontrust.com/?affiliate=af-… Sign up for Omicron , they made the most wealth this year #winner



1



**Vincent Mazzotta**

December 29, 2017 · Los Angeles, CA, United States · 🌐

I made as much as I spend in a year on cryptocurrency . All of you that doubted it. HAHAHAHAHAHAHAHAHAHA , dam, I got so many millionaire friends now because of it , this is crazy. Going to start converting it to USD in January. Plus thanks to Trump I can move my funds from all over the world home. My small group mined over 100 million dollars in coins. It was by far RUNWAY's largest earning asset. Thank you David Saffron for your advice in 2013. #wealth #rich #love #happiness . I am starting round 2 second week of January, if you want to invest with RUNWAY pool jit me before then. Starting investment is $2K , we guarantee doubling of USD within 1 year minimum.

 9                                                              2 Comments

👍 Like                                              ↪ Share



**David Saffron** Your very welcome,
its been years telling people only a few listened to me, and they are all millionaires now.

the rest said bubble, missed train , missed boat , scam etc etc
they are all still workers in the great machine.

BTC will be over $40,000 by end of 2018
LTC will be over $600 by end of 2018
ETH will be over $1000 by end of 2018

so no you have not missed the anything , your at the station time to board the damn train!!!!!

Like · 1y · Edited



**Myr Iam** Can us simple mortals be in about this secret...? Or is it too late??? 🥴 😅

Like · 1y



**RunwayCoin**
March 4 · 🌐

Thank you David Saffron for all your help with runway develop , from coin to API . We launch soon, again thanks to David . Stay tuned!

👍 1





**Vincent Mazzotta**
Yesterday at 6:16 AM ·

Join the Initiative, get free coin.

Initiative Q is an attempt by ex-PayPal guys to create a new payment system instead of credit cards (designed in 1950s). The system uses its own currency, the Q, and to get people started they are allocating Qs to people that sign up now (amount drops as more people join). Signing up is free and they only ask for your name and an email. There's nothing to lose but if this becomes a leading payment method your Qs can be worth a lot. If you missed getting bitcoin, you wouldn't want to miss this.

**Join tomorrow's currency, today**

Initiative Q

## Initiative Q

Join tomorrow's currency, today

INITIATIVEQ.COM



## Vincent Midnight
### 4 837 Tweets

**Tweets**    Tweets et réponses    Médias    J'aime

butchered into what we have now, it's time for peaceful revolution. #vote

        ♡ 1    



**Vincent Midnight** @Vin... · 20/05/2018 ∨
Special thanks to David Saffron for organizing #edc , thanks from Runway , good to be back in #hollywood 🎼😎🙏📚

        ♡    



**Vincent Midnight** @Vin... · 11/05/2018 ∨
Some idiot is mining my RUNWAYCOIN , what they don't know that the coin is a placeholder for a service , so basically they just signed up to do allot of service . The miner is legally obligated to work unless... facebook.com/VincentMidnigh...

♡ 1        ♡    

 

RUNWAY LUX        Whitepaper        Q

Use the RUNWAY Coin token in the RUNWAY LUX app. Purchase them here and use them in the app for services.

Companies come and go all the time. RUNWAY is 20 years old this summer and its been in international newsstand circulation and audited since 2007. RUNWAY TV has been on the air since 2014 and now is on APPLE TV, ROKU and GOOGLE TV apps worldwide. Plus RUNWAY offers a work platform for talents to bloom and users a fast convenient way to get things done. Our trademarks are listed with WIPO, our name is world famous. Trusted off the IP, RUNWAY coin is a investment into the future and will be here for years to come.

# RWC VALUE = $1 USD
# www.facebook.com/runwaycoin

USE THE COIN IN RUNWAY LUX



**Brad Lee Axelrod**
10 hrs · 🌐

I have done this. It's easy. You get alot of Q and no strings.

Initiative Q is an attempt by ex-PayPal guys to create a new payment system instead of credit cards (designed in 1950s). The system uses its own currency, the Q, and to get people started they are allocating Qs to people that sign up now (amount drops as more people join). Signing up is free and they only ask for your name and an email. There's nothing to lose but if this becomes a leading payment method your Qs can be worth a lot. If you missed getting bitcoin, you wouldn't want to miss this.



## Initiative Q

Join tomorrow's currency, today

INITIATIVEQ.COM



**Brad Lee Axelrod**
13 hrs · 🌐

Initiative Q is building a new payment network and giving away significant sums of their future currency to early adopters. It's by invite only and I have a limited number of invites. My personal invite link:

# Join tomorrow's currency, today

Initiative **Q**

INITIATIVEQ.COM
**Initiative Q**
Join tomorrow's currency, today



**RUNWAYCOIN VALUE = $15.82 USD**

winner will be announced May 25th.

**RUNWAY NEWS (APRIL 17th, 2018).** Google signs FireChat deal with RUNWAY which will allows for the integration of FireChat into the LUX platform for user and talent to communicate in a encrypted stream. RUNWAY's engineering team is expecting the new LUX app to to go out around the 1st of MAy 2018. This will be the second contract with Google including the deal with Google Maps to provide access to satellites around this planet.

**RUNWAY NEWS (MAY 4th, 2018).** RUNWAYCOIN was presented today to a multitude of investors in Hollywood California. The event was hosted by international investor David Saffron and it was glamorous. A full bar, chefs from around the world and art from everywhere was enjoyed as a handful of engineers showed off their new technology.

RUNWAY COIN

DOWNLOAD WALLET    RUNWAY LUX    BUY    WHITEPAPER    CART    JOIN US

PURCHASE

Companies come and go all the time. RUNWAY is 20 years old this summer and its been in international newsstand circulation and audited since 2007. RUNWAY TV has been on the air since 2014 and now is on APPLE TV, ROKU and GOOGLE TV apps worldwide. Plus RUNWAY offers a work platform for talents to bloom and users a fast convenient way to get things done. Our trademarks are listed with WIPO, our name is world famous. Trusted off the IP. RUNWAY coin is a investment into the future and will be here for years to come.







Mr David Saffron arrests and filed complaints against him for different felonies related to bitcoin and cryptocurrency exchange.



# [ Beware ] - fraud alert ... Bitcoin Scammer David Saffron! Inbox



Frank Calabro Jr



View details



Good Day Entrepreneur,

This notice is to inform you about a fraudster named: **David Gilbert Saffron**

If you are contacted or invited to one of his webinars or in person meetings do not attend.

He promises Bitcoin investors that he
will triple your bitcoin in a few days.

His Lawer David Kagel was even in on
the scheme and produced a letter that
states he is hold 1,000 bitcoin in a wallet
that he controls. In the event the Saffron is
unable or unwilling to pay you back simply
follow the procedure for a refund.

**There is no such wallet or escrow account!**

I have REPORTED him to the FBI, SEC,
Attorney General in Los Angeles and other
agencies.

He claims to be the Crypto Currency Trader
for USI-Tech and numerous Bitcoin offers both
past and present.

CLICK HERE

I met David in person in Las Vegas in January
and he told me face to face that he was doing
the arbitrage trading for USI-Tech. He went on
to claim that USI gave him Bitcoin each month
and he doubled that coin for them and then sent
it back. (this has never been verified)

He had in depth knowledge of USI-Tech somehow
and was seen with Billionaire *Evan Ahern.*

Saffron leveraged being seen with a Billionaire by stating to his Bitcoin investors that Ahern was a client. (this is a lie) and part of his false claims.

I was pulled on to a call last night with several people and Saffron is still going full speed ahead with his scheme.

It is unclear how many people this scum bag has stolen from but from our small group of 8 people 206.5 bitcoin were collected on Jan 6 & 7.

My guess he has swindled 100's of people by now and collected 10's of millions of dollars ...

We have collected detailed files and evidence on David Saffron.

This guy is going to end up in prison for a very long time. Which is where is belongs.

Frank Calabro Jr









Reported scam » Person

# David Saffron

David Saffron & Attorney David Kagel Bitcoin Scam

 (2)          📞 (310) 849-6408          🔗 Website


Review


Favorite


Share

I Frank E Calabro Jr would like to file an official report of an investment scheme being ran by David Gilbert Saffron and his attorney David Kagel.

I personally invested 50 Bitcoin into the investment scam on Jan 6th 2018. On that date the equivalent to US dollars was $17,161 per BTC or $858,050.00 USD.

David Saffron through an online webinar and in person meetings promised, convinced and explained how he could multiply Bitcoin through strategic arbitrage tactics in the crypto currency markets. He promised to double my investment of Bitcoin in as fast as 3 days. He then offered total security and safety to protect my investment through his attorney David Kagel.

My first in person lunch meeting with David Saffron was in Las Vegas on January 10th 2018. This gathering included several other investors. During our discussions David Saffron called his attorney Mr. David Kagel. David's cell phone was passed around the table to each investor attending that meeting.

When I spoke to attorney David Kagel and introduced myself he was very friendly & personable on the phone. Mr. Ka... Bitcoin investmen...

Ad closed by Google

Stop seeing this ad    Why this ad? ▷

The letter stated that his law firm had unrestricted access. In addition, he held no less than 1,000 Bitcoin in this wallet. The letter also stated the exact instructions to follow in the event of that David Saffron was unwilling or unable to return my deposit.

The last time that I have seen David Saffron was at a party he held in his Penthouse Suite at the Cosmopolitan Hotel & Casino in Las Vegas. I arrived to that gathering at midnight and I departed around 3am on Saturday January 6th 2018.

Communication since has been through other investors pulled into Saffron's scheme. There was no organization as to how we would be paid and exactly who to contact. Also, after the in-person meeting in Vegas which I left being told by David Saffron that he could double my Bitcoin every week, the duration of time (1 week) kept changing.

From my notes and through what other investors were telling me, the new time table to double my coins was once every 21 days. I was never told when that 21-day trading cycle started or ended.

My next and last communication from David Saffron was on February 26th 2018. He stated in a text message that he had received a letter from his attorney Mr. David Kagel. This letter was from my Attorney John Owen Murrin and as part of a group of investors, we were requesting that our original Bitcoin be returned. The total amount of Bitcoin collected from our group of 8 investors was 206.5 bitcoins or $3,543,746.50 in US dollars.

David Saffron stated that he had already made arrangements with our law firm to return the funds which is a lie as I had just gotten out of an hour-long meeting with our legal team just minutes before receiving Saffron's text.

I do not know how long or how many investors have been scammed in this ongoing charade.?

David Saffron and his attorney David Kagel must be arrested, charged and stopped from this criminal activity immediately. They have already stolen over 3 million dollars from our small group of 8 people.

In my last correspondence with David Saffron he boasted how is he continues to travel across the country presenting his fraudulent scheme. He has ties to organized crime in Australia and has a passport issued from that country. I fear that he will flee before being brought to justice. His actions are of a conniving felon and he must be stopped immediately!

Related Scam

David Gilbert Saffron                 David Saffron                         Petr Strebl, Peter Strebl

| Con Artists | CryptoCurrency | Internet Scams | Ripped Off | Thief |

The reviews, complaints and scams posted about David Saffron is permanant record located at https://dirtyscam.com/reviews/david-saffron-2/ Search for all reviews, complaints and scams about David Saffron

The reviews, complaints and scams about David Saffron is posted by anonymous. We at dirty scam are not liable for the content posted about David Saffron. If you have any concern about David Saffron's report, you can contact us by using this email.

Is David Saffron legit? Is David Saffron quack? Is David Saffron fake? Is David Saffron a fraud website or business or person? Please write down your review or report a fraud on dirtyscam.com to raise your voice, you might not be alone who was ripped off by David Saffron.

---

**Rate and write a review on David Saffron**

---

**Your overall rating of this report:**

★☆☆☆☆    | Terrible |

**Title of your review:**

| Summarize your opinion or highlight an interesting detail |

**Name** *

| Your name |

**Email** *

| your@email.com |



Español | Tiếng Việt | 한국어 | 中文 | հայերեն

Search

| Home | Online Services | Forms, Filings & Files | Self-Help | Divisions | Jury | General Info |
|------|----------------|------------------------|-----------|-----------|------|--------------|
| | Pay Fines, Search Records... | Forms, Filing Fees... | Self-Rep, Info, FAQs... | Civil, Criminal, Family... | Jury Duty Portal, Q&A... | Courthouses, ADA ... |

ONLINE SERVICES

# Search for Case Number by Name

Q & A   Logout

Disclaimer 

The following list might contain records of different people/companies with the same name, and it may not contain records of the person/entity for whom you are searching.

Result of query on Monday, August 27, 2018 06:39:07 AM
Last Name: SAFFRON
First Name: DAVID

Click on the name to view the case number and a summary of the case.

**To avoid any problems, DO NOT REFRESH OR RELOAD this page.**

1  2  ▶ Next
(Total Pages: 2)

New Search

| # | Name | Case Type | Filing Date | Location | Available Imaged Documents |
|---|------|-----------|-------------|----------|----------------------------|
| 1 | SAFFRON DAVID | U.D. RESIDENTIAL (Limited) | 04/15/2005 | Van Nuys Courthouse West | |
| 2 | SAFFRON DAVID | OTHER COMPLAINT - OTHER (Limited) | 10/11/2006 | Van Nuys Courthouse West | |
| 3 | SAFFRON DAVID | Small Claims (Limited) | 12/03/2007 | Van Nuys Courthouse West | |
| 4 | SAFFRON DAVID | U.D. COMMERCIAL (Limited) | 04/08/2009 | Stanley Mosk Courthouse | |
| 5 | SAFFRON DAVID | Small Claims (Limited) | 02/22/2012 | Van Nuys Courthouse West | |
| 6 | SAFFRON DAVID | Small Claims (Limited) | 02/20/2014 | Stanley Mosk Courthouse | |
| 7 | SAFFRON DAVID | Small Claims | 09/22/1993 | West Los Angeles Courthouse | |

| 8 | SAFFRON DAVID | Small Claims | 05/13/1994 | West Los Angeles Courthouse | |
| 9 | SAFFRON DAVID | Civil (Limited) | 04/07/2016 | Norwalk Courthouse | |
| 10 | SAFFRON DAVID | Small Claims (Limited) | 05/09/2016 | Inglewood Courthouse | |
| 11 | SAFFRON DAVID | Small Claims | 03/20/1996 | West Los Angeles Courthouse | |
| 12 | SAFFRON DAVID | Small Claims | 03/20/1996 | West Los Angeles Courthouse | |
| 13 | SAFFRON DAVID | Small Claims (Limited) | 10/04/1993 | Glendale Courthouse | |
| 14 | SAFFRON DAVID | U.D. RESIDENTAIL - UNLAWFUL DETAINER (Limited) | 09/08/1993 | Stanley Mosk Courthouse | |
| 15 | SAFFRON DAVID | U.D. RESIDENTAIL - UNLAWFUL DETAINER (Limited) | 10/24/1995 | Stanley Mosk Courthouse | |
| 16 | SAFFRON DAVID | Small Claims | 09/25/1996 | Stanley Mosk Courthouse | |
| 17 | SAFFRON DAVID | Other Promissory Note/Collections (Unlimited) | 04/29/1998 | Stanley Mosk Courthouse | |
| 18 | SAFFRON DAVID | Commrcial Compl-Not Tort or Complx (Unlimited) | 10/09/1998 | Stanley Mosk Courthouse | |
| 19 | SAFFRON DAVID | Othr Breach Contr/Warr-not Fraud (Unlimited) | 01/02/2002 | Stanley Mosk Courthouse | |
| 20 | SAFFRON DAVID | Other Promissory Note/Collections (Unlimited) | 05/18/2004 | Stanley Mosk Courthouse | |
| 21 | SAFFRON DAVID | Fraud (no contract) (Unlimited) | 09/10/2004 | Stanley Mosk Courthouse | |
| 22 | SAFFRON DAVID | Other Commercial/Business Tort (Unlimited) | 07/21/2006 | Stanley Mosk Courthouse | |
| 23 | SAFFRON DAVID | Breach Rental/Lease (not UD/Evict) (Unlimited) | 11/05/2009 | Stanley Mosk Courthouse | 54 |
| 24 | SAFFRON DAVID | Breach Contrct/Warnty (Sellr Pltf) (Unlimited) | 06/01/2018 | Stanley Mosk Courthouse | 4 |
| 25 | SAFFRON DAVID | Trust | 07/28/2010 | Stanley Mosk Courthouse | |

1 2 ▶ Next

New Search

Print this page

Art Showcased in
Los Angeles Courthouse Jury Rooms

[PRINT]

## CASE INFORMATION

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

**Case Number:** SC127823
NOVIAN & NOVIAN, LLP VS DAVID SAFFRON, ET AL.

**Filing Courthouse:** Santa Monica Courthouse

**Filing Date:** 07/17/2017
**Case Type:** Collections Case-Seller Plaintiff (General Jurisdiction)
**Status:** Default Judgment Pursuant to Decl. 06/14/2018

## FUTURE HEARINGS

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

None

## PARTY INFORMATION

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

KAGEL DAVID - Defendant

NOVIAN * NOVIAN LLP - Plaintiff

NOVIAN FARHAD - Attorney for Plaintiff

SAFFRON DAVID - Defendant

SAFFRON DAVID G. - Deft's AKA

SAFFRON DAVID M. - Deft's AKA

THE BROKEN DOOR. LLC - Defendant

THE DAVID G. SAFFRON SPENDTHRIFT TRUST - Defendant

## Documents Filed

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

Documents Filed (Filing dates listed in descending order)

**07/06/2018** Abstract of Judgment Issued (ABSTRACT ISSUED AND MAILED IN SASE )
Filed by Attorney for Plaintiff

**07/06/2018** Abstract of Judgment Issued (ABSTRACT ISSUED AND PLACED IN ATTY FOLDER FOR JANNEY )
Filed by Attorney for Plaintiff

**06/14/2018** Judgment (BY DEFAULT; )
Filed by Attorney for Plaintiff

**06/14/2018** Request for Dismissal-Partial (AS TO THE BROKEN BOX, LLC AND DOES 1 THROUGH 10. )
Filed by Attorney for Plaintiff

**06/14/2018** Request to Enter Judgment
Filed by Attorney for Plaintiff

**06/14/2018** Statement - General
Filed by Attorney for Plaintiff

**06/05/2018** Declaration (DECLARATION OF FARHAD NOVIAN IN SUPPORT OF REQUEST FOR ENTRY OF JUDGMENT AFTER DEFAULT )
Filed by Attorney for Plaintiff

**04/13/2018** Request for Entry of Default (AS TO; DAVID KAGEL, AS TRUSTEE OF THE DAVID G. SAFFRON SPENDTHRIF TRUST-RECEIVED )
Filed by Attorney for Plaintiff

**04/13/2018** Default Entered (AS TO; DAVID KAGEL, AS TRUSTEE OF THE DAVID G. SAFFRON SPEND- THRIFT TRUST-ENTERED )
Filed by Attorney for Plaintiff

**03/12/2018** Default Entered (AS TO; DAVID SAFFRON, AN INDIVID, ENTERED )
Filed by Attorney for Plaintiff

**03/12/2018** Request for Entry of Default (AS TO; DAVID SAFFRON, AN INDIV.- RECEIVED )
Filed by Attorney for Plaintiff

**02/06/2018** Proof of Publication
Filed by Attorney for Plaintiff

**01/23/2018** Statement-Case Management
Filed by Attorney for Plaintiff

**11/29/2017** Order for Publication
Filed by Attorney for Plaintiff

**11/28/2017** Req for Service/Publication
Filed by Attorney for Plaintiff

**11/20/2017** Proof-Service/Summons
Filed by Attorney for Plaintiff

**11/13/2017** Proof-Service/Summons
Filed by Attorney for Plaintiff

**07/28/2017** Summons Filed (FIRST AMENDED SUMMONS )
Filed by Attorney for Plaintiff

**07/28/2017** First Amended Complaint (SUMMONS ISSUED )
Filed by Attorney for Plaintiff

**07/20/2017** First Amended Complaint
Filed by Attorney for Plaintiff

**07/20/2017** Summons Filed (FIRST AMENDED SUMMONS )
Filed by Attorney for Plaintiff

**07/17/2017** Summons Filed
Filed by Attorney for Plaintiff

**07/17/2017** Complaint Filed

Proceedings Held

---

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

Proceedings Held (Proceeding dates listed in descending order)

**06/15/2018** at 09:00 am in Department WEM, Mitchell L. Beckloff, Presiding
OSC-Failure to File Dism. or Judg. (RE JUDGMENT) - **Advanced to this date & Vacated**

**06/14/2018** at 08:30 am in Department WEM, Mitchell L. Beckloff, Presiding
Judgment - **Entered**

**05/01/2018** at 08:30 am in Department WEM, Mitchell L. Beckloff, Presiding
OSC-Failure to File Dism. or Judg. (AS TO DEFAULT AND DEFAULT JUDGMENT) - **OSC held & continued**

**04/02/2018** at 08:30 am in Department WEM, Mitchell L. Beckloff, Presiding
OSC-Failure to File Dism. or Judg. (RE DEFAULT) - **OSC held & continued**

**01/31/2018** at 08:30 am in Department WEM, Mitchell L. Beckloff, Presiding
Conference-Case Management - **Court Makes Order**

**11/14/2017** at 08:30 am in Department WEM, Mitchell L. Beckloff, Presiding
Conference-Case Management - **Held-Continued**

---

Register Of Actions

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

Register of Actions (Listed in descending order)

**07/06/2018** Abstract of Judgment Issued (ABSTRACT ISSUED AND MAILED IN SASE )
Filed by Attorney for Plaintiff

**07/06/2018** Abstract of Judgment Issued (ABSTRACT ISSUED AND PLACED IN ATTY FOLDER FOR JANNEY )
Filed by Attorney for Plaintiff

**06/15/2018** at 09:00 am in Department WEM, Mitchell L. Beckloff, Presiding
OSC-Failure to File Dism. or Judg. (RE JUDGMENT) - **Advanced to this date & Vacated**

**06/14/2018** at 08:30 am in Department WEM, Mitchell L. Beckloff, Presiding
Judgment - **Entered**

**06/14/2018** Statement - General
Filed by Attorney for Plaintiff

**06/14/2018** Request to Enter Judgment
Filed by Attorney for Plaintiff

**06/14/2018** Request for Dismissal-Partial (AS TO THE BROKEN DOOR, LLC AND DOES 1 THROUGH 10. )
Filed by Attorney for Plaintiff

**06/14/2018** Judgment (BY DEFAULT; )
Filed by Attorney for Plaintiff

**06/05/2018** Declaration (DECLARATION OF FARHAD NOVIAN IN SUPPORT OF REQUEST FOR ENTRY OF JUDGMENT AFTER DEFAULT )
Filed by Attorney for Plaintiff

**05/01/2018** at 08:30 am in Department WEM, Mitchell L. Beckloff, Presiding
OSC-Failure to File Dism. or Judg. (AS TO DEFAULT AND DEFAULT JUDGMENT) - **OSC held & continued**

**04/13/2018** Request for Entry of Default (AS TO; DAVID KAGEL, AS TRUSTEE OF THE DAVID G. SAFFRON SPENDTHRIF TRUST-RECEIVED )
Filed by Attorney for Plaintiff

**04/13/2018** Default Entered (AS TO; DAVID KAGEL, AS TRUSTEE OF THE DAVID G. SAFFRON SPEND- THRIFT TRUST-ENTERED )
Filed by Attorney for Plaintiff

**04/02/2018** at 08:30 am in Department WEM, Mitchell L. Beckloff, Presiding
OSC-Failure to File Dism. or Judg. (RE DEFAULT) - **OSC held & continued**

**03/12/2018** Request for Entry of Default (AS TO; DAVID SAFFRON, AN INDIV.- RECEIVED )
Filed by Attorney for Plaintiff

**03/12/2018** Default Entered (AS TO; DAVID SAFFRON, AN INDIVID, ENTERED )
Filed by Attorney for Plaintiff

**02/06/2018** Proof of Publication
Filed by Attorney for Plaintiff

**01/31/2018** at 08:30 am in Department WEM, Mitchell L. Beckloff, Presiding
Conference-Case Management - **Court Makes Order**

**01/23/2018** Statement-Case Management
Filed by Attorney for Plaintiff

**11/29/2017** Order for Publication
Filed by Attorney for Plaintiff

**11/28/2017** Req for Service/Publication
Filed by Attorney for Plaintiff

**11/20/2017** Proof-Service/Summons
Filed by Attorney for Plaintiff

**11/14/2017** at 08:30 am in Department WEM, Mitchell L. Beckloff, Presiding
Conference-Case Management - **Held-Continued**

**11/13/2017** Proof-Service/Summons
Filed by Attorney for Plaintiff

**07/28/2017** Summons Filed (FIRST AMENDED SUMMONS )
Filed by Attorney for Plaintiff

**07/28/2017** First Amended Complaint (SUMMONS ISSUED )
Filed by Attorney for Plaintiff

**07/20/2017** Summons Filed (FIRST AMENDED SUMMONS )
Filed by Attorney for Plaintiff

**07/20/2017** First Amended Complaint
Filed by Attorney for Plaintiff

**07/17/2017** Complaint Filed

**07/17/2017** Summons Filed
Filed by Attorney for Plaintiff

COPY

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

AUG 29 2018

Sherri R. Carter, Executive Officer/Clerk

By Shaunya Bolden, Deputy

**BY FAX**

1   Adam I. Miller (SBN 269990)
    *Attorneys for Plaintiff*
2   MILLER MILLER GERBER LLP
    1500 Quail Street - Suite 490
3   Newport Beach, California 92660
    Telephone: (714) 450-3800
4   Facsimile:  (714) 450-3800
    E-mail: amiller@mmg-llp.com
5
    David C. Silver, *pro hac vice forthcoming*
6   Jason S. Miller, *pro hac vice forthcoming*
    *Attorneys for Plaintiff*
7   SILVER MILLER
    11780 West Sample Road
8   Coral Springs, Florida 33065
    Telephone: (954) 516-6000
9   E-mail: DSilver@SilverMillerLaw.com
    E-mail: JMiller@SilverMillerLaw.com
10

11          SUPERIOR COURT OF THE STATE OF CALIFORNIA
              IN AND FOR THE COUNTY OF LOS ANGELES
12

13   HAYAN CHARLSTON, an individual; and        CASE NO.: BC 708601   *DEPT. 24*
     CHIN SE KIM, an individual
14
            Plaintiff,                           **AMENDED COMPLAINT FOR:**
15
            v.                                   **(1) BREACH OF CONTRACT**
                                                 **(2) RESCISSION OF CONTRACT**
16   DAVID SAFFRON, an individual;               **(3) FRAUDULENT INDUCEMENT**
     DAVID L. KAGEL, an individual;              **(4) NEGLIGENT**
17   KAGEL LAW, P.C., a California corporation;       **MISREPRESENTATION**
     WONJAE KIM a/k/a WARREN KIM, an             **(5) BREACH OF FIDUCIARY DUTY**
18   individual; and                             **(6) CONVERSION**
     INA P. KAGEL, an individual; and DOES       **(7) CIVIL CONSPIRACY**
19   1 to 25, inclusive,                         **(8) BREACH OF CONTRACT**
            Defendants.
20
                                                 **JURY TRIAL DEMANDED**
21
                                                 **DEMAND EXCEEDS $25,000.00**
22

23      Plaintiffs HAYAN CHARLSTON, an individual; and CHIN SE KIM, an individual

24   ("Plaintiffs"), by and through undersigned counsel, hereby sue Defendants DAVID SAFFRON,

25                                       1
                              AMENDED COMPLAINT

1   an individual; DAVID L. KAGEL, an individual; KAGEL LAW, P.C., a California corporation

2   ("KAGEL LAW"); WONJAE KIM a/k/a WARREN KIM, an individual (collectively the

3   "BWM Defendants"); and INA P. KAGEL, an individual ("Defendant INA KAGEL") (BWM

4   Defendants and Defendant INA KAGEL collectively "Defendants"); for monetary damages

5   and equitable relief.  In support thereof, Plaintiffs allege as follows:

6                          **PRELIMINARY STATEMENT**

7        1.      This action is brought by Plaintiffs -- investors who contributed Two Hundred

8   Thousand Dollars ($200,000.00) to a cryptocurrency investment program run by the BWM

9   Defendants.  In the investment program, each defendant played an important role: Defendant

10   WONJAE KIM was the recruiter, Defendant DAVID KAGEL (through KAGEL LAW, the law

11   firm he jointly operates with Defendant INA KAGEL) was the attorney and escrow agent

12   giving the enterprise an air of legitimacy and security, and Defendant SAFFRON was the

13   investment planner who orchestrated the operation.

14       2.      Despite their promises to Plaintiffs of wealth, professionalism, and managed risk

15   in the explosively popular world of cryptocurrency, the BWM Defendants perpetrated upon

16   Plaintiffs a fraudulent financial scheme as old as time itself.

17       3.      The BWM Defendants' representations to Plaintiffs were nothing more than a

18   ruse to separate Plaintiffs from their money, with no intent to invest Plaintiffs' funds in

19   legitimate investment vehicles or provide Plaintiffs any positive return on their investments.

20       4.      Instead, the BWM Defendants were focused on converting Plaintiffs funds to

21   their own benefit, which they did in short order amidst a sea of excuses and misdirection with

22   the hope that Plaintiffs would not uncover the fraud perpetrated upon them.

23

24

25                                    2
                          AMENDED COMPLAINT

5.      Plaintiffs seek compensatory and equitable relief rescinding their investments with the BWM Defendants and having all Defendants restore to them the assets and funds they were falsely induced into investing.

**GENERAL ALLEGATIONS**

**THE PARTIES**

**Plaintiffs**

6.      Plaintiff HAYAN CHARLSTON is an individual domiciled in Pasadena, California and is *sui juris*.

7.      Plaintiff CHIN SE KIM is an individual domiciled in Orange, California and is *sui juris*.

**Defendants**

8.      Defendant DAVID SAFFRON is an individual domiciled in Los Angeles, California and is *sui juris*.

9.      Defendant DAVID L. KAGEL ("Defendant DAVID KAGEL") is an individual domiciled in Los Angeles, California and is *sui juris*.

10.     Defendant KAGEL LAW is a professional corporation organized under the laws of the state of California and maintains its principal place of business in Los Angeles, California.  Upon information and belief, KAGEL LAW is currently controlled by its founder and President, DAVID KAGEL.  In addition, public records reflect that Defendant INA KAGEL is an attorney and is a Partner at KAGEL LAW, where she serves as the company's Secretary and Chief Financial Officer.

11.     Defendant WONJAE KIM a/k/a WARREN KIM is an individual domiciled in Irvine, California and is *sui juris*.

3
AMENDED COMPLAINT

12.     Defendant INA P. KAGEL is an individual domiciled in Los Angeles, California and is *sui juris*. As noted above, public records state that Defendant INA KAGEL is an attorney and is a Partner at KAGEL LAW, where she serves as the company's Secretary and Chief Financial Officer.

## Other Liable Persons/Entities

13.     In addition to those persons and entities set forth as Defendants herein, there are likely other parties who may well be liable to Plaintiffs, but respecting whom Plaintiffs currently lack specific facts to permit them to name such person or persons as a party defendant. By not naming such persons or entities at this time, Plaintiffs are not waiving their right to amend this pleading to add such parties, should the facts warrant adding such parties.

## JURISDICTION AND VENUE

### Subject Matter Jurisdiction

14.     This Court has subject matter jurisdiction over this action pursuant to California Code of Civil Procedure § 410.10 because the amount in controversy exceeds Twenty-Five Thousand Dollars ($25,000.00), exclusive of interest, costs and attorneys' fees.

### Personal Jurisdiction

15.     This Court has personal jurisdiction over Defendants because: (a) at least one Defendant is operating, present, and/or doing business within this District, and (b) Defendants' breaches and unlawful activity occurred within this District.

16.     The BWM Defendants solicited investors in this jurisdiction, including Plaintiffs, to participate in the Bitcoin Wealth Management program -- reaping from those investors large sums of money and other assets, including valuable cryptocurrency.

4
AMENDED COMPLAINT

17.     In light of the foregoing, Defendants purposefully availed themselves of the benefits of operating in this jurisdiction; and this Court may exercise personal jurisdiction over Defendants.

### Venue

18.     Venue is proper pursuant to California Code of Civil Procedure §§ 395(a) and 395.5 in that a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district, as several of the defendants reside and work in Los Angeles and the BWM Defendants operated their Bitcoin Wealth Management program in Los Angeles as well.

19.     In light of the foregoing, this forum is a proper venue in which to adjudicate this dispute.

### FACTUAL ALLEGATIONS APPLICABLE TO ALL COUNTS

#### PLAINTIFFS ARE LURED INTO TRANSFERRING THEIR FUNDS TO DEFENDANTS

20.     In late-2017, Defendant KIM introduced Plaintiffs to Defendants SAFFRON and KAGEL at a meeting organized by the BWM Defendants.

21.     The meeting -- held at a private medical office -- served as an opportunity for the BWM Defendants to introduce themselves to Plaintiffs (and other investors) and to induce Plaintiffs (and other investors) into investing in a purported high-yield, low-risk cryptocurrency investment program (the "Bitcoin Wealth Management program").

22.     According to the BWM Defendants' sales pitch, investors (like Plaintiffs) would deliver to the BWM Defendants cryptocurrency and fiat currency as an investment, and the BWM Defendants would return to the investors double the amount of their invested funds within one month.  For example, if an investor were to deliver to the BWM Defendants

1    cryptocurrency or fiat currency valued at $100,000.00, that investor would receive a $200,000.00

2    payout -- in the form of either cryptocurrency or fiat currency -- one month after investing.

3           23.      As part of their inducement to investors (including Plaintiffs) -- both at the

4    initial in-person meeting and in subsequent communications -- the BWM Defendants

5    represented the following, *inter alia*:

6            (a) the Bitcoin Wealth Management program would provide
                 investors very high yields with little-to-no-risk;
7
             (b) the Bitcoin Wealth Management program would provide each
8                 investor a return on his/her capital investment in a very short
                 amount of time;
9
             (c) Defendant SAFFRON was an experienced investor who had
10                unique insight into cryptocurrency markets that allowed him to
                 produce huge returns on investments;
11
             (d) Defendant SAFFRON had deposited one thousand two hundred
12                ninety (1,290) bitcoin into a secure cryptocurrency wallet[1]; and
                 the assets held in that wallet could serve as collateral to ensure
13                that investors' funds were not dissipated without the investors
                 receiving a return on their investments.  If, for some reason, an
14                investor did not receive his/her anticipated return on investment
                 in a timely manner, the investor could make a demand upon
15                Defendants that they pull assets from that wallet to fully
                 compensate the investor in accordance with the terms of the
16                investment program;

17           (e) Defendant DAVID KAGEL was an experienced and trustworthy
                 attorney, and his law firm (KAGEL LAW) had unrestricted
18                access to the bitcoin reserve funded by Defendant SAFFRON;

19           (f) Defendants DAVID KAGEL and KAGEL LAW jointly served as
                 the escrow agent to safeguard investors' deposited assets; and
20
             (g) If Defendant SAFFRON were either unable or unwilling to
21                produce to any investor the promised investment results,
                 Defendants DAVID KAGEL and KAGEL LAW -- upon demand
22                by the investor -- would provide the investor the appropriate
                 funds from the SAFFRON-funded bitcoin reserve.

23
     _____
     [1] In early-January 2018 -- when each bitcoin was valued at approximately $15,000.00 -- one thousand two hundred
24   ninety (1,290) bitcoin were valued at approximately $19,350,000.00.

25                                          6
                               AMENDED COMPLAINT

24.     Defendants DAVID KAGEL and KAGEL LAW even set forth in an identical pair of January 21, 2018 letters to Plaintiffs many of those factual representations. *See,* **Exhibit "A"** (letter to Plaintiff CHARLSTON) and **Exhibit "B"** (letter to Plaintiff KIM) hereto.

25.     Moreover, at the initial in-person sales pitch and in subsequent communications, Defendant KIM specifically made the following representations to induce investments from the gathered guests:

(a) Investors in the Bitcoin Wealth Management program were guaranteed to receive the promoted return on their investments;

(b) The Bitcoin Wealth Management program was fail-proof;

(c) Defendant KIM and Defendant SAFFRON were partners in this investment venture;

(d) Defendant KIM and Defendant SAFFRON traveled on private jets across the country speaking with, and signing up, investors to participate in the Bitcoin Wealth Management program;

(e) Defendant SAFFRON is a genius investor who has earned millions of dollars using his investment strategies;

(f) Defendant KIM had himself invested in the Bitcoin Wealth Management program, and his investment in the program had made him wealthy;

(g) Though investment funds would ultimately go to the same place for the same purpose, investors could deliver their investments in the Bitcoin Wealth Management program to either Defendant KIM or to Defendant SAFFRON;

(h) Defendant KIM, who speaks fluent Korean (as did several of the potential investors invited to the in-person sales pitch), could be trusted; and

(i) If the gathered guests were to invest in in the Bitcoin Wealth Management program, Defendant KIM would remain involved and oversee the investments.

7

AMENDED COMPLAINT

1    26.    Based upon representations made to her by the BWM Defendants, Plaintiff

2    CHARLSTON transferred to Defendants' control One Hundred Thousand Dollars

3    ($100,000.00) in cash on or about January 22, 2018.

4    27.    Likewise, based on representations made to him by the BWM Defendants,

5    Plaintiff KIM transferred to Defendants' control -- delivering the money directly to Defendant

6    KIM -- One Hundred Thousand Dollars ($100,000.00) in cash on or about January 22, 2018.

7                    **DEFENDANTS' FRAUD AND BREACH OF THEIR OBLIGATIONS**

8    28.    The factual representations made by and on behalf of the BWM Defendants to

9    induce Plaintiffs to invest their funds were materially misleading if not outright false.

10    29.    Moreover, the BWM Defendants' representation that Plaintiffs' investments

11    would provide them high returns with little or no risk was false.

12    30.    Plaintiffs discovered subsequent to their investments that the BWM Defendants

13    did not follow the investment strategies represented to Plaintiffs prior to their investments.

14    31.    Plaintiffs further discovered subsequent to their investments that the BWM

15    Defendants' promises of such high yields in such a short amount of time were untrue and were

16    likely only possible if the BWM Defendants were actually running a Ponzi scheme.

17    32.    Upon information and belief, Defendant SAFFRON never deposited more than

18    one thousand (1,000) bitcoin into a secure cryptocurrency wallet; that representation was made

19    to falsely give Plaintiffs a sense of security and induce them into believing that a secondary

20    source of funding existed to collateralize their investments.

21    33.    Additionally, Plaintiffs learned subsequent to their investments that Defendant

22    DAVID KAGEL had twice had his law license suspended for misdeeds related to investment

23

24

25                                       8
                              AMENDED COMPLAINT

1 | and financial transactions -- suggesting he and his law firm (KAGEL LAW) are not the

2 | trustworthy gatekeepers or escrow agents they were represented by Defendants to be.

3 |     34.    As a result of Defendants' misrepresentations and mishandling of Plaintiffs'

4 | funds, Plaintiffs have incurred nothing but a loss of their principal with no returns whatsoever.

5 | **PLAINTIFFS' DEMANDS FOR RESTITUTION HAVE ALL BEEN FRUITLESS**

6 |     35.    Plaintiffs have made repeated demands upon Defendants to return to them their

7 | invested funds.

8 |     36.    Despite Plaintiffs' repeated demands for a refund of their funds, Defendants

9 | have failed and refused to rescind Plaintiffs' investments and refund to Plaintiffs the funds

10 | Plaintiffs delivered to Defendants.

11 |     37.    For example, in an April 5, 2018 written exchange between Plaintiff

12 | CHARLSTON and Defendant SAFFRON, Plaintiff CHARLSTON expressed to Defendant

13 | SAFFRON her growing frustration with Defendant SAFFRON's "lies," unfulfilled "promis[es]

14 | [to] double [investors'] money every 30 days," and lack of follow-through on his obligations.

15 | In response, Defendant SAFFRON wrote that he would pay Plaintiff CHARLSTON the Two

16 | Hundred Thousand Dollars ($200,000.00) that was due to her plus an additional One Hundred

17 | Thousand Dollars ($100,000.00).  However, Defendant SAFFRON's representation was yet

18 | another false statement; and no such payment was ever made to Plaintiff CHARLSTON.

19 |     38.    As a result of the foregoing, Plaintiffs have been damaged in an amount that will

20 | be proven at trial.

21 |     39.    Plaintiffs have duly performed all of their duties and obligations; and any

22 | conditions precedent to Plaintiffs bringing this action have occurred, have been performed, or

23 | else have been excused or waived.

24 |

25 |

9
AMENDED COMPLAINT

40.     To enforce their rights, Plaintiffs have retained undersigned counsel and are obligated to pay counsel a reasonable fee for its services, for which Defendants are liable as a result of their bad faith and otherwise.  In addition, as explained below, the written contract memorializing each Plaintiffs' investment in the Bitcoin Wealth Management program provides: "The prevailing party in any dispute will be entitled to recover reasonable costs and attorneys' fees."

## COUNT I -- BREACH OF CONTRACT
### [PLAINTIFF CHARLSTON AGAINST DEFENDANT SAFFRON]

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 40 above, and further allege:

41.     On or about January 22, 2018, Plaintiff CHARLSTON and Defendant SAFFRON entered into a written agreement (the "CHARLSTON Buy-Sell Agreement") memorializing the terms of Plaintiff CHARLSTON's investment with Defendants.

42.     The terms of the CHARLSTON Buy-Sell Agreement constitute a contract between Plaintiffs CHARLSTON and Defendant SAFFRON.

43.     The terms of the CHARLSTON Buy-Sell Agreement called for an investment of One Hundred Thousand Dollars ($100,000.00) by Plaintiff CHARLSTON -- a sum Plaintiff CHARLSTON delivered to Defendants on or about January 22, 2018.

44.     The CHARLSTON Buy-Sell Agreement further provides that in return for her investment, Plaintiff CHARLSTON would be paid Two Hundred Thousand Dollars ($200,000.00) on February 22, 2018.

45.     Plaintiff CHARLSTON relied on, and is dependent upon, the expertise and efforts of Defendants for her investment returns.

10
AMENDED COMPLAINT

1       46.     Contrary to the terms of the CHARLSTON Buy-Sell Agreement -- which

2  embodied the BWM Defendants' representations of the Bitcoin Wealth Management program -

3  - no funds were paid to Plaintiff CHARLSTON on or after February 22, 2018; and Plaintiff

4  CHARLSTON reasonably believes the funds she invested have been dissipated, or will be

5  dissipated, before she receives any return on her investments.

6       47.     As a direct and proximate result of Defendants' conduct, Plaintiff

7  CHARLSTON has been damaged.

8       48.     Furthermore, pursuant to the CHARLSTON Buy-Sell Agreement, Plaintiff

9  CHARLSTON is entitled to recover from Defendant SAFFRON the reasonable amount of costs

10  and attorneys' fees she has had to incur in representing her interests in this matter.

11                **COUNT II -- RESCISSION OF CONTRACT**
             [PLAINTIFF **CHARLSTON** AGAINST DEFENDANT **SAFFRON**]

12

13       Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 40 above, and further

14  allege:

15       49.     On or about January 22, 2018, Plaintiff CHARLSTON and Defendant

16  SAFFRON entered into a written agreement (the "CHARLSTON Buy-Sell Agreement")

  memorializing the terms of Plaintiff CHARLSTON's investment with Defendants.

17

18       50.     The terms of the CHARLSTON Buy-Sell Agreement constitute a contract

19  between Plaintiffs CHARLSTON and Defendant SAFFRON.

20       51.     The terms of the CHARLSTON Buy-Sell Agreement called for an investment of

  One Hundred Thousand Dollars ($100,000.00) by Plaintiff CHARLSTON -- a sum Plaintiff

21

22  CHARLSTON delivered to Defendants on or about January 22, 2018.

23

24

25
AMENDED COMPLAINT

52.     The CHARLSTON Buy-Sell Agreement further provides that in return for her investment, Plaintiff CHARLSTON would be paid Two Hundred Thousand Dollars ($200,000.00) on February 22, 2018.

53.     Plaintiff CHARLSTON relied on, and is dependent upon, the expertise and efforts of Defendants for her investment returns.

54.     Contrary to the terms of the CHARLSTON Buy-Sell Agreement -- which embodied the BWM Defendants' representations of the Bitcoin Wealth Management program -- no funds were paid to Plaintiff CHARLSTON on or after February 22, 2018; and Plaintiff CHARLSTON reasonably believes the funds she invested have been dissipated, or will be dissipated, before she receives any return on her investments.

55.     As a result of the BWM Defendants' false representations in connection with the Buy-Sell Agreement and the Bitcoin Wealth Management program, Plaintiff CHARLSTON states her demand that the contract between her and Defendant SAFFRON be rescinded and canceled.

56.     To the extent Plaintiff CHARLSTON has received from the BWM Defendants any benefits through the contract -- though none are known -- Plaintiff CHARLSTON hereby offers to restore to the BWM Defendants those benefits, once they are identified and can be quantified.

57.     As a direct and proximate result of Defendants' conduct, Plaintiff CHARLSTON has been damaged.

58.     Furthermore, pursuant to the CHARLSTON Buy-Sell Agreement, Plaintiff CHARLSTON is entitled to recover from Defendant SAFFRON the reasonable amount of costs and attorneys' fees she has had to incur in representing her interests in this matter.

12
AMENDED COMPLAINT

## COUNT III -- BREACH OF CONTRACT
### [PLAINTIFF KIM AGAINST DEFENDANT SAFFRON]

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 40 above, and further allege:

59.     On or about January 22, 2018, Plaintiff KIM and Defendant SAFFRON entered into a written agreement (the "KIM Buy-Sell Agreement") memorializing the terms of Plaintiff KIM's investment with Defendants.

60.     The terms of the KIM Buy-Sell Agreement constitute a contract between Plaintiffs KIM and Defendant SAFFRON.

61.     The terms of the KIM Buy-Sell Agreement called for an investment of One Hundred Thousand Dollars ($100,000.00) by Plaintiff KIM -- a sum Plaintiff KIM delivered to Defendants on or about January 22, 2018.

62.     The KIM Buy-Sell Agreement further provides that in return for his investment, Plaintiff KIM would be paid Two Hundred Thousand Dollars ($200,000.00) on February 22, 2018.

63.     Plaintiff KIM relied on, and is dependent upon, the expertise and efforts of Defendants for her investment returns.

64.     Contrary to the terms of the KIM Buy-Sell Agreement -- which embodied the BWM Defendants' representations of the Bitcoin Wealth Management program -- no funds were paid to Plaintiff KIM on or after February 22, 2018; and Plaintiff KIM reasonably believes the funds he invested have been dissipated, or will be dissipated, before he receives any return on his investments.

65.     As a direct and proximate result of Defendants' conduct, Plaintiff KIM has been damaged.

13
AMENDED COMPLAINT

1    66.    Furthermore, pursuant to the KIM Buy-Sell Agreement, Plaintiff KIM is

2    entitled to recover from Defendant SAFFRON the reasonable amount of costs and attorneys'

3    fees he has had to incur in representing his interests in this matter.

4    **COUNT IV -- RESCISSION OF CONTRACT**
     **[PLAINTIFF KIM AGAINST DEFENDANT SAFFRON]**

5    Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 40 above, and further

6    allege:

7    67.    On or about January 22, 2018, Plaintiff KIM and Defendant SAFFRON entered

8    into a written agreement (the "KIM Buy-Sell Agreement") memorializing the terms of Plaintiff

9    KIM's investment with Defendants.

10   68.    The terms of the KIM Buy-Sell Agreement constitute a contract between

11   Plaintiffs KIM and Defendant SAFFRON.

12   69.    The terms of the KIM Buy-Sell Agreement called for an investment of One

13   Hundred Thousand Dollars ($100,000.00) by Plaintiff KIM -- a sum Plaintiff KIM delivered to

14   Defendants on or about January 22, 2018.

15   70.    The KIM Buy-Sell Agreement further provides that in return for his investment,

16   Plaintiff KIM would be paid Two Hundred Thousand Dollars ($200,000.00) on February 22,

17   2018.

18   71.    Plaintiff KIM relied on, and is dependent upon, the expertise and efforts of

19   Defendants for his investment returns.

20   72.    Contrary to the terms of the KIM Buy-Sell Agreement -- which embodied the

21   BWM Defendants' representations of the Bitcoin Wealth Management program -- no funds

22   were paid to Plaintiff KIM on or after February 22, 2018; and Plaintiff KIM reasonably

23

24

25                                 14
                         AMENDED COMPLAINT

1   believes the funds he invested have been dissipated, or will be dissipated, before he receives

2   any return on his investments.

3       73.     As a result of the BWM Defendants' false representations in connection with the

4   KIM Buy-Sell Agreement and the Bitcoin Wealth Management program, Plaintiff KIM states

5   his demand that the contract between him and Defendant SAFFRON be rescinded and

6   canceled.

7       74.     To the extent Plaintiff KIM has received from the BWM Defendants any

8   benefits through the contract -- though none are known -- Plaintiff KIM hereby offers to restore

9   to the BWM Defendants those benefits, once they are identified and can be quantified.

10      75.     As a direct and proximate result of Defendants' conduct, Plaintiff KIM has

11  been damaged.

12      76.     Furthermore, pursuant to the KIM Buy-Sell Agreement, Plaintiff KIM is

13  entitled to recover from Defendant SAFFRON the reasonable amount of costs and attorneys'

14  fees he has had to incur in representing his interests in this matter.

15                  <u>**COUNT V -- FRAUDULENT INDUCEMENT**</u>
                    [AGAINST ALL BWM DEFENDANTS]
16
17      Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 40 above, and further

    allege:
18
19      77.     The BWM Defendants, by acts of both omission and commission, made false

    statements to Plaintiffs concerning material facts about their investments.
20
21      78.     Specifically, the BWM Defendants' representations to Plaintiffs that, among

    other things:
22
23          (a) the Bitcoin Wealth Management program would provide investors
                very high yields with little-to-no-risk;

24

25                          15
                    AMENDED COMPLAINT

(b) investors in the Bitcoin Wealth Management program were guaranteed to receive the promoted return on their investments;

(c) the Bitcoin Wealth Management program was fail-proof;

(d) the Bitcoin Wealth Management program would provide each investor a return on his/her capital investment in a very short amount of time;

(e) Defendant SAFFRON was an experienced investor who had unique insight into cryptocurrency markets that allowed him to produce huge returns on investments;

(f) Defendant SAFFRON had deposited one thousand two hundred ninety (1,290) bitcoin into a secure cryptocurrency wallet; and the assets held in that wallet could serve as collateral to ensure that investors' funds were not dissipated without the investors receiving a return on their investments. If, for some reason, an investor did not receive his/her anticipated return on investment in a timely manner, the investor could make a demand upon Defendants that they pull assets from that wallet to fully compensate the investor in accordance with the terms of the investment program;

(g) Defendant DAVID KAGEL was a trustworthy attorney;

(h) Defendant KIM, who speaks fluent Korean (as did several of the potential investors invited to the in-person sales pitch), could be trusted;

(i) Defendants DAVID KAGEL and KAGEL LAW would jointly serve as the escrow agent to safeguard investors' deposited assets; and

(j) If Defendant SAFFRON were either unable or unwilling to produce to any investor the promised investment results, Defendants DAVID KAGEL and KAGEL LAW -- upon demand by the investor -- would provide the investor the appropriate funds from the SAFFRON-funded bitcoin reserve

were false; and the BWM Defendants knew at the time the statements were made that the statements were false.

79.     The BWM Defendants knew at the time the statements were made that there was no actual Bitcoin Wealth Management program and that the entire investment pitch was

16
AMENDED COMPLAINT

1   merely designed to gather funds from unsuspecting victims without any plan to actually invest

2   in cryptocurrency on the victims' behalf.

3     80.  The BWM Defendants intended that Plaintiffs would be induced into action by

4   relying upon the statements of fact made to them by and on behalf of the BWM Defendants.

5     81.  In the course of investing their money with the BWM Defendants and

6   entrusting Defendants to properly invest and protect those funds, Plaintiffs reasonably,

7   justifiably, and actually relied on the statements of fact made to them by and on behalf of

8   Defendants.

9     82.  As a direct and proximate result of Plaintiffs' reliance on the statements made

10   to them by the BWM Defendants, Plaintiffs have suffered damage.

11   <u>**COUNT VI -- NEGLIGENT MISREPRESENTATION**</u>
[AGAINST ALL BWM DEFENDANTS]

12

13     Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 40 above, and further

14   allege:

15     83.  The BWM Defendants, by acts of both omission and commission,

16   misrepresented to Plaintiffs or omitted the following material facts, among others, about

17   Plaintiffs' investments in the Bitcoin Wealth Management program:

18       (a) the Bitcoin Wealth Management program would not provide
      investors very high yields with little-to-no-risk;

19       (b) investors in the Bitcoin Wealth Management program were not
      guaranteed to receive the promoted return on their investments;

20       (c) the Bitcoin Wealth Management program was nothing more than an
      artifice;

21

22       (d) the Bitcoin Wealth Management program would not provide each
      investor a return on his/her capital investment in a very short amount
      of time;

23

24

25   17
AMENDED COMPLAINT

(e) Defendant SAFFRON did not have unique insight into cryptocurrency markets that allowed him to produce huge returns on investments;

(f) Defendant SAFFRON did not deposit over one thousand (1,000) bitcoin into a secure cryptocurrency wallet that could serve as collateral to ensure that investors' funds were not dissipated without the investors receiving a return on their investments.

(g) Even upon demand to Defendants for payment of an investor's anticipated return on investment, Defendants would not fully compensate the investor in accordance with the terms of the investment program;

(h) Defendant DAVID KAGEL was not a trustworthy attorney;

(i) Defendant KIM, who speaks fluent Korean (as did several of the potential investors invited to the in-person sales pitch), could not be trusted;

(j) Defendants DAVID KAGEL and KAGEL LAW would not adequately serve as the escrow agent or properly safeguard investors' deposited assets; and

(k) If Defendant SAFFRON were either unable or unwilling to produce to any investor the promised investment results, Defendants DAVID KAGEL and KAGEL LAW -- upon demand by the investor -- would not provide the investor the appropriate funds from the SAFFRON-funded bitcoin reserve.

84.     Plaintiffs relied on Defendants' material misrepresentations and omissions of material fact in deciding to invest in the Bitcoin Wealth Management program.

85.     Contrary to the representations made to Plaintiffs by Defendants, the truth was that Plaintiffs' investments in the Bitcoin Wealth Management program were highly volatile, risky, were not reasonably likely to provide Plaintiffs any return on their investments, and were little more than a scheme perpetrated by Defendants to convert Plaintiffs' invested funds to their own personal and professional use.

18
AMENDED COMPLAINT

86.     Defendants made the misrepresentations under circumstances where they: (a) knew the representations were false, (b) should have known the representations were false, or (c) made the representations without knowing whether they were true or false.

87.     Defendants also knew or should have known that knowledge of the true facts and the omitted facts would be important in Plaintiffs' decisions whether to invest in the Bitcoin Wealth Management program.  Nevertheless, Defendants failed to advise Plaintiffs of the truth of the matters asserted and of the omitted facts.

88.     Defendants intended that Plaintiffs would be induced into action by relying upon the statements of fact made to them by and on behalf of Defendants.

89.     In the course of investing their money with Defendants and entrusting Defendants to properly invest and protect those funds, Plaintiffs reasonably, justifiably, and actually relied on the statements of fact made to them by and on behalf of Defendants.

90.     As a direct and proximate result of Plaintiffs' reliance on the statements made to them by Defendants, Plaintiffs have suffered damage.

## COUNT VII -- BREACH OF FIDUCIARY DUTIES
### [AGAINST DEFENDANTS SAFFRON, DAVID KAGEL, INA KAGEL, AND KAGEL LAW]

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 40 above, and further allege:

91.     Plaintiffs and Defendants SAFFRON, DAVID KAGEL, INA KAGEL, and KAGEL LAW shared a relationship whereby:

(a) Defendants SAFFRON, DAVID KAGEL, INA KAGEL, and KAGEL LAW possessed superior knowledge about the Bitcoin Wealth Management program and the investments into which Defendants directed Plaintiffs' funds;

(b) Plaintiffs reposed trust and confidence in Defendants SAFFRON, DAVID KAGEL, INA KAGEL, and KAGEL LAW; and

19
AMENDED COMPLAINT

1          (c) Defendants SAFFRON, DAVID KAGEL, INA KAGEL, and KAGEL LAW undertook such trust and assumed a duty to advise, counsel and/or protect Plaintiffs with regard to their investments in the Bitcoin Wealth Management program.

92.    Defendants SAFFRON, DAVID KAGEL, INA KAGEL, and KAGEL LAW owed Plaintiffs a fiduciary duty to, among other things:

(a) Maintain in a secure cryptocurrency wallet over a thousand (1,000) bitcoin that could serve as collateral to ensure that Plaintiffs' invested funds were not dissipated without Plaintiffs receiving a return on their investments;

(b) Pull assets from that secure cryptocurrency wallet to fully compensate Plaintiffs if, for some reason, Plaintiffs did not receive their anticipated return on investment in a timely manner;

(c) Disclose to Plaintiffs all material information pertaining to their investments in the Bitcoin Wealth Management program;

(d) Refrain from making false statements or creating misimpressions of material fact as they relate to Plaintiffs' investments in the Bitcoin Wealth Management program; and

(e) Put Plaintiffs' investment interests ahead of Defendants' own pecuniary interests.

93.    Defendants DAVID KAGEL and KAGEL LAW, in particular, represented to Plaintiffs that they (Defendants DAVID KAGEL and KAGEL LAW) would serve as escrow agents to safeguard Plaintiffs' deposited assets and ensure that, if for any reason Defendant SAFFRON failed or refused to fulfill his obligations to Plaintiffs, then Defendants DAVID KAGEL and KAGEL LAW would step into that void and fulfill those duties themselves.

94.    Defendant INA KAGEL, as a Partner and the Chief Financial Officer of KAGEL LAW, is likewise responsible for fulfilling those duties.

95.    Defendants SAFFRON, DAVID KAGEL, and KAGEL LAW knew, understood, and desired that Plaintiffs place their trust and confidence in Defendants as alleged above.

20
AMENDED COMPLAINT

96.     Defendants SAFFRON, DAVID KAGEL, and KAGEL LAW accepted Plaintiffs' trust and confidence and knew that Plaintiffs were relying upon Defendants SAFFRON, DAVID KAGEL, and KAGEL LAW's superior knowledge of the material facts relating to Plaintiffs' investments in the Bitcoin Wealth Management program.

97.     Defendants SAFFRON, DAVID KAGEL, INA KAGEL, and KAGEL LAW breached their duties to Plaintiffs by, *inter alia*:

    (a) Failing to maintain in a secure cryptocurrency wallet over a thousand (1,000) bitcoin that could serve as collateral to ensure that Plaintiffs' invested funds were not dissipated without Plaintiffs receiving a return on their investments;

    (b) Failing to pull assets from that secure cryptocurrency wallet to fully compensate Plaintiffs when Plaintiffs did not receive their anticipated return on investment in a timely manner;

    (c) Failing to disclose to Plaintiffs all material information pertaining to their investments in the Bitcoin Wealth Management program;

    (d) Making false statements or creating misimpressions of material fact as they relate to Plaintiffs' investments in the Bitcoin Wealth Management program; and

    (e) Failing to put Plaintiffs' investment interests ahead of Defendants' own pecuniary interests.

98.     As a direct and proximate result of Plaintiffs' reliance on the statements made to them by Defendants SAFFRON, DAVID KAGEL, and KAGEL LAW, Plaintiffs have suffered damage.

## COUNT VIII -- CONVERSION
### [AGAINST ALL DEFENDANTS]

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 40 above, and further allege:

99.     Plaintiffs transferred funds to Defendants' control for investment on Plaintiffs' behalf.

21
AMENDED COMPLAINT

1    100.    Defendants have kept Plaintiffs' money (including all profits related thereto)

2    after Plaintiffs requested its return, despite Defendants' lack of any ownership interest in the

3    money.

4    101.    By refusing to return to Plaintiffs their money (including all profits to which

5    Plaintiffs are entitled), Defendants intended to interfere with, and indeed have interfered with,

6    Plaintiffs' ownership and interest in the money and have deprived Plaintiffs of their property,

7    permanently or temporarily.

8    102.    Upon information and belief, Defendants have utilized Plaintiffs' capital to,

9    *inter alia*, cover Defendants' own business expenses and allow Defendants to enrich

10   themselves and companies they owned or controlled.

11   103.    As a result of Defendants' conversion of Plaintiffs' money to their own

12   corporate and personal use, Plaintiffs have suffered damage.

13   <u>**COUNT IX -- CIVIL CONSPIRACY**</u>
     [AGAINST ALL DEFENDANTS]
14
     Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 40 above, and further
15
     allege:
16
17   104.    Defendants formed and operated a conspiracy with one another to perpetrate

     an unlawful act upon Plaintiffs or to perpetrate a lawful act by unlawful means, *to wit*: they
18
     made multiple misrepresentations of fact to Plaintiffs in an effort to extract from Plaintiffs
19
     investment capital to fund Defendants' corporate and personal financial interests, not the
20
     purpose to which Plaintiffs were told by Defendants that their investment principal was being
21
     applied -- all of which put Defendants' own pecuniary interest ahead of Plaintiffs' welfare and
22
     economic safety.
23

24

25                                       22

105.    Defendants solicited and/or accepted from Plaintiffs large sums of investment funds while withholding from Plaintiffs certain material facts, including:

(a) the Bitcoin Wealth Management program would not provide investors very high yields with little-to-no-risk;

(b) investors in the Bitcoin Wealth Management program were not guaranteed to receive the promoted return on their investments;

(c) the Bitcoin Wealth Management program was nothing more than an artifice;

(d) the Bitcoin Wealth Management program would not provide each investor a return on his/her capital investment in a very short amount of time;

(e) Defendant SAFFRON did not have unique insight into cryptocurrency markets that allowed him to produce huge returns on investments;

(f) Defendant SAFFRON did not deposit over one thousand (1,000) bitcoin into a secure cryptocurrency wallet that could serve as collateral to ensure that investors' funds were not dissipated without the investors receiving a return on their investments.

(g) Even upon demand to Defendants for payment of an investor's anticipated return on investment, Defendants would not fully compensate the investor in accordance with the terms of the investment program;

(h) Defendant DAVID KAGEL was not a trustworthy attorney;

(i) Defendant KIM, who speaks fluent Korean (as did several of the potential investors invited to the in-person sales pitch), could not be trusted;

(j) Defendants KAGEL and KAGEL LAW would not adequately serve as the escrow agent or properly safeguard investors' deposited assets; and

(k) If Defendant SAFFRON were either unable or unwilling to produce to any investor the promised investment results, Defendants DAVID KAGEL, INA KAGEL, and KAGEL LAW -- upon demand by the investor -- would not provide the investor the appropriate funds from the SAFFRON-funded bitcoin reserve.

1        106.     In furtherance of the conspiracy, Defendant SAFFRON made several of the

2   above-listed misrepresentations.

3        107.     In furtherance of the conspiracy, Defendants DAVID KAGEL and KAGEL

4   LAW made several of the above-listed misrepresentations.

5        108.     In furtherance of the conspiracy, Defendant KIM solicited and organized

6   investors to participate in the Bitcoin Wealth Management program, which he knew was a

7   fraudulent investment scheme.  He also made, or agreed to have someone else make on his

8   behalf, several of the above-listed misrepresentations.

9        109.     In furtherance of the conspiracy, Defendant INA KAGEL -- despite adequate

10  demand -- has failed to fulfill her duties as a Partner and the Chief Financial Officer of KAGEL

11  LAW to diligently return to Plaintiffs the funds purportedly held in escrow by KAGEL LAW.

12       110.     All Defendants agreed to the illicit purpose for garnering investment monies

13  from Plaintiffs so that the individual defendants could spend Plaintiffs' money on themselves

14  and their other business interests.

15       111.     Defendants were each aware of, and consented to, the misrepresentations

16  detailed above and knew that the efforts to raise investment funds from Plaintiffs was all part of

17  a fraud aimed solely at enriching themselves without any intent to remunerate Plaintiffs in any

18  way.

19       112.     In furtherance of their conspiracy, Defendants made to Plaintiffs, or agreed to

20  have someone make on their behalf, the false statements of fact detailed above and

21  purposefully withheld from Plaintiffs certain material facts detailed above in a concerted effort

22  to obtain and maintain Plaintiffs' investment funds without Plaintiffs realizing the truth behind

23  Defendants' actions.

24

25                    24
AMENDED COMPLAINT

113.     As a direct and proximate result of the acts done in furtherance of Defendants' common design, Plaintiffs have suffered damage.

## COUNT X -- BREACH OF CONTRACT
### [AGAINST DEFENDANTS SAFFRON, DAVID KAGEL, AND KAGEL LAW]

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 40 above, and further allege:

114.     On or about August 11, 2018, Plaintiffs and Defendants SAFFRON, KAGEL, and KAGEL LAW entered into a written agreement (the "August 2018 Settlement Agreement") memorializing the terms of a purported resolution of the dispute between those parties.  Defendant KIM was not a party to the August 2018 Settlement Agreement.  Attached hereto as **Exhibit "C"** is a true and correct copy of the August 2018 Settlement Agreement.

115.     The terms of the August 2018 Settlement Agreement constitute a contract between Plaintiffs and Defendants SAFFRON, DAVID KAGEL, and KAGEL LAW.

116.     The terms of the August 2018 Settlement Agreement called for payment of One Hundred Seventy-Five Thousand Dollars ($175,000.00) by Defendants SAFFRON, DAVID KAGEL, and KAGEL LAW to Plaintiffs on or before August 13, 2018.

117.     Contrary to the terms of the August 2018 Settlement Agreement, no payment was made to Plaintiffs on or before August 13, 2018.

118.     On August 14, 2018, counsel for Plaintiffs served upon Defendants SAFFRON, DAVID KAGEL, and KAGEL LAW a written notice demanding that Defendants SAFFRON, DAVID KAGEL, and KAGEL LAW cure their failure to pay and their default under the August 2018 Settlement Agreement.  Attached hereto as **Exhibit "D"** is a true and correct copy of that default letter and demand for cure.

119. Despite having been provided due notice of default and a fair opportunity to cure, Defendants SAFFRON, DAVID KAGEL, and KAGEL LAW -- as of the date of this filing -- have failed to cure their default under the August 2018 Settlement Agreement and remain in default today.

120. As a direct and proximate result of Defendants SAFFRON, DAVID KAGEL, and KAGEL LAW's breach of the August 2018 Settlement Agreement, Plaintiffs have been damaged.

121. Furthermore, pursuant to Section 11 of the August 2018 Settlement Agreement, Plaintiffs are entitled to recover from Defendants SAFFRON, DAVID KAGEL, and KAGEL LAW the reasonable amount of costs and attorneys' fees they have had to incur in.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff HAYAN CHARLSTON, an individual; and CHIN SE KIM, an individual, respectfully pray for relief as follows:

(a) An Order enjoining Defendants from making further transfers or dissipations of the investment funds and assets raised in connection with the promoted Bitcoin Wealth Management program, or using such funds and assets in any further purchases or transactions;

(b) A judgment awarding Plaintiffs equitable restitution, including, without limitation, rescission of their investments in the Bitcoin Wealth Management program, restoration of the *status quo ante*, and return to Plaintiffs all cryptocurrency or fiat currency paid to Defendants in connection with the purported Bitcoin Wealth Management program as a result of Defendants' unlawful and unfair business practices and conduct;

(c) An award of any and all additional damages recoverable under law -- jointly and severally entered against Defendants -- including but not limited to compensatory damages, punitive damages, incidental damages, and consequential damages;

26
AMENDED COMPLAINT

(d) An Order requiring an accounting of the remaining funds and assets raised from Plaintiffs in connection with the Bitcoin Wealth Management program;

(e) An Order imposing a constructive trust over the funds and assets rightfully belonging to Plaintiffs;

(f) Pre- and post-judgment interest;

(g) Attorneys' fees, expenses, and the costs of this action; and

(h) All other and further relief as this Court deems necessary, just, and proper.

## **PLAINTIFFS' DEMAND FOR JURY TRIAL**

Pursuant to Section 631 of the California Code of Civil Procedure, Plaintiffs demand trial by jury in this action of all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this 27th day of August 2018.

MILLER MILLER GERBER LLP

By: __/s/ Adam I. Miller__
Adam I. Miller (SBN 269990)
*Attorneys for Plaintiff*
1500 Quail Street - Suite 490
Newport Beach, California 92660
Telephone: (714) 450-3800
Facsimile: (714) 450-3800
E-mail: amiller@mmg-llp.com

David C. Silver, *pro hac vice forthcoming*
Jason S. Miller, *pro hac vice forthcoming*
*Attorneys for Plaintiff*
SILVER MILLER
11780 West Sample Road
Coral Springs, Florida 33065
Telephone: (954) 516-6000
E-mail: DSilver@SilverMillerLaw.com
E-mail: JMiller@SilverMillerLaw.com

27
AMENDED COMPLAINT

# EXHIBIT D



LE BAL DE PARIS
PARIS

# LE BAL DE PARIS©

### TOMBOLA, ENCHÈRES ET DONS AU PROFIT DE / RAFFLE, AUCTION AND DONATIONS FOR THE BENEFIT OF

### FONDATION HÔPITAUX DE PARIS - HÔPITAUX DE FRANCE et BOURSES JEUNESSE CANADA FRANCE



### EN HOMMAGE A SAMUEL DE CHAMPLAIN

#### A L'OCCASION DU QUATRE CENTIÈME ANNIVERSAIRE DE LA PRÉSENCE FRANCAISE AU CANADA

#### AT THE OCCASION OF THE FOUR HUNDREDTH ANNIVERSARY OF THE FRENCH PRESENCE IN CANADA

## INTERCONTINENTAL
### 3, RUE DE CASTIGLIONE – PARIS Ier

## 3, 4 et 5 DÉCEMBRE 2004 - 3rd 4th & 5th DECEMBER 2004

# SAMEDI 4 DÉCEMBRE 2004 - SATURDAY 4th DECEMBER 2004

**8 : 00 pm**

LE BAL DE PARIS EN L'HONNEUR DE SAMUEL DE CHAMPLAIN, DANS LES SALONS EMPIRE ET AIGLON DE L'INTERCONTINENTAL, CHAMPAGNE D'ACCUEIL, PRÉSENTATION DE MODE DE COZMO JENKS, ANIMATION MUSICALE INDIENNE, DÎNER DE GALA ACADIEN ASSIS-PLACÉ, TOMBOLA ET VENTE AUX ENCHÈRES, OUVERTURE DU BAL, VALSES ET DANSES, OPEN-BAR.

IN HONOR TO SAMUEL DE CHAMPLAIN, IN THE EMPIRE AND AIGLON BALLROOMS OF THE INTERCONTINENTAL, CHAMPAGNE WELCOME-RECEPTION, FASHION PRESENTATION BY COZMO JENKS, INDIAN MUSICAL ANIMATION, SEATED GALA ACADIAN DINNER, RAFFLE, AUCTION-SALE, GRAND OPENING OF THE BALL, WALZES AND DANCES, OPEN- BAR ALL NIGHT.

HABIT, SMOKING, ROBE DU SOIR, UNIFORME / WHITE, BLACK TIE, EVENING- DRESS, UNIFORM

Media Support



RUNWAY

Eleonora de Gray

SAMUEL DE CHAMPLAIN (1567-1635), EXPLORATEUR ET CARTOGRAPHE, FONDE L'ACADIE EN 1604 AU NOM DU ROI HENRI IV ET DEVIENT LIEUTENANT GÉNÉRAL DE LA NOUVELLE FRANCE SOUS LES ORDRES DE CHARLES DE BOURBON, PRINCE DE CONDÉ, AU NOM DU ROI LOUIS XIII. SAMUEL DE CHAMPLAIN, AS EXPLORATOR AND CARTOGRAPH, FOUNDS ACADIA IN 1604 IN THE NAME OF KING HENRI IVTH OF FRANCE. HE BECOMES LIEUTNANT-GENERAL UNDER THE ORDERS OF CHARLES OF BORBON, PRINCE OF CONDÉ, IN THE NAME OF KING LOUIS XIIITH OF FRANCE. SON HONNEUR L'HONORABLE JAMES K. BARTLEMAN DESCEND DE LA PREMIÈRE NATION ABORIGÈNE, LES CHIPPEWAS DE MNJIKANING.

SOUS LE HAUT PATRONAGE DE / UNDER THE HIGH PATRONAGE OF

## MADAME JACQUES CHIRAC

EN PRESENCE DE / IN PRESENCE OF

### SON EXCELLENCE L'AMBASSADEUR DU CANADA EN FRANCE
### ET MADAME CLAUDE LAVERDURE

### SON HONNEUR L'HONORABLE JAMES K. BARTLEMAN
LIEUTENANT-GOUVERNEUR DE L'ONTARIO

**MADAME MARTINE AURILLAC** Députée de Paris & **MADAME HÉLÈNE VARI**
CO-PRESIDENTES

### MICHEL SOYER, SA LA DUCHESSE RIXA VON OLDENBURG
### BARON JOHANN CHRISTIAN VON DONNER
### GAËLLE DE SAINT-SEINE ET LE COMITÉ D'HONNEUR

ONT LE PLAISIR DE VOUS PRIER D'ASSISTER
TAKE GREAT PLEASURE IN REQUESTING YOUR COMPANY AT



LE BAL DE PARIS

# LE BAL DE PARIS©

# INTERCONTINENTAL 20h - 8:00 pm
3, RUE DE CASTIGLIONE – PARIS I<sup>er</sup>



**LE BAL DE PARIS**
PARIS

# LE BAL DE PARIS©

TOMBOLA, ENCHERES ET DONS POUR  /  RAFFLE, AUCTION AND DONATIONS FOR
THE SABY FOUNDATION



XIème édition

## AUTOMOBILE-CLUB DE FRANCE
6, PLACE DE LA CONCORDE
PARIS VIIIème

6 & 7 DECEMBRE 2008 / 6th & 7th DECEMBER 2008

# WEEK-END PROGRAMME IN PARIS

## SAMEDI 6 DECEMBRE 2008 - SATURDAY, 6TH DECEMBER 2008

**13h/1:00 pm**  BRUNCH AU CLUB-HOUSE DU POLO DE PARIS / *AT THE PARIS POLO CLUB-HOUSE.*

DRESS CODE : POLO CASUAL

**15h/3 :00 pm**  FORUM ECONOMIQUE, RÉUNISSANT DES RESPONSABLES DE L'ADMINISTRATION KAZAKHS ET DES REPRÉSENTANTS D'ENTREPRISES BILATÉRALES, SUR INVITATION.
*ECONOMICAL FORUM , WITH REPRESENTANTS OF THE KAZAKH ADMINISTRATION DAMU FOOUNDATION, ATAMEKEN AND BILATE RAL BUSINESS LEADERS, UPON INVITATION.*

**20h/8:00 pm**  **LE XI ÈME BAL DE PARIS**, APÉRITIF, DÎNER DE GALA ASSIS-PLACÉ, DÉFILÉ DE COUTURE, GROUPE NATIONAL DE L'ACADÉMIE D'ASTANA,  IMPROMPTU DON QUICHOTTE, TOMBOLA ET ENCHÈRES, OUVERTURE DU BAL, DJ
*APERITIVE, SEATED GALA-DINNER, FASHION-SHOW, NATIONAL GROUP OF ASTANA ACADEMY, DON QUICHOTTE IMPROMPTU, RAF FLE, AUCTION, BALL,DJ.*

**CEREMONIE DE REMISE DU PRIX HEDVA SER « CINEMA PATRIMOINE DE PARIS »**, AU FILM QUI EN 2008 A LE MIEUX VALORISÉ LE PATRIMOINE CULTUREL DE LA VILLE DE PARIS, EN PRÉSENCE DE PERSONNALITÉS DU CINÉMA FRANÇAIS, 10 FILMS EN COMPÉTITION .
*HEDVA SER TROPHY CEREMONY OF « PARIS HERITAGE CINEMA » AWARD, TO THE 2008 MOVIE HAVING GIVEN BEST VALUE TO THE CULTURAL HERITAGE OF THE CITY OF PARIS, IN PRESENCE OF FRENCH CINEMA PERSONALITIES, 10 FILMS IN COMPETITION.*
PRESIDENT : MANUEL COLLAS DE LA ROCHE.
**HOMMAGE AU CINEMA KAZAKH**, REMISE DU TROPHÉE HEDVA SER EN PRÉSENCE DE CINÉASTES KAZAKHS ET FRANÇAIS.
*HOMMAGE TO KAZAH CINEMA HEDVA SER TROPHY CEREMONY IN PRESENCE OF KAZAKH AND FRENCH FILMMAKERS.*
PRÉSENTATION DU LIVRE / OF THE BOOK OF PRESIDENT NAZARBAEV
PAINTINGS BY RAUCHAN MAMBEKOVA ET PHOTOGRAPHY OF JANARBEK AMANKULOV.
MOBIDIUM INTERACTIVE TECHNOLOGIES AND CREATIVE SYSTEMS FOR ANIMATIONS www.mobidium.fr /petienne@mobidium.fr

DRESS CODE: HABIT, SMOKING, ROBE DU SOIR, UNIFORME / WHITE OR BLACK TIE, EVENINGDRESS,UNIFORM
PARKING : PLACE DE LA CONCÓRDE.

## DIMANCHE 7 DECEMBRE 2008 - SUNDAY, 7TH DECEMBER 2008

**13h/1: pm**  BRUNCH CHEZ MAXIM'S / BRUNCH AT MAXIM'S OF PIERRE CARDIN

**15h30/3:30 pm**  PROJECTION DU FILM KAZAKH PRIMÉ (SOUS-TITRÉ FRANÇAIS)/*MOVIE PROJECTION OF THE AWARD-WINNER KAZAKH FILM (UNDER–TITLED)*, SUIVIE DE LA PRÉSENTATION PRIVÉE EN AVANT-PREMIÈRE DE LA PIÈCE "DON QUICHOTTE ET JACQUES BREL" PRODUITE PAR PIERRE CARDIN, À L'ESPACE CARDIN AU PETIT CINÉMA
*FOLLOWED BY PRIVATE PRE-PUBLIC THEATER SHOW PRESENTATION OF "DON QUICHOTTE AND JACQUES BREL" PRODUCTION PIERRE CARDIN, AT THE ESPACE CARDIN SMALL CINEMA.*

DRESS CODE : TENUE DE VILLE / CASUAL AND ELEGANT.

## INFORMATION

Le Polo de Paris : route des Moulins, Bagatelle, bois de Boulogne Paris XVI ème
Maxim's de Paris : 3, rue Royale Paris VIIIème
Espace Cardin, 2 Avenue Gabriel Paris VIIIème

## HÔTELS

Hôtel Plaza Tour Eiffel **** : 200 € Double  Tél : 01 47 27 10 00
Hôtel Powers **** : 235 € Double Tél : 01 47 23 87 90
Hôtel Claridge Bellman **** : 235 € Double  Tél : 01 47 23 54 42

## CONTACT

Hot line during the week-end : 00 33 (0) 6 27 13 76 88
Le Bal de Paris : Tel : 00 33 3 44 62 15 60   Fax : 00 33 3 44 62 16 55
Email : lebaldeparis@wanadoo.fr    www.marquiseevents.com

## AVEC LE SOUTIEN DE / WITH THE SUPPORT OF

Parfums Dali, TED by Duchess Rixa von Oldenburg, France-Soir, RUNWAY France, Maxims's de Paris,
Zélia, Mobidium, Kazakh Film National Company

Le Kazakhstan est un pays de légendes, qui a vécu la Horde d'Or, l'épopée de Gengis Kahn et la Route de la Soie.
Présent au marché du film du Festival de Cannes 2008, il a produit le film « Barbares » de Sergei Brodov. Il est aujourd'hui un pays
d'investissement industriel et touristique, riche des nombreuses ressources naturelles

Kazakhstan is a country of legends, such as the Golden Horde, the saga of Gengis Kahn, the Silk Road. Active at the 2008 Film
Festival Market, its productions include the movie "Barbarians" by Sergei Brodov. It is nowadays a land of investments of industry
and tourism, owing to its numerous natural resources.
The Saby Foundation, chaired by Mrs Assel Tassmagambetova, takes great care of orphans.
Né à l'initiative de l'UNESCO, Innocence en Danger est un mouvement international de protection et défense des enfants contre
toutes formes d'abus sexuels, dans le respect des termes de la Convention Internationale des Droits de l'Enfant et présidé par
Homayra Sellier.

     



LE BAL DE PARIS

# LE BAL DE PARIS©

### XIIème EDITION

TOMBOLA, ENCHERES POUR  / RAFFLE, AUCTION FOR

GoodPlanet.org



The Romanov Fund for Russia

## PALAIS du PLESSIS-BELLIERE
### AUTOMOBILE-CLUB DE FRANCE
### 6, PLACE DE LA CONCORDE-PARIS

5 & 6 DECEMBRE 2009/ 5th & 6th DECEMBER 2009



SOUS LE HAUT PATRONAGE
UNDER THE HIGH PATRONAGE OF

**SON ALTESSE NICOLAS ROMANOFF, PRINCE DE RUSSIE**

EN PRESENCE DE
SON EXCELLENCE MADAME  ELEONORA MITROFANOVA
AMBASSADEUR DE LA FEDERATION DE RUSSIE auprès de l'UNESCO

**SA LA DUCHESSE RIXA VON OLDENBURG
MICHEL SOYER, GAËLLE DE SAINT-SEINE**

### COMITE D'HONNEUR / HONORARY COMMITTEE

Cosima Aïchholzer, Jacques-Henri Auclair, SAR la Princesse Anne de Bourbon-Siciles, Stéphane Bourgeois
Patrick de Brou de Laurière, Comte Louis de Causans, Christine Cazenave, Dame Nancy Chopard
Thibault Courtois d'Aubery, Dan Deville, Thomas Dilge, Birgitta Forssius, Evelyne Frank, Enrico Frittoli
Massimo Gargia, Jean-Pierre Grivory, Hoda El Haddad, Paul Hagnauer, Christiane Horn, Hugo F. Lovee
Janus Kamradt, Chayan Khoï, Marquis François-Eudes de Louville de Toucy, Princesse Caroline Murat
Jörg Oppermann, Lorenzo Paravicini-Bagliani, Ela Pritzi, Carolyn Puiatti
Bernd Roloff, Lillyclaire Saran Johan Schotte
Homayra Sellier, Didier Sicot, SAS le Prince Benedict zu Solms.

### COMITE RUSSE / RUSSIAN COMMITTEE

Mireille Antoine, Lydia Antossevitch, Vladimir Arkhipov, Adelina Bogdanova, Liutsia Durfort-Kabirova
Andrey Fomin Anastasia Gai Comte Paul Golunski, Elena Joly, Shalva Khakhanashvih, Dina Kossayeva
Michel Lebedeff, Dimitri Nester, Armen Petrossian
Alexander Protasov, Wladimir Reine, Prince Alexandre Troubetzkoï, Anna Winestein.

### COMITE JEUNES / YOUNG COMMITTEE

Alix Andlauer, Jennifer Badoux, Elie Denfert-Rochereau, Anastasia et Dmitriy Dogaev, Valery Emeline,
Olivia Farry, Anastasia de Flers Alexandre Moureau, SA le Prince Christophe Murat, Romain Peugeot
Lisa-Winona Poch de Wattine Chloé Robine
Jean-Sébastien Robine, Comte Cédric de Sérigny, Claudia Schlup.



**Photo : Jean Daniel Lorieux**
Vente aux enchères Lot N°9
JEAN-DANIEL LORIEUX
« LE MAÎTRE ET MARGUERITE »
de Michail Boulgakov
Le Bal de Satan, avec Isabelle Adjani, signé
par l'Artiste
Tirage numéroté 3/15, format 120 X 80 cm

**FORUM ECONOMIQUE** sous le patronage de Son Excellence l'Ambassadrice Eleonora Mitrofanova, présidé par le comte Paul V. Golunski, à la Délégation Permanente de la Fédération de Russie auprès de l'Unesco, réunissant des responsables de l'Administration et d'Entreprises Françaises et Russes

**Economic Forum** under the Patronage of Her Excellency the Ambassador Eleonora Mitrofanova, chaired by Earl Paul V. Golunski, at the Unesco Permanent Delegation of the Federation of Russia,  with Administrative and bilateral business representatives.

**MORETTI & MORETTI Art Gallery : private preview of Guido Visentini Animal Art "Russian Cavalry".**

### XII ème BAL DE PARIS

**JEAN-DANIEL LORIEUX** exhibits "The Master and Margerita" of Mikhaïl Bulgakov featuring Isabelle Adjani, exhibited to acclaim in Moscow.

**DOMINIQUE MILETTI** aperitif tzygane, diner de gala assis-placé
Gipsy aperitive by Dominique Miletti, seated gala-dinner.
Gifts : Parfums Dali, Kusmi Tea, Petrossian.

**CINEMA PATRIMOINE DE PARIS  FOUQUET'S BARRIERE
CEREMONIE DE REMISE DES PRIX
PARIS HERITAGE CINEMA FOUQUET'S BARRIERE TROPHY CEREMONY**

**TROPHEE  « BAL DE PARIS » DU CINEMA RUSSE
RUSSIAN CINEMA "BAL DE PARIS" TROPHY**
in presence of  Russian filmmakers, in partnership with **B-TWEEN**

**PARIS FASHION ACADEMY FASHION SHOW**

featuring Therese Schreinemachers-Wieske, Nataliya Dolenko, Larisa Katz, Michel Dupré-Santabarbara, directed by Eleonore Genieve de GrayAward Ceremony with JEAN-CLAUDE JITROIS, Paris Ambassador of Fashion 2010.

**LA MAISON PETROSSIAN PRESENTE  IRINA TIVIANE**
Soprano, née à Saint -Petersbourg, formée au Théâtre Marinski et à la Scala de Milan.
Romantic Russian music.

**PIERRE CORNETTE DE SAINT-CYR** tombola et enchères / raffle & auction

**OUVERTURE DU BAL / BALL OPENING CEREMONIES**

**BACKGAMMON CHALLENGE** in 5 points, by Emmanuel David ("win the table with gold leaves inlays, you are playing on, of 15.000 € value"), starting midnight.

**Présentation du livre Russe d' Elena Joly « Grace Kelly, Princesse de Monaco »**





Thérèse Schreinemachers-Wieske     NL



Michel Dupre     FR



Larisa Katz     NL



Le Bal de Paris is proud to welcome this year the new Paris Fashion Academy fashion show and Award Ceremony. It presents the new generation of European designers in homage to Russia.

**THERESE SCHREINEMACHERS-WIESKE** The Original Douw-Douw, Holland
**NATALYIA DOLENKO**, United Kingdom
**DUPRE-SANTABARBARA** France
**LARISA KATZ**, Holland

**JEAN-CLAUDE JITROIS, AMBASSADEUR DE LA MODE A PARIS 2010**,
remet les Paris Fashion Academy Award à l'issu des défilés de mode.

Direction : **Eleonore Genieve de Gray**

SUPPORTED BY CARVEN, BALTIC DEVELOPMENT GROUP, SAMPAR, VERADERM







NATALIYA DOLENKO





Larisa Katz







## AVEC LE SOUTIEN DE / SUPPORTED BY

Parfums Dali, Italie-France, Ballets Russes 2009, Nester, B-Tween, Vesna, Bal des fleurs, RUNWAY France, Paris Fashion Academy, Printemps du Film Russe, Polo des Grandes Ecoles, Emmanuel David Designer, Etude Pierre Cornette de Saint-Cyr, Animal Art, Ritz, Purrose, Petrossian, Kusmi Tea, Elite Connexion.

 RUNWAY France 

## REMERCIEMENTS / SPECIAL THANKS

Jean-Pierre Grivory
Jacques-Henry Auclair
Pierre Cornette de Saint-Cyr
Jean-Sébastien Robine
Anastasia Gai
Paul Hagnauer
Alexander Protasov
Maurice Roché
Alix Andlauer
Arnaud Frilley
Anastasia Kovtun
Tatiana Heigeas
Noemi Leroy
Martine Vidal
Xavier Vidal
Anne Bouvier
Dan Deville
Jean-Pierre Moretti
Gionanni Barzago
Paul V. Golunski
Dominique Miletti
Eric Boonstoppel

Loïk Nartz
Jean-Daniel Lorieux
Armen Petrossian
Lena Petrossian
Eleonore Genieve de Gray
Elena Joly
Lada Skatchkova
Mireille Antoine
Lydia Antossevitch
Vladimir Arkhipov
Adelina Bogdanova
Alexander Protasov
Didier Sicot
Guerda de Haan
Hoda Haddad
Oscar Rabine
Oksana Vasilchenko
Marcello Nlele
Philippe Maille
Alain Négret
Herta Bourély

## GoodPlanet

fondation reconnue d'utilité publique présidée par YANN ARTHUS-BERTRAND œuvre à la sensibilisation du public à l'environnement : changement climatique, Action Carbonne, gaz à effet de serre, éducation, expositions (6 milliards d'autres), films (Home), pour promouvoir un mode de vie respectueux de la planète et de ses habitants.

www.goodplanet.org

## LE BAL DE PARIS

: Tel : 00 33 1 45 01 84 51  Fax : 00 33 44 62 15 60

www.marquiseevents.com    lebaldeparis@wanadoo.fr

RUNWAY FRANCE 2009 – web-site for Paris Fashion Award organized by Eleonora de Gray since 2004. Programs and editions presented above: 2004, 2007, 2009 at trademarks registration in France in November 2013



Wordpress web-site 2007



Facebook page opened in 2010, transparency information is not changeable by users





Twitter account 2011



Twitter account 2012

# Le Bal de Paris

## XIVᵉ EDITION

*Cette année, Maïwen et Mathieu Kassovitz ont été les lauréats du Prix Cinéma Patrimoine de Paris décerné au Bal de Paris 2011.*



La remise du Prix

Parmi les grands films sélectionnés pour l'édition 2011, ce fut *Polisse* de Maïwen, avec Joey Starr, Karin Viard, Lou Doillon, Anthony Delon qui remporta le *Prix Cinéma Patrimoine de Paris*, et *L'Ordre et la Morale* de Mathieu Kassovitz, avec Alexandre Steiger, Iabe Lapacas, Malik Zidi, qui remporta le *Prix Bal de Paris*. Ces deux films furent sélectionnés par un jury présidé par le grand compositeur Jean-François Lepetit et composé de Maroushka Detmers, Michel Suissa, Louis-Michel Colla, Marie-Sophie L. et Paul Haggaman. Le week-end débuta par un Colloque Economique au Ministère de l'Outre Mer, un dîner au restaurant *La Guita* du *VIP Room*, que dirige Thierry

Klemeniuk et un déjeuner Jazz New-Orleans au Polo de Paris. Puis, dans le cadre somptueux et tremblement passion du Palais des Plessis-Bellière, sur la place de la Concorde ornée de sa grande roue de Noël, aujourd'hui Automobile-Club de France, la XIVᵉ édition du Bal de Paris a pris comme thème la célébration de l'Année Nationale des Outre Mer, apportant du soleil à l'hiver hexagonal en rappelant que la France est, grâce ses 12 territoires, proche de l'Afrique, de l'Amérique et de l'Asie, situation géographique exclusive qu'elle apporte à l'Europe des 27. Réservoir de croissance et terre de jeunes générations d'entrepreneurs, l'Outre Mer doit se développer dans le luxe, les services et l'économie tertaire.









1. Claudy Siar, Hélèna Campper et Michel Soyer 2. Eléonore Geneviève de Gray 3. Béatrice Rosen et Jimmy Jean-Louis 4. Jean-Daniel Lorieux et Laura Restelli 5. Sarah Barzik, Xavier de Fontenay 6. Thierry Nicolas et la comtesse de Montjelas.

## First Class : Celebrities



Steve Suissa, Florence Loret, Michel Soyer,
Marie-Sophie L. et François Lepetit

Claudy Siar, Délégué Interministériel de l'Outre Mer, a présenté le projet « Solidarité » présidé par Gaston Gâlle, et largement échangé avec les deux stars du cinéma Outre Mer présents, le grand acteur Jimmy Jean-Louis et le réalisateur Lucien Jean-Baptiste, qui a montré les premières images de son prochain film « 30 », où le Carnaval Antillais à la première place.

La Martinique est décidément très « jet set » depuis que Son Altesse Royale la Princesse Anne de Bourbon-Siciles y vit régulièrement avec son compagnon l'avocat Alex Ursulet. Leur table avec Orlando, Michèle Couturier, Thierry Nicolas, la Comtesse de Montigliu accueillait la jolie actrice Béatrice Rosen, nouvelle génération des égéries. La Mongolie et Madagascar étaient représentés par leurs Ambassadeurs, au milieu desquels se tenait le comte Patrick de Villonoisy, candidat à l'élection Présidentielle en France (Alliance Royale), ce n'est pas si courant d'avoir un candidat dans une soirée festive.

Pendant que Sylvana Lorenz parlait art contemporain avec Gerald Pilzer et Catherine Feff, unique en Europe pour ses bâches peintes géantes sur les monuments (en même temps se tenait Art Basel à Miami), Xavier de Fontenay évoquant l'Élection Miss France dont il ne s'occupe plus et qui a toujours lieu le même soir que

le Bal de Paris, ce qui lui laisse dorénavant le plaisir d'y assister. Son Altesse la Duchesse Rita von Oldenburg, descendante de la Reine Victoria et du Kaiser d'Allemagne, co-fondatrice du Bal de Paris, était entourée de ses amis Allemands et Hollandais, venus tout spécialement pour profiter de la Ville Lumière dans son habit de fêtes et notamment du marché de Noël du bas des Champs-Élysées. Les

éventails et les loups Bleus cachaient les jolis minois pour les photos, comme le faisait remarquer le photographe Jean-Daniel Lorieux. Après une tombola fortement dotée par le champagne Baerl & Krafft, le Noir Bleu, Harcourt, Vinci, le Blum Clément, les Parfums Dali, Nathalie du Ses, Jardins de Mûller, qui décora la scène, Quintessentially, et les airs d'opéra de la cantatrice Julie Hachadad, l'orchestre de percussion Batucada fit son entrée par le fond de la salle, costumes bigarrés et tambours à la ceinture, qui fit monter l'ambiance par ses rythmes endiablés comme ceux des îles ensoleillées. Dans la tradition des grands bals, on ouvrit par de longues valses où chaque femme était belle comme une princesse, tournoyant entre les couples, expression de l'élégance traditionnelle des fêtes parisiennes pour reprendre le mot d'Hemingway, et devant cette vue si rare de la Concorde la nuit, scintillant des lumières de la ville, le Bal prit fin à l'aube, avant de se retrouver Dimanche au Cercle Interallié pour un brunch au son jazzy de Luana Kim, devant les tableaux d'Éric de Sérigny, le défilé de mode Maïgache de Tony Harena et les livres de cuisine de Michèle Villemur. Rendez-vous l'année prochaine pour une nouvelle édition du Bal de Paris.











1. Rita von Oldenburg et Michel Soyer 2. Jimmy Jean-Louis, Virginie Bocapé, Paul Hagnauer, Marie-Sophie L. et Florence Loret 3. Jean-François Le Petit et Marouchka Delmars 4. Gérald Pilzer et Alexandra Morel 5. Louis-Michel et Angélique Colla avec Michel Soyer, Paul Hagnauer et Alexander Steiger.



**DJ Claude Sabbah**

**Robert Hossein, Candice Patou, Michel So[...]**

**Sylvie Le Bihan**

**Consul de Mongolie, l'Ambassadeur et Mme Shukher, Edith Cresson, Paul Golunski**

**Xavier de Fontenay et sa fille Adèle**

**Jean-Felix Lalanne**

## First Class : Celebrities

Adèle de Fontenay, qui découvre pour la première fois les mondanités au bras de son père, le metteur en scène Philippe Henson et ses deux acteurs à succès Jolie Sammundin et Zinedine Soualem, le comédien Philippe Caroit. La Diplomatie est représentée par Son Excellence Altangerel Shukher, Ambassadeur de Mongolie en France, et Son Excellence Clive Agius, Ambassadeur de Malte en France. Les trois films français en compétition pour le Prix Cinéma Patrimoine de Paris sont « *Les Saveurs du Palais* » de Christian Vincent avec Jean d'Ormesson, Catherine Frot, Hippolyte Girardon, « *Superstar* » de Xavier Giannolli avec Kad Merad et Cécile de France, « *Hugo Cabret* » de Martin Scorcese, qui remporte le Prix pour sa présence remarquée de la Ville de Paris dans ses images. Cyril Barkel, de *Metropolitan Films*, distributeur de film lauréat, vient recevoir le Trophée, créé par l'*Orfèvrerie d'Anjou* et remis par Stephane Sésé des champagnes *Boerl and Kroff* (le champagne le plus cher du monde). Les trois films Mongols concourant pour le Prix Cinéma du Bal de Paris sont « *Men with Blue Dots* » de Shadav Dorjsuren, « *Decree of Khabilai King* » de Byambaa Tsogtbayar, « *Thief of Mind* » de Sengeden; Le lauréat est « *Men with Blue Dots* » et le Trophée est remis en public et devant la presse à Udval Zandraa, du *Mongolian National Academy of Film and Art*, et ensuite envoyé à Ulaan Baator où il sera remis officiellement à l'équipe du film, lors d'une prochaine conférence de presse. Arrive enfin la très attendue ouverture du Bal par les valses, moment romantique où les robes se froisent dans le scintillement de la place de la Concorde sur laquelle donnent les Salons. Les DJ stars King Sabbah et Nightcrashers (venus de Londres) renouvellent le Bal après le dîner, et apportent leur énergie et le son de la fête contemporaine. La chanteuse Taali, habillée en princesse africaine, fait partager son rythme dance, de sa voix chaude et de sa chorégraphie envoûtante. Les caméras de télévision de TFI et M6 ne manquent aucun moment magique de la fête. Quatre gouttes jetées du bout des doigts pour conjurer le sort, voilà comment on boit la *Vodka Gorgoffka* dans ses coupelles argentées, qui doit aussi son succès à la présence de deux Miss Mongolia (millésimes 2004 et 2009) à peine antigoulables tellement elles sont grandes, dans leurs tenues du patrimoine Mongolie, rejointes par l'acheteuse traditionnel Khankh et ses chants Khoomi, typiques de la diplomatie locale. Les Français leur réservent un immense succès, à la hauteur du raffinement des innombrables photographies prises ce soir-là. La tombola réunit des prix tels que les sacs *Teri Mahatshi*, un tableau du peintre Botarov, un flacon de champagne *Boerl & Kroff*, un soin *Lacure Offcine*, un abonnement au *Spa Aquamoon* (place Vendôme), un tableau Mongole de Catherine Feff. « Bonjour Paris ». Une délégation d'hommes d'affaires Mongols à investi Paris lors du week-end du Bal, pour rencontrer leurs homologues Français et établir de nouvelles relations économiques, valorisant les capacités d'investissement et de développement de leur pays, encouragés par Freddéric Ronnan-Haudumy (*Agence Serp In Mongolia*) et Jacques Rossaing (*JR Mongolia*). Le week-end comprend un Colloque Économique bilatéral dans les salons de l'Ambassade de Mongolie, dirigé par Paul Golunski; un dîner « get together » chez *Gastel*, un déjeuner au *Poté de Paris*, la visite de l'exposition de photographies Mongoles du *Musée Albert-Khan*, un déjeuner d'adieu dans les salons du *Cercle Interallié* avec un défilé de cachemires Saraigueret et la chanteuse de jazz Luana Kim, et un cocktail champagne et exposition des toiles de Catherine Feff chez *Micha*, rue Marbeuf.





1-2 Défilé Natalya Dolenko
3 Défilé Dupré Santabarbara
4 Michel Dupré et Christelle Santabarbara.
5 Laura Tanguy défilé Dupré Santabarbara.
6 Ton Pret, Larisa Katz et son fils.
7-8 Défilé Larisa Katz.
9 Défilé Douw Douw.
10 Jean-Claude Jitrois et Thérèse Schreinemachers-Wieske de chez Douw Douw.
11 Show room collection Douw Douw.
12 Eleonora Genieve de Gray et Jean-Claude Jitrois.
13 Pierre Cornette de Saint-Cyr.
14 De gauche à doite : Norbert Saad, président du jury du prix cinéma patrimoine de Paris, Pierre Niney, Julie Farrier, Radu Mihaileanu, Brigitte Fossey, Alain Attal, Arnaud Friley, Martine Vidal.

talents

# Paris Fashion Academy au Bal de Paris

**Début décembre à l'Automobile Club de France, s'est tenu le célèbre Bal de Paris, rendez-vous du gotha international, qui cette année mettait la Russie à l'honneur, sous le haut patronage de Son Altesse Nicolas Romanoff, prince de Russie.**

L'évènement présentait des « animations » prolifiques : exposition de photos d'Isabelle Adjani par Jean-Daniel Lorieux, remise des « prix du Cinéma Patrimoine de Paris Fouquet's Barriere » en présence de gilles Lellouche et Brigitte Fossey, tombola et mise aux enchères d'œuvres d'art (de la galerie Moretti & Moretti) et d'objets précieux parmi lesquels des pièces de joaillerie du joailler Nester, au profit de la fondation Romanov et de la fondation GoodPlanet soutenue par Yann Arthus-Bertrand et pour clôturer, la première édition du « Paris Fashion Award Academy ». Créé par Eleonora Genieve de Gray, cette première édition était parrainée par Jean-Claude Jitrois et Sarah Marshall. Les deux gagnantes du concours ont présenté leurs créations sous forme de défilé et reçu leur prix. À noter, la présence de deux couturiers confirmés dont la réputation n'est plus à faire Larisa Katz, créatrice hollandaise habituée du Vogue et autres publications prestigieuses et Dupré Santabarbara le duo de créateurs français d'avant-garde, lauréats de nombreux prix dont le Grand Prix de la Création de la ville de Paris.
La première lauréate du concours, Thérèse Schreinemachers-Wieske, créatrice hollandaise de la marque Douw-Douw, ouvrit le défilé. Dans une ambiance enjouée, les mannequins en peignoirs et robes d'intérieur présentaient ses créations : des chapeaux inspirés de bonnets de douche, construits dans des matières luxueuses aux formes surprenantes, mais très féminine, une vraie bonne idée, originale et jamais vue jusqu'à présent sur les catwalks. La deuxième lauréate, l'Ukraino-Londonienne Nataliya Dolenko, présenta des robes faites de voiles suspendus et attachés à différents endroits du corps, le tout dans un jeu de transparence sensuelle, une collection onirique très « hamiltonienne ».
S'en suivirent les « guests » de la soirée, le duo Dupré Santabarbara, qu'on ne présente plus, fit défilé un mixte de deux de leurs précédentes collections couture, où l'on retrouvait les mélanges de matières qui ont fait leur succès. Matières précieuses, soie et satin s'acoquinaient de cuir vieillit, de peaux de crocodiles et de serpents. Lors du final, les créateurs accompagnés de leur mariée mi-cuir, mi-dentelle de Calais brodée, furent très applaudis. Larisa Katz, quant à elle, nous entraîna dans un univers étonnant, robes parapluie, au style construit déconstruit, un travail d'artiste plus que de couturier, soutenu par d'incroyables accessoires peints par Ton Pret, le tout donnant des visuels improbables et fort appréciés du public également.
Pour finir, Eleonora Genieve de Gray, Jean-Claude Jitrois et Sarah Marshall montèrent sur scène pour remettre les prix aux heureuses gagnantes tout en invitant le public à redécouvrir ces collections et leurs créateurs au show room organisé le surlendemain à l'hôtel Fouquet's Barrière de l'avenue George V.
Le surlendemain, le Fouquet's était donc « envahi » de clientes privées et d'acheteurs professionnels, qui entre deux coupes de champagne, faisaient leurs emplettes dans une ambiance bon enfant. Un show room où l'on pouvait admirer les vêtements des créateurs de mode ainsi que la joaillerie de la marque Hearst & Arrows. Une bonne manière de terminer cette première édition de la Paris Fashion Academy.



Events organized by Runway France (name at that time), and printed editions





2) Please see the link in the base of **National Library of France** with the records of our company **RUNWAY MAGAZINE** and our production :

http://catalogue.bnf.fr/rechercher.do?
motRecherche=runway+magazine&critereRecherche=0&depart=0&facetteModifiee=ok



Case 2:18-cv-02503-FMO-JC Document 106 Filed 10/16/19 Page 183 of 295 Page ID #:3336

# 4044982 - Runway Magazine

Status: Marque enregistrée

(210) **Serial number of the application**
4044982

(220) **Date of filing of the application**
2013-11-06

(180) **Expected expiration date of the registration/renewal**
2023-11-06

(540) **Mark**
Runway Magazine

(551) **Kind of mark**
Word

(541) **Reproduction of the mark where the mark is represented in standard characters**
Runway Magazine

(731) **Name and address of the applicant**
Eleonora de Gray, EURL (SIREN 539884783)

2 sq du Nouveau Belleville BL5, 75020, PARIS, FR

(740) **Name and address of the representative**
Eleonora de Gray

2 sq du Nouveau Belleville BL5, 75020, PARIS, FR

(511) **The International Classification of Goods and Services for the Purposes of the Registration of Marks (Nice Classification) and the list of goods and services classified according thereto**
25
41

# 404498422 Runway Magazine France

s:w Rr o3y w8eRi 2 u3 Mr:Sli

**(210) Serial number of the application**

4044984

**(220) Date of filing of the application**

306W66 0o

**(180) Expected expiration date of the registration/renewal**

303W66 0o

**(540) Mark**

Runway Magazine France

**(551) Kind of mark**

d E3

**(541) Reproduction of the mark where the mark is represented in standard characters**

- Runway Magazine France

**(731) Name and address of the applicant**

G,i EuESw2l i 2USwa2G( - I 2t5 G7 2, W8884v8WB

32 é2l R27 ERPi wR2Ai ,,i Pz,i 2Al ) l2v) 030l2Fb- 5sl2e-

**(740) Name and address of the representative**

G,i EuESw2l i 2USwa

32 é2l R27 ERPi wR2Ai ,,i Pz,i 2Al ) l2v) 030l2Fb- 5sl2e-

**(511) The International Classification of Goods and Services for the Purposes of the Registration of Marks (Nice Classification) and the list of goods and services classified according thereto**

6o 2

3) 2

W8 2

46 2

WIPO
WORLD INTELLECTUAL PROPERTY ORGANIZATION
Global Brand Database
French Trademark
4044985 - Runway France
Printed: Wed, 01 Aug 2018 16:37:57 GMT

Case 2:18-cv-02503-FMO-JC   Document 106   Filed 10/16/19   Page 185 of 295   Page ID #:3338

# 4044985 - Runway France

Status: Marque enregistrée

(210) **Serial number of the application**
4044985

(220) **Date of filing of the application**
2013-11-06

(180) **Expected expiration date of the registration/renewal**
2023-11-06

(540) **Mark**
Runway France

(551) **Kind of mark**
Word

(541) **Reproduction of the mark where the mark is represented in standard characters**
Runway France

(731) **Name and address of the applicant**
Eleonora de Gray, EURL (SIREN 539884783)

2 sq du Nouveau Belleville BL5, 75020, PARIS, FR

(740) **Name and address of the representative**
Eleonora de Gray

2 sq du Nouveau Belleville BL5, 75020, PARIS, FR

(511) **The International Classification of Goods and Services for the Purposes of the Registration of Marks (Nice Classification) and the list of goods and services classified according thereto**
16

25

38

41

# EXHIBIT E

Trademark RUNWAY of Mr Mazzotta refused and banned from registration in Europe and China. This document is also available on WIPO datebase.



**OFFICE FOR HARMONIZATION IN THE INTERNAL MARKET**
(TRADE MARKS AND DESIGNS)

OPERATIONS DEPARTMENT

W123

**Confirmation of total refusal (Article 5 of the Madrid Protocol, Rule 18ter (3) of the Common Regulations under the Madrid Agreement and Protocol, Articles 154 and 156 CTMR and Rules 113(2) (b) and 115(5) (b) CTMIR)**

Alicante, 16/03/2016

| | |
|---|---|
| International registration number: | 1183826 |
| Date of notification to OHIM: | 05-12-2013 |
| Name of the Holder: | Runway TV, LLC - Vincent Mazzotta (CEO Of Runway TV, LLC) |
| Trade Mark: | RUNWAY |

As a result of opposition proceedings and all proceedings having become final, the provisional refusal of the above-mentioned mark is confirmed and the protection of the mark is totally refused for the European Community.

**LOPEZ LOPEZ,Patricia**

# EXHIBIT F

 Gmail

**Eleonora de Gray <pomconfi2@gmail.com>**

---

## Re: Trademark Notification from Google Play - Notice of Lawsuit filed - RUNWAY US

**RUNWAY** <editor@runway.net>
To: removals@google.com
Cc: infodegray@gmail.com, Brad Axelrod <bradleeaxelrod@sbcglobal.net>

Wed, Apr 5, 2017 at 4:57 AM

Dear Sirs;

I am the attorney for Runway, first of all, this complaint is full of fraudulent statements which are meant to mislead Apple. Mrs. Degray is a former licensor of the "RUNWAY" mark.  Ms. Degray's claim that the USPTO filed a cease and desist and her claims of first use a factually false. We have attached her contract for licensing and the mark she licensed.

Attached and linked here: http://www.runwaybeauty.com/download/DeGrey-RUNWAY-violation-case-US-Superior-court.zip

RUNWAY has been an Apple Newsstand publisher since 2011 with our RUNWAY US app partnered with Yudu. We have done business with you well before Mrs. Degray thought of doing any magazine. She is using Apple to create legal fees for RUNWAY TV LLC.

First of all the USPTO does not send cease and desist. This is a false statement. Ms. Degrey licensed the name, did not pay the bill and has sent fraudulent emails to cause confusion to keep from paying such bill.

The statement "Owner of these apps has his trademark Runway opposed and banned from Europe." is also a false statement.  The WIPO in question was lost in a lawsuit and reclaimed when in December the company owning it defaulted and it reverted back to RUNWAY TV LLC. This process will take around 18 months, but the pre-date on the registration far pre-dates any false trademark Mrs. Degray filed. Either way Ms. Degray signed an agreement not to license any RUNWAY mark.

In reference to the RUNWAY Magazine dual mark case Mrs. DeGray references in her complaint, the former owner, Mr.James Buccelli of that company which we settled with is currently in prison for identity theft, reporting false numbers to paying advertisers and claiming to be an accredited news agency. Which makes the mark originally filed by my client, default back to my client.  This process is in the works, but that does not give Mrs. Degray any or any other any rights on the name or make claims.

Mrs. Degray also has issues going and has current open investigations in the USA for fraud. This complaint serves as proof she is committing the same crimes as Mr. Buccelli.

RUNWAY magazine has been on sale in the USA and on Newsstand worldwide since 2002 by Kable Distribution and RUNWAY. We hold the trademark "RUNWAY" and "RUNWAY Magazine" and we were the first to file these trademarks with not only the USPTO.gov and WIPO. Mrs. Degray licensed the use of the name in 2015 for one (1) use only. She signed a contract stating she would only use it once and she extinguished the right to file any trademark in any country.

Duality: it is not necessary for my client to have both Trademarks "RUNWAY" and "RUNWAY MAGAZINE", it is registered as media.

Please see the following paragraph in the attached, short-term agreement with Mr. Degray.

5 Quality Stands and Controls- section i., is where Ms. Degrey's rights are extinguished. She may not to do anything or permit anything to be done which would dispute or contravene Licensor's ownership of ,or impair any right, title or interest of Licensor in or to the Trademarks. Licensee is also not permitted to file any trademarks with the word RUNWAY anywhere and in any country.

5 Quality Stands and Controls- section j, is where is extinguished Ms. Degrey's rights to make this complaint to you. During the Term of this Agreement and thereafter, Licensee shall neither do nor fail to do any act or writing which is necessary to further ensure Licensor's exclusive right and title in the Trademarks, Material, and Know-How.

I can go on and on how she violated her agreement but that would be a waste of all of our time. The agreement is signed by her and attached.

Next, the word magazine is a non-trademark able word. NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MAGAZINE" APART FROM THE MARK AS SHOWN on any trademark. Mrs. Degrey does not have the right to regulate or file a complaint based on this term.

This complaint uses Apple to create legal costs for RUNWAY TV LLC. Mrs. Degray has yet to answer her complaint in the USA for trademark license fraud.

We have served her many notices that she is required to show in US court to disuse the matter in front of a judge.

We ask that Mrs. Degray be noted/flagged as fraud in your system, no further complaint to be taken from her in the future and for Apple to never allow her any publishing rights. This document will be presented to the US Court – California as proof of damages incurred and confusion.

Runway Magazine/ Runway Television are protected by the United States Patent and Trademark Office under US CODE Title 15.

In relation to:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

US Serial Numbers are and include using the terms in sync or separated with other words.

Example: Runway, being presented as a fashion or beauty magazine

REGISTERED MARKS:

"Runway" : ss# 85317615 USPTO.gov

"Runway Beauty" — ss# 77536081 USPTO.gov

"Runway Television"- ss# 77849088 USPTO.gov

"Runway Magazine" — World Intellectual Property Organization: WIPO 1058209

I swear, under penalty of perjury consistent with U. S.Code Title 17, Section 512, that the information in the notification is accurate and that I am the copyright owner or am authorized to act on behalf of the owner of an exclusive right

that is allegedly infringed.

Vincent Mazzotta

CEO

Runway Beauty Inc, , RUNWAY TV LLC – Runway Media Group Worldwide

Represented by:

Brad Lee Axelrod

Attorney at Law

310-666-0333

(310)362-8642 Facsimile

---

**3 attachments**




**runway-trademark-record-uspto-dot-gov[4].jpg**
446K

**FRANCE - SHORT TERM Agreement[4].pdf**
194K

**RUNWAY-trademark-paper[4].pdf**
51K

(Licensor)

BY: _____

NAME: _____

TITLE: _____

Date: _____


(Licensee)

BY: _____EURL ELEONORA DE GRAY_____

NAME: _____ELEONORA CHRISTENSEN_____

TITLE: _____CEO_____

Date: _____02 APRIL 2014_____

# EXHIBIT G



# WIPO Arbitration and Mediation Center

**ADMINISTRATIVE PANEL DECISION**

**Runway Beauty, Inc. v. Errol Z. Hernandez**

**Case No. D2009-0762**

## 1. The Parties

The Complainant is Runway Beauty, Inc., Arizona, United States of America, acting *pro se*.

The Respondent is Errol Z. Hernandez, Toronto, Canada, acting *pro se*.

## 2. The Domain Names and Registrar

The disputed domain names <runwaymagazine.com> <runwaymagazine.net> and <runwaymagazine.org> are registered with Network Solutions, LLC.

## 3. Procedural History

The Complaint was filed with the WIPO Arbitration and Mediation Center (the "Center") on June 10, 2009. On June 10, 2009, the Center transmitted by email to Network Solutions, LLC a request for registrar verification in connection with the disputed domain names. On June 10, 2009, Network Solutions, LLC transmitted by email to the Center its response disclosing registrant and contact information for the disputed domain name which differed from the named Respondent and contact information in the Complaint. The Center sent an email communication to the Complainant on June 17, 2009 providing the registrant and contact information disclosed by the Registrar, and inviting the Complainant to submit an amendment to the Complaint. The Center also notified the Complainant in this email that the Complaint was administratively deficient. In response, the Complainant filed an amendment to the Complaint on June 18, 2009. The Center verified that the Complaint together with the amendment to the Complaint satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the "Policy" or "UDRP"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the "Supplemental Rules").

The Respondent requested an extension to file a response on June 18, 2009, prior to the Center formally notifying the Respondent of the Complaint. The Complainant opposed the Respondent's extension request on June 18, 2009.

In accordance with the Rules, paragraphs 2(a) and 4(a), the Center formally notified the Respondent of the Complaint, and the proceedings commenced on June 19, 2009. In accordance with the Rules, paragraph 5(a), the due date for Response was July 9, 2009. The Response was filed with the Center on July 9, 2009 and as such it was not necessary to determine whether an extension should be granted to the Respondent.

The Center appointed John Swinson as the sole panelist in this matter on July 17, 2009. The Panel finds that it was properly constituted. The Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7.

Both parties submitted further emails to each other and the Center after the submission of the Response on July 9 and 10, 2009. The Panel has decided to accept these emails as Supplemental Filings.

## 4. Factual Background

The disputed domain name <runwaymagazine.com> was registered by the Respondent on March 4, 1999, while the other two disputed domain names <runwaymagazine.org> and <runwaymagazine.net> were registered on April 8, 1999.

The websites operating from all disputed domain names are almost identical. At the top of each page is a header: "www.runwaymagazine.org [or other disputed domain name] is a mini web portal leading to www.runwayvista.com". There is also the following disclaimer at the footer of each website:

"All brands, products, services, trademarks, service-marks and registered trademarks mentioned on this site are the property of their respective owners.

The Domain Names Runwaymagazine.org [or other disputed domain name] and runwayvista.com are not related to any other company, product or service having similar names".

By clicking on a link, an Internet user can then be redirected to either:

TheBlog@RunwayVista - "It's about Style, Fashion, Art, Entertainment and more". This contains general information and stories relating to fashion and beauty, and contains various links to third party websites.

or

TheRunway@RunwayVista - "Internet Social Networking … share your fashion sense. Coming soon".

According to the Complainant's website (at "www.runwaymagazine.us"), the Complainant produces and distributes a print magazine to eight countries around the world, including Canada, Mexico, France, England, Italy, Spain, and Australia. The main focus of the magazine is fashion, beauty and entertainment. People can also subscribe to the magazine online, via the Complainant's website.

## 5. Parties' Contentions

### A. Complainant

The Complainant makes the following contentions:

RUNWAY MAGAZINE is a registered trade mark in the United States of America (Trade mark registration no. 3,586,631 for RUNWAY MAGAZINE word mark).

The disputed domain name <runwaymagazine.com> is an exact match of the Complainant's trade mark. The confusion of consumers (between the ".us" and ".com" TLDs) has caused lost communications and revenue for the Complainant. Ownership of the disputed domain names also provides the Respondent with the opportunity to post fake news stories and poor reviews which will destroy the Complainant's reputation.

The Complainant's Runway Magazine business has existed since 1997, and is a fashion news network affiliated with ABC/Disney. The Complainant shares its news with many major news networks.

Runway Magazine currently owns the following domains: <runwaymagazine.us>, <runwaymagazine.biz> and <runwaymagazine.info>. Runway Magazine is distributed in eight countries by Kable Distribution, including Canada where the Respondent resides. The magazine is sold for USD5.99, and is an audited news source.

The Respondent is using the trade mark to receive profit, and is causing harm to the reputation of the magazine. The Respondent is using the Complainant's name and using it to redirect to other sites, in an attempt to make money.

The disputed domain names were registered in 1999 and the Respondent has been cyber-squatting since that date, with no legal business being run from the websites.

The Respondent's websites demonstrate that the Respondent has no rights or legitimate interests.

The disputed domain names were renewed by the Respondent after a cease and desist letter was sent by the Complainant in 2009. The Respondent was also asked in 2008 to stop using the Complainant's name, which he refused to do.

### B. Respondent

The Respondent makes the following contentions:

The Complainant is attempting to illegitimately acquire ownership of the disputed domain names, because it wishes to position its "Runway Magazine" internationally. "Runway Magazine" is a fashion focused publication that was launched into international print circulation last year. The investment the Complainant has made in launching this magazine internationally would be improved if the Complainant owned the three disputed domain names (as these are the three most popular international Top Level Domain Names). There is also growing international interest in anything bearing the name "Runway".

The best selling 2003 novel "The Devil Wears Prada" makes prominent use of the name "Runway Magazine", which is a high-end international fashion magazine. Since the release of the movie by the same name, "Runway Magazine" has become popular in print, audio and video media. The popularity of "Runway Magazine" as a name is visible on the Internet. There are many websites, blogs, forums and Wikipedia articles making reference to "Runway Magazine" in a way which is unrelated to the original novel or movie, but which are related to art, fashion and lifestyle.

The Respondent has held the disputed domain names continuously since 1999. Prior to registering the names, the Respondent searched the Internet to see if anyone was using the name "Runway Magazine", and this did not return any exact hits. At this time, the Respondent could not see that anyone was using "Runway Magazine" on the Internet, in relation to a publication or website of any kind. The Respondent also registered the domain name <runwaymagazine.ca> in 2001.

The Respondent registered the disputed domain names in good faith, with the intention to use the names in two areas: 1. for websites that contain information about clothing and fashion, 2. for a website that would showcase interesting airport architecture (from a runway perspective). The Respondent had no intention of using the disputed domain names in relation to print-related publication.

The Respondent started using two of the disputed domain names in 2008, live on the Internet - <runwaymagazine.com> was used for emailing, and <runwaymagazine.net> was used for hosting the development of a social networking website. This took a long time, because the Respondent was developing skills in art and technology, and learning about systems and business models. The Respondent was also accumulating the personnel support needed to implement the projects. The email service was later removed as a practical precaution to minimize issues with the Complainant.

The Respondent incorporated "RunwayMagazine, Inc" nationally in Canada on August 11, 2008. The Respondent intends this company to be the vehicle by which it performs projects in relation to the disputed domain names.

The Respondent's websites do not mention the Complainant, its trade marks, products or services and intentionally do not look like the Complainant's websites. There is a disclaimer which informs Internet users about the site they have reached. The Respondent has not many any money from the domains, has not interfered with the Complainant's business, and has not tarnished the Complainant's trade marks.

RUNWAY MAGAZINE was not a registered trade mark in 1999 at the time of registration of the disputed domain names. This mark was only filed on July 31, 2008, and registered on March 10, 2009. The registration of the disputed domain names preceded the Complainant's trade mark by over nine years.

The Complainant's registered trade mark for RUNWAY MAGAZINE states that the first use of this mark was on January 1, 2002, while first use in commerce was May 1, 2007. However in the Complaint, the Complainant refers to the "Runway Magazine" business commencing in 1997. This is inconsistent with the information recorded on the trade marks register. Even if the Complainant was using "Runway Magazine" in business since 1997, the Complainant did not have worldwide or exclusive rights to that name between 1997 and 2008.

The Complainant was also assigned two ISSN numbers for "Runway Magazine" in 2008 (in print form, and eJournal/eMagazine form). The information relating to these ISSN numbers includes a reference to "Runway Beauty Magazine" as an alternative title, and to the disputed domain name <runwaymagazine.com> as an online resource. The Complainant has provided misleading information in the ISSN registration, and is aiding the confusion of Internet users who attempt to access the Complainant's magazine online.

According to the Complainant's website, "Runway Magazine" was distributed as a PDF file in 2003, and for its first four years. It was picked up by Kable Distribution in October 2007, "only 3 months after the first print issue went to circulation". There is evidence that the premiere issue of "Runway Beauty Magazine" was launched in print form on June 8, 2008, and that it went on sale at Barnes and Noble in the United States on June 23, 2008.

The Complainant registered the domain name <runwaybeauty.com> on July 7, 2004, and a US trade mark application for RUNWAY BEAUTY on August 20, 2007. The application for the RUNWAY MAGAZINE mark followed in July 2008.

On July 31, 2008, the Complainant contacted the Respondent for the first time, and the parties spoke on August 4, 2008. No complaints were made about the registration of the disputed domain names at that time.

There is confusion in press releases and publicity information as to whether the Complainant's magazine is called "Runway Beauty Magazine" or "Runway Magazine" (and it is sometimes just called "Runway"). In 2008 issues, the title is "Runway Beauty Magazine", however other items refer to the publication as "Runway Magazine".

## 6. Discussion and Findings

To succeed in its claim, the Complainant must demonstrate that all of the elements in paragraph 4(a) of the Policy have been satisfied, namely:

(i) the domain name registered by the Respondent is identical or confusingly similar to a trade mark or service mark in which the Complainant has rights; and

(ii) the Respondent has no rights or legitimate interests with respect to the domain name; and

(iii) the domain name has been registered and is being used in bad faith.

Paragraph 4(a) of the Policy states that the burden of proving these elements lies with the Complainant.

## A. Identical or Confusingly Similar

Runway Beauty is the owner of United States registered trade mark number 3,586,631 for RUNWAY MAGAZINE. This mark was filed on July 31, 2008, and registered on March 10, 2009.

The name of the owner of the trade mark (Runway Beauty) differs slightly to the Complainant in these proceedings (Runway Beauty, Inc.), however the Panel accepts that these are in fact the same entities.

The registered trade mark of RUNWAY MAGAZINE is identical to all three disputed domain names (ignoring the TLD suffix).

Accordingly, the first element has been met.

## B. Rights or Legitimate Interests

Paragraph 4(c) of the Policy enumerates several ways in which a respondent may demonstrate rights or legitimate interests in the disputed domain name:

"Any of the following circumstances, in particular but without limitation, if found by the Panel to be proved based on its evaluation of all evidence presented, shall demonstrate your rights or legitimate interests to the domain name for purposes of paragraph 4(a)(ii):

(i) before any notice to you of the dispute, your use of, or demonstrable preparations to use, the domain name or a name corresponding to the domain name in connection with a *bona fide* offering of goods or services; or

(ii) you (as an individual, business, or other organization) have been commonly known by the domain name, even if you have acquired no trademark or service mark rights; or

(iii) you are making a legitimate non-commercial or fair use of the domain name, without intent for commercial gain to misleadingly divert consumers or to tarnish the trademark or service mark at issue."

To succeed on this element, the Complainant must make out an out *prima facie* case that the Respondent lacks rights or legitimate interests in the disputed domain name. If such a *prima facie case* is made out, the Respondent then has the burden of demonstrating rights or legitimate interests in the domain name.

The Complainant has put forward minimal evidence of the Respondent's lack of rights or legitimate interests. In short, the Complainant contends that the Respondent has been using the disputed domain names for cyber squatting purposes since 1999, with no legal business being operated from the corresponding websites. The Complainant points to the content of the Respondent's websites to try and establish lack of rights or legitimate interests.

In response, the Respondent contends that it has made use of the disputed domain names (or least planned to) prior to notice of this dispute, and is making a legitimate non-commercial use of the disputed domain names without intent to misleadingly divert consumers or tarnish the Complainant's trade mark.

By the Respondent's own admission, it did not start any business from the disputed domain names until 2008, almost ten years after it first registered the names. The Respondent contends that while it always had plans to develop the websites, he was constrained by personnel resources and skill shortages. The Respondent's plans supposedly involved websites containing information on fashion, but also websites relating to airport runways.

It was also in early to mid 2008 when the parties first made contact, and a dispute arose concerning ownership of the disputed domain names.

Due to the significant amount of time in which the Respondent held the disputed domain names without any development, the timing of the Complainant's filing of the RUNWAY MAGAZINE trade mark application, and the timing of the Respondent's eventual launch of its websites, the Panel infers that the Respondent only began to develop the websites after receiving notice of an impending dispute from the Complainant. On balance, based on the lack of evidence submitted by the Respondent, the Panel does not accept that the Respondent was making a *bona fide* offering of goods and services in relation to the disputed domain names, prior to being contacted by the Complainant.

Further, the Panel is not entirely satisfied that the Respondent's offering of fashion and beauty news from its websites would constitute a *bona fide* offering of goods and services. The articles currently offered on the Respondent's website appear very similar in nature to articles that would commonly be found in a fashion magazine such as Runway Magazine. As this content was launched around the same time as the dispute arose, it is difficult for the Panel to believe that the similarity of content is coincidental. However, as it is not necessary to determine this issue, the Panel does not make a conclusive finding on this point.

On the evidence before it, the Panel is not willing to accept that the Respondent's use of the disputed domain names falls under paragraph 4(c)(iii) of the Policy. While the Respondent's websites do not currently appear to be profit driven, the Panel cannot say with certainty that the Respondent is using the domain names without intent to misleadingly divert customers. This is because the content was established at a time which is close in proximity to the time when the Complainant raised concerns with the Respondent regarding the disputed domain names.

In the Panel's view, the disclaimer utilized by the Respondent is not sufficient to prevent confusion arising amongst Internet users. It is not a disclaimer which specifically mentions the Complainant, and as the disputed domain names match the Complainant's trade marks exactly and the website contains content similar to the Complainant's, Internet users are likely to be confused despite the disclaimer.

Accordingly, the second element has been met.

## C. Registered and Used in Bad Faith

The Panel has difficulty accepting that the Respondent registered and used the disputed domain names in bad faith, due to the timing of the following circumstances:

- the Respondent registered the disputed domain names in 1999. This is almost ten years prior to the Complainant's trade mark becoming registered, and nine years prior to the Complainant filing its RUNWAY MAGAZINE trade mark application.

- the Complainant claims that it operated the Runway Magazine business since 1997 (and the Complainant's website states that it was an extremely successful Internet magazine from 1997 to 2007). However the Complainant has provided no evidence of this fact. The Complainant's primary Internet presence for Runway Magazine appears to be via the website "www.runwaymagazine.us". Expanded second-level ".US" domains were not launched until April 24, 2002, so the Complainant could not have been running its "successful Internet magazine" from this location prior to 2002. If it was providing a magazine prior to that date (perhaps from the "www.vipsalon.com" website as mentioned in the Supplemental Filing), it has failed to provide sufficient evidence of that fact, and evidence of use of the trade mark RUNWAY MAGAZINE from that time.

- the date of commencement of the Runway Magazine business provided by the Complainant is also inconsistent with the dates of first use in the Complainant's trade mark registration. The earliest date of use set out in the Complainant's trade mark registration of the RUNWAY MAGAZINE trade mark is January 1, 2002, with first use in commerce being May 1, 2007. This indicates to the Panel that RUNWAY MAGAZINE was not significantly used by the Complainant in a printed or online publication until 2007, well after the Respondent first registered the disputed domain names.

- other domain names and trade marks related to the Complainant's business (such as the RUNWAY BEAUTY trade mark and <runwaybeauty.com> domain name), were not filed or registered until several years after the disputed domain names were registered.

In light of the above factors, the Panel finds that there is no evidence before the Panel to demonstrate that the Respondent was aware or should have been aware of the Complainant or its magazine business at the time it registered the disputed domain names. The record before the Panel also shows that the Complainant's use of RUNWAY MAGAZINE as a trade mark, only became significant in or around 2007, which is well after the registration dates of the disputed domain names.

While the Respondent has admittedly held the disputed domain names for a significant period of time without apparent use, the Respondent has made attempts to provide content for its websites, in accordance with his original intentions. The Panel therefore does not consider that the Respondent has been passively holding the disputed domain names in circumstances sufficient to establish registration and use in bad faith for the purpose of the Policy.

Accordingly, the Complainant has failed to establish the third element.

## 7. Decision

For all the foregoing reasons, the Complaint is denied.

John Swinson
Sole Panelist

Dated: July 28, 2009

Case 2:18-cv-02503-PMG-JO Document 106 Filed 10/16/19 Page 200 of 295 Page ID #:3353



Government
of Canada

Gouvernement
du Canada

⎋ Share this page

# RunwayMagazine.Com — 1432770

**Application number**
1432770

**Registration number**
TMA829446

**Type(s)**
Word

**Category**
Trademark

**CIPO status**
REGISTERED

**Filed**
2009-03-27

**Registered**
2012-08-08

**Registration Expiry Date**
2027-08-08

**Registrant**
Errol Hernandez
1087 Bloor St.W., Suite 207
Toronto
ONTARIO M6H1M5

**OPPONENT**
Runway Beauty, Inc.
8637 E. Berridge Lane
Scottsdale
Scottsdale, Arizona
85250

## Index headings

RUNWAYMAGAZINE.COM

RUNWAY MAGAZINE

## Services

(1) Operation of a website providing fashion information.

## Classification data

### Disclaimer

The classification data is provided for information and searching purposes only. CIPO does not warrant the accuracy of the classes assigned to the trademark. This data has no legal value of any kind.

45 - Personal and legal

## Claims

Used in CANADA since March 26, 2009

UNITED STATES OF
AMERICA

**Agent**
MILTONS IP/P.I.
15 Fitzgerald Rd, Suite
200
Ottawa
ONTARIO K2H9G1

# Action History

| Action | Action date | Due date | Comments |
|---|---|---|---|
| Filed | 2009-03-27 | | |
| Created | 2009-03-30 | | |
| Formalized | 2009-03-31 | | |
| Search Recorded | 2009-10-09 | | |
| Examiner's First Report | 2009-10-09 | 2010-04-09 | |
| Correspondence Created | 2010-06-17 | 2010-12-17 | |
| Correspondence Created | 2011-03-15 | 2011-09-15 | |
| Correspondence Created | 2011-05-25 | 2011-11-25 | |
| Approval Notice Sent | 2011-07-27 | 2011-08-24 | |
| Approved | 2011-09-15 | | APPROVED BY PROGRAM EX200M1 |

Case 2:18-cv-02503-PMG-JG Document 106 Filed 10/16/19 Page 202 of 295 Page ID #:3355

| Action | Action date | Due date | Comments |
|---|---|---|---|
| Advertised | 2011-10-05 | | Vol.58 Issue 2971 |
| Opposed | 2011-12-05 | | Opposition Filed. |
| Opposition Removed | 2012-08-02 | | Opposition/Section 45 Case Number : 1 Opposition/Section 45 deemed withdrawn. |
| Allowed | 2012-08-03 | | |
| Allowance Notice Sent | 2012-08-03 | 2013-02-03 | |
| Registered | 2012-08-08 | 2027-08-08 | |

# Opposition History

## Case # 1 : Runway Beauty, Inc. - Deemed Withdrawn

### Statement of Opposition

| Action | Action date | Due date |
|---|---|---|
| S/O Fee Received | 2011-12-05 | |
| S/O Filed | 2011-12-05 | |
| S/O Forwarded For Review | 2011-12-07 | |
| S/O Sent To Applicant | 2011-12-13 | 2012-02-13 |

### Counter Statement

| Action | Action date | Due date |
|---|---|---|
| C/S Served On Opponent | 2012-02-11 | 2012-06-11 |
| C/S Filed By Applicant | 2012-02-13 | |

| Action | Action date | Due date |
|---|---|---|
| Correspondence Created | 2012-02-22 | |
| Note To File | 2012-02-29 | 2012-03-21 |
| Correspondence Created | 2012-03-06 | |

## Evidence - Opponent

| Action | Action date | Due date |
|---|---|---|
| Case Closed - Deemed Withdrawn | 2012-08-02 | |

# EXHIBIT H

LAW OFFICE OF MICHAEL N. COHEN, P.C.
Michael N. Cohen (Cal. Bar. No. 225348)
Christopher Barsness (Cal. Bar. No. 222861)
9025 Wilshire Blvd., Suite 301
Beverly Hills, California 90211
Tel: 310-288-4500
Fax: 310-246-9980
michael@patentlawip.com

Attorneys for Plaintiff
RUNWAY BEAUTY, INC.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUNWAY BEAUTY, INC., an Arizona Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> RUNWAY MAGAZINE, INC, a California Corporation; and JAMES BUCCELLI; and DOES 1-10, inclusive, <br><br> Defendants. | Case No:CVO9-8333 PA (JEMx) <br><br> **EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Time: N/A |

# TABLE OF CONTENTS

EX PARTE APPLICATION…………………………………………1

I    MEMORANDUM OF POINTS
AND AUTHORITIES…………………………………………3

    A.    PLAINTIFF'S INFRINGED TRADEMARK………………3

    B.    ALLEGED INFRINGING ACTS OF DEFENDANT………5

        1.    Misuse of § 29 Statutory Symbol ®…………………6

        2.    Audigier/Rock Incident of Actual Confusion…………6

        3.    False Claim of Affiliated Third Parties………………7

    C.    DAMAGES SUFFERED BY PLAINTIFF…………………7

II    A TEMPORARY RESTRAINING ORDER AND A
PRELIMINARY INJUNCTION SHOULD ISSUES IN
A CASE WARRANTING EXTRAORDINARY RELIEF…………8

    A.    A DISTRICT COURT HAS THE POWER TO
ISSUES A TEMPORARY RESTRAINING
ORDER AND A PRELIMINARY INJUNCTION
WHEN REQUIRED…………………………………………..8

    B.    PLAINTIFF'S BURDEN OF PROOF………………………..9

III    ARGUMENT…………………………………………..10

    A.    PLAINTIFF IS LIKELY TO SUCCEED
ON THE MERITS.................................................................10

        1.    Plaintiff Holds Valid, Protectable
Trademark Rights…………………………………...11

        2.    Plaintiff Established Their Trademark Rights
Prior to Defendants' First use of "Runway
Magazine LA"…………………………………………11

i

3.    Under the Ninth Circuit's Sleekcraft Analysis, a Likelihood on Consumer Confusion Exists............12

    a.  Defendants' Name is Identical to Plaintiff's Trademark and Attempts to Duplicate Plaintiff's Design Mark..................13

    b.  Plaintiff and Defendants are Involved in Identical Services: Fashion Magazine Publications and Websites...............14

    c.  Plaintiff and Defendants' Marketing Channels Overlap Significantly.....................15

    d.  The "RUNWAY MAGAZINE" Trademark is a Strong Mark......................................16

    e.  Level of Care by Purchasers..........................17

    f.  Intent........................................................18

    g.  Actual Confusion......................................19

    h.  Likelihood of Expansion...............................20

C.    PLAINTIFF FACES IRREPARABLE HARM..................20

D.    PLAINTIFF HAS RAISED SERIOUS QUESTIONS AND THE BALANCE OF HARSHIPS TIPS SHARPLY IN ITS FAVOR.......................................................22

IV    CONCLUSION.............................................................23

ii

## TABLE OF AUTHORITIES

### CASES

*AMF, Inc. v. Sleekcraft Boats*,

    599 F. 2d 341, 348-349 (9th Cir. 1979)

*Americana Trading, Inc. v. Russ Berrie & Co.,*

    966 F.2d 1284, 1287 (9th Cir. 1992)

*Apple Computer, Inc. v. Formula International, Inc.,*

    725 F.2d 521 (9th Cir., 1984)

*Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*,

    174 F.3d 1036, 1046 (9th Cir. 1999)

*Caribbean Marine Services Co. v. Baldridge*,

    844 F.2d 668, 674 (9th Cir., 1988)

*Dymo Industries, Inc. v. Tapeprinter, Inc.,*

    326 F.2d 141, 143 (9th Cir., 1964)

*E. Remy Martin & Co., S.A. v. Shaw-Ross International Imports, Inc.*,

    756 F.2d 1525 (11th Cir.1985)

*GoTo.com, Inc. v. Walt Disney Co.,*

    202 F.3d 1199, 1205 (9th Cir. 2000)

*Hewlett-Packard Co. v. Packard Press, Inc.*,

    281 F.3d 1261, 1265 (Fed. Cir. 2002)

*International Jensen, Inc. v. Metrosound U.S.A., Inc.,*

    4 F.3d 819, 827 (9th Cir. 1993)

*Int'l Olympic Comm. v. San Francisco Arts & Athletics,*

    219 U.S.P.Q. (BNA) 982, 986 (N.D. Cal. 1982), aff'd, 707 F.2d 517 (9th Cir. 1983)

*Kenner Parker Toys, Inc. v. Rose Art Indus., Inc.*,

    963 F.2d 350, 353 (Fed. Cir. 1992)

iii

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,*

    799 F.2d 867, 871 (2d Cir. 1986)

*Los Angeles Memorial Coliseum Committee v. National Football League, et al,*

    634 F.2d 1197 (9th Cir., 1980)

*Metro Publ'g, Inc. v. Surfmet, Inc.,*

    No. C02-01833CW, 2002 U.S. Dist. LEXIS 26232, at *27-28

    (N.D. Cal. July 3, 2002)

*Metro Publishing, Ltd. V. San Jose Mercury News,*

    987 F.2d 637 (9th Cir., 1993)

*Motorola, Inc. v. Qualcomm, Inc., et al,*

    45 U.S.P.Q. 2d 1558, 1561 (S.D. Cal., 1997)

*National Customer Engineering v. Lockheed Martin Corp.,*

    43 U.S.P.Q.2d 1036 (C.D. Cal. 1997)

*Perfumebay.com Inc. v. eBay Inc.,*

    506 F.3d 1165, 1174 (9th Cir. 2007)

*Sengoku Works Ltd. v. RMC Int'l, Ltd.,*

    96 F.3d 1217, 1219 (9th Cir. 1996)

*Watts Health Systems v. United Healthcare.,*

    960 F. Supp. 436 (C.D. Cal. 1996)

*World Carpets, Inc. v. Dick Littrell's New World Carpets,*

    438 F.2d 482, 489 (5th Cir.1971)

*Wynn Oil Co. v. Thomas,*

    839 F.2d 1183, 5 U.S.P.Q.2d. 1944, 1950 (6th Cir. 1988)

# STATUTES AND RULES

Rule 65, F.R.Civ.P.

Local Rule 7-19

15 U.S.C. § 1057(b)

15 U.S.C. § 1114

15 U.S.C. § 1125(a)

# OTHER AUTHORITIES

*2* McCarthy on Trademarks and Unfair Competition § 11:75 (4th ed. 2007)

Restatement (Third) of Unfair Competition § 21, comment I (1995)

v

# EX PARTE APPLICATION

Pursuant to Local Rule 7-19 and Rule 65, F.R.Civ.P., Runway Beauty, Inc. (hereinafter referred to as "Plaintiff") hereby applies to the Court, *ex parte*, for a Temporary Restraining Order and Order to Show Cause re: Preliminary Injunction to enjoin Runway Magazine, Inc., and James Buccelli (hereinafter "Defendants") during the pendency of this action from further acts of trademark infringement in violation of 15 U.S.C. §§1114, 1125(a).

This Application is made on the grounds that:

1. Plaintiff is the owner of the registered trademark "Runway Magazine" (Registration No. 3,586,631), used to identify their famous magazine sold throughout the United States and internationally.

2. Plaintiff has used its trademark as early as January of 2002, and continuously as of May of 2007 on the print issues of their magazine sold throughout the United States and internationally;

3. Defendants are marketing a magazine under the unregistered name "Runway Magazine" which is identical to Plaintiff's registered trademark, used by Plaintiff for the purpose of identifying their magazine.  As a result, Defendants' infringement has caused actual confusion and is likely to further cause confusion and mistake, and also is likely to deceive purchasers of Defendants' magazine into the belief that Defendants' magazine is produced, sponsored, or endorsed by Plaintiff;

4. Defendants have made misrepresentations to potential clients, deceiving the public into believing that Defendants are the Plaintiff;

5. Plaintiff has been retained by public relation companies to promote various actors in the upcoming "The Twilight Sage: New Moon" which is to be release Friday November 20, 2009.  Plaintiff will suffer irreparable harm if

1

Defendants are not enjoined prior to the release date; and

      4.      Unless Defendants are enjoined from all the activity requested herein during the pendency of this action, Plaintiff shall suffer irreparable injury.

      This Application is based upon the Complaint, the Memorandum of Points and Authorities, and the Declarations of Vincent Mazzotta, Tara Gregory, and Michael N. Cohen, and the exhibits attached thereto and such further evidence as may be adduced at the hearing of this matter.

      This Application has been made following communication to Defendants and Bruce J. Tackowiak, whom upon information and belief represents Defendants, pursuant to Local Rule 7-19.1 made on November 18, 2009.

DATED: November 18, 2009        Respectfully submitted,

By:_____/s/_____.
      Michael N. Cohen
      LAW OFFICE OF MICHAEL N. COHEN, P.C.
      9025 Wilshire Blvd., Suite 301
      Beverly Hills, California 90211
      Telephone: (310) 288-4500
      Facsimile: (310) 246-9980
      Michael@patentlawip.com

      Attorneys for Plaintiff
      RUNWAY BEAUTY, INC.

2

PLAINTIFF'S EX PARTE TRO      RUNWAY BEAUTY, INC. vs. RUNWAY MAGAZINE, INC., et. al

# MEMORANDUM OF POINTS & AUTHORITIES

## I

## STATEMENT OF FACTS

### A.    Plaintiff's Infringed Trademark

Plaintiff, Runway Beauty, Inc., is the owner of the trademark "RUNWAY MAGAZINE" and is in the business of *inter alia*, designing, advertising, marketing, publishing, distributing, selling and/or offering for sale a high-end fashion magazine entitled *Runway Magazine* (hereinafter "Plaintiff's magazine" or "the magazine").  Decl. Mazzotta, ¶2.[1]

At least as early as January of 2002, Plaintiff adopted the mark "RUNWAY MAGAZINE" trademark to identify a fashion/life style publication which Plaintiff has marketed and advertised widely.  *Id*. at ¶3.  At least as early as May of 2007, Plaintiff used in interstate commerce its trademark for the magazine.  *Id*.  Plaintiff has expended considerable time, effort, and resource to design and develop its unique trademark for its magazine.

At all time herein relevant, Plaintiff has continually used the name RUNWAY MAGAINE as its trademark in connection with its goods and services. Plaintiff is the owner of the registered trademark on the Principal Register of the United States Patent and Trademark Office ("PTO") for the mark "RUNWAY MAGAZINE" Reg. No. 3,586,631.  *Id*. at ¶3.  This registration is lawfully owned by Plaintiff and is subsisting and in full force and effect.

Plaintiff's magazine, *Runway Magazine*, is an audited news source in which Plaintiff has extensively advertised and promoted in various media throughout the United States and the world, including but not limited to print and Internet.

---

[1] All citations to the Declarations in Support of Plaintiff Runway Beauty, Inc.'s Ex Parte Application for Temporary Restraining Order are in the format "Decl. (full last name)."

Plaintiff's distribution of the magazine exceeded 60,000 print issues in 2008 and
70,000 thus far in 2009 within the United States alone. *Id.* at ¶4. The magazine is
also distributed internationally in eight countries and receives a total distribution of
over 100,000 issues. Plaintiff's magazine is available in over 5,200 locations,
including Barnes and Noble, Target, Books A Million, in addition to other finer
book stores. *Id.* Plaintiff's magazine is distributed by Kable Distribution Services,
a renowned distribution outlet. *Id.*

Plaintiff's magazine is identified as a well known, well respected magazine
that serves as an authority in the high fashion industry. The magazine features top
international models and understands and writes about the high-end fashion couture
world. The physical appearance of the magazine is professional and utilizes the
industry standard editing software and technologies, as well as uses only high grade
gloss paper. *Id.* at ¶6. Also, the magazine's photographs are taken by employees
or agents of Plaintiff and therefore Plaintiff retains all rights to the copyrights. To
the extent that Plaintiff uses outside photographers, Plaintiff properly utilizes
credits, obtains licensing rights, and complies with all intellectual property laws in
connection with the publication of the magazine. *Id.* at ¶7.

The magazine is highly selective in the articles it discusses and filters the
individuals it interviews for publication in the magazine. Due to the stellar
reputation of the magazine, Plaintiff has interviewed several well known designers
and celebrities, including but not limited to Nole Marin (fashion editor of ELLE
MAGAZINE), Christian Audigier (clothing design/founder of ED HARDY), Rex
Lee (celebrity from HBO's ENTOURAGE), Bobby Thomas (correspondent for E!
ENTERTAINMENT), Hayley Marie Norman (celebrity/actress), and Sprague
Grayden (celebrity/actress) all of which are published in the magazine. *Id.* at ¶8.
Further, in addition to Plaintiff's print magazine, Plaintiff's Runway Magazine
actively and continuously involves, participates, and reviews official international

PLAINTIFF'S EX PARTE TRO                RUNWAY BEAUTY, INC. vs. RUNWAY MAGAZINE, INC., et. al

runway fashion events that take place in New York, London, Paris, Milan, Miami, Los Angeles, Germany, and Russia in addition to other countries. *Id*.

### B. Alleged Infringing Acts of Defendants

Defendants, through their Internet website, http://www.runwaymagazinela.com and www.runwaymagazineinc.com have prominently displayed the infringing "Runway Magazine" mark in nearly identical font as in Plaintiff's website at http://www.runwaymagazine.us. *Id*. at ¶9.

Defendants claim to also have a "magazine" in which it distributes in Los Angeles. Defendants have thrown numerous parties and/or events at nightclubs and other establishments throughout Los Angeles, using and promoting the infringing mark, "RUNWAY MAGAZINE." *Id*. at ¶10. The Defendants video tape their events and then place the video clips of the event throughout the Internet using the infringing mark. They continue to throw their live events promoted as "RUNWAY MAGAZINE" and have also announced they intended to launch a television show using the infringing mark. *Id*. at ¶14.

Defendants continue to advertise their "RUNWAY MAGAZINE" infringing mark on the Internet, such as Youtube.com[2], Myspace.com[3], Facebook.com[4], Twitter.com[5], various blogs[6], and at several live events throughout Los Angeles and possibly elsewhere causing confusion among the general consuming public as to the origin of Defendants' services, since consumers associate the RUNWAY MAGAZINE name with Plaintiff. *Id*. at ¶15.

By an email dated August 21, 2008, Plaintiff sent a "cease and desist" demand to Defendants, demanding that they stop all use of the Runway Magazine name, title, and logo with regard to any magazine or events held by Defendants.

---

[2] http://www.youtube.com/watch?v=S2Pi5uppjT0
[3] http://www.myspace.com/runwaymagazinela
[4] http://www.facebook.com/family/Buccelli/1#/profile.php?id=668033502&ref=fs
[5] http://twitter.com/runwayjames
[6] http://james-buccelli.blogspot.com/

5

But said email was rejected by Defendants who have continued their attempt to exploit the RUNWAY MAGAZINE name of Plaintiff. *Id.* at ¶14.

### 1. Misuse of § 29 Statutory Notice Symbol ®

In addition, to Defendants infringement of Plaintiff's trademark, Defendants, have and continue to place the ® symbol next to their infringing mark though they have no federal registration. In fact, Defendant James Buccelli has previously applied for a trademark application with the United States Patent and Trademark Office for "RUNWAY MAGAZINE" however, the application was rejected on the basis of likelihood of confusion in view of Plaintiff's U.S. registration No. 3,586,631. As such, Defendant's application serial no. 77/612008 received its final office action.

### 2. Audigier/Rock Incident of Actual Confusion

On or around March of 2009, Plaintiff interviewed the world famous clothing designer, Christian Audigier, who is a world famous designer known for the Ed Hardy, Christian Audigier line of clothing, and has also created a brand called Crystal Rock named after his daughter in which she collaborated on. Decl. Gregory ¶2. The Audigier interview was published in Plaintiff's Spring 2009 issue of the magazine. *Id*. at ¶3. After the Audigier interview in March, an employee of Defendant contacted representatives of the Crystal Rock clothing regarding advertising in "Runway Magazine." *Id*. at. ¶6. In an attempt to contact Plaintiff, agents for Crystal Rock mistakenly contacted Defendants. Defendants then falsely misrepresented that *Defendants* conducted the Audigier interview, intentionally deceiving Crystal Rock. *Id*. at ¶6. Not knowing the true identity of Defendants, agents for Crystal Rock proceeded to pay Defendants an amount of approximately $24,500.00 for advertising in which Defendants accepted and received possession of those monies. *Id*. at ¶7. After Crystal Rock realized the confusion caused by Defendant, Crystal Rock retained Plaintiff's magazine to commence their

6

advertising campaign.

### 3. False Claim of Affiliation Third Parties

Apparently, Defendants have an interest in setting up various live events throughout Los Angeles, namely parties hosted at nightclubs, hotels and restaurants. All of these events are done while using the name "Runway Magazine" as the main sponsor of said events. More recently, Defendants have held a "MTV VMA Fashion Kick Off" and has also claimed to the public that Defendants were awarded a contract to hold a 2009 "Oscar" gifting party, all sponsored by "Runway Magazine." Decl. Mazzotta. at ¶16. The terms MTV, VMA, and Oscar, are all registered trademarks of third parties. Further, representatives of MTV and the Oscars have indicated that Defendants have no affiliation in with them. *Id.*

Further, based on upon the print issue reviewed by Plaintiff, Defendants do not appear to credit the owners of the images of the photographs within Defendant's print publication. If Defendants' infringement of Plaintiff's trademark and identity continues, Defendants' bad acts may likely be attributed to Plaintiff.

### C. <u>Damages Suffered by Plaintiff</u>

As described supra with the Audigier/Crystal Rock incident, Plaintiff has already suffered irreparable harm due to the actual confusion caused by Defendants. Further, the Defendants' have received multiple complaints from third parties that can and may have already been attributed to Plaintiff. Id. at ¶20. If Defendants are not enjoined from their infringing activities, existing and potential clients will mistakenly believe that Defendants magazine is Plaintiff's. After the Audigier/Crystal Rock incident, Plaintiff was forced to do "damage control" by explaining in detail that the Defendants and Plaintiff are not the same company, nor related or affiliated in anyway. Only after Plaintiff thoroughly explained the confusion caused by Defendant, did Audigier/Crystal Rock retain Plaintiff. *Id.* at ¶18.

Defendants' questionable business practices, such as the noncompliance with third party intellectual property rights, including but not limited to MTV and the Oscars, as described above, have caused irreparable harm and continue to be will likely be wrongly imputed on Plaintiff.

Further, Plaintiff harm is imminent as Plaintiff has been retained by public relation companies to promote the actors Chaske Spensor and Christian Serratos, whom both star in the highly anticipated theatrical motion picture sequel *The Twilight Sage: New Moon* which is to be release Friday November 20, 2009. *Id.* at ¶19. Plaintiff's marketing deal allows Plaintiff the rights to place the actors on the cover of Plaintiff's magazine. In view of this, Defendants' continued infringement and misrepresentation to potential clients, is highly foreseeable that the public will be confused and that Defendants will monopolize on this confusion. Plaintiff will suffer irreparable harm if Defendants are not enjoined prior to the release date of the film on November 20, 2009.

The foregoing conduct by Defendants Runway Magazine, Inc., and James Buccelli, has been willful and deliberate, specifically intended by said Defendants to trade off on the goodwill, fame and secondary meaning associated with Plaintiff's famous RUNWAY MAGAZINE name and mark, and to "palm off" their activities as being those associated with Plaintiff.

## II

## A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION SHOULD ISSUE IN A CASE WARRANTING EXTRAORDINARY RELIEF

A.    **A District Court Has the Power to Issue a Temporary Restraining Order and a Preliminary Injunction When Required**

Pursuant to Rule 65, F.R.Civ.P, a district court has the power to issue

8

Preliminary Injunction and, where the moving party makes a showing that immediate and irreparable damage may result before the Defendants can be heard in opposition, the district court may issue a Temporary Restraining Order.  The caution to be exercised in the issuance of a preliminary injuction was defined long ago by the United States Court of Appeals for the Ninth Circuit.  The court stated that in cases of this kind: "The grant of a preliminary injunction is the exercise of a very far-reaching power never to be indulged in except in a case clearly warranting it" (citations omitted). *Dymo Industries, Inc. v. Tapeprinter, Inc.,* 326 F.2d 141, 143 (9th Cir., 1964).

### B.    Plaintiff' Burden of Proof.

Rule 65, F.R.Civ.P., and decisions of the Ninth Circuit Court of Appeals articulate the burden of proof that is generally imposed on one seeking a preliminary injunction. *Metro Publishing, Ltd. V. San Jose Mercury News*, 987 F.2d 637 (9th Cir., 1993); *Apple Computer, Inc. v. Formula International, Inc.,* 725 F.2d 521 (9th Cir., 1984); *Los Angeles Memorial Coliseum Committee v. National Football League, et al*, 634 F.2d 1197 (9th Cir., 1980).  In *Los Angeles Memorial Coliseum*, the Ninth Circuit identifies the following traditional, equitable criteria which are to be considered in determining whether to grant preliminary injunctive relief:

> (1) A strong likelihood of success on the merits;
>
> (2) The possibility of irreparable injury to the Plaintiff if the preliminary relief is not granted;
>
> (3) The balance of hardships favoring the Plaintiff; and
>
> (4) Advancement of the public interest in certain cases.

In further defining the burden of proof which is imposed on a moving party in trademark infringement cases, the court stated: "[a] party must demonstrate either

9

(1) a combination of probable success on the merits and the possibility of irreparable injury of (2) that serious questions are raised and the balance of hardships tips sharply in its favor" (citations omitted). *Metro Publishing, Ltd., supra,* 987 F.2d at 639.  With respect to the showing required for irreparable injury, the party seeking a preliminary injunction "must demonstrate immediate threatened harm." *Caribbean Marine Services Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir., 1988); *Motorola, Inc. v. Qualcomm, Inc., et al,* 45 U.S.P.Q. 2d 1558, 1561 (S.D. Cal., 1997).

 In the context of this case, for Plaintiff to success on the merits, they must prove their trademark is protectable, that there is a reasonable likelihood consumers will be confused regarding the source of origin of Defendants' magazine, and that Plaintiff will suffer irreparable injury if a Temporary Restraining Order and a preliminary injunction are not issued.  It is submitted that the evidence before the Court supports a finding that Plaintiff have sustained their burden of proof to show either a reasonable probability Plaintiff will succeed on the merits or that, without the imposition of a preliminary injunction, Plaintiff is likely to suffer immediate irreparable injury before a trial on the merits.

**III**

**ARGUMENT**

**A.**  **Plaintiff Is Likely to Succeed on the Merits.**

 To prevail on a trademark infringement claim, the trademark holder must demonstrate that (1) it has a valid, protectable trademark, and (2) that subsequent use of the trademark by another is likely to create consumer confusion. *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999).[7]

---

[7] The test for unfair competition is the same as for trademark infringement. *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988). The test for common law trademark infringement also is the same as for federal trademark infringement. *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1403 (9th Cir. 1997) ("'Likelihood of confusion' is the basic test for both common law trademark infringement and federal statutory trademark infringement.") Thus, the same test applies for likelihood of success on the merits of all of Common Sense Media's claims.

10

As demonstrated below, Plaintiff can do both.

### 1. Plaintiff Holds Valid, Protectable Trademark Rights.

Plaintiff owns the federally registered trademark for the word mark "RUNWAY MAGAZINE"® (Registration No. 3,586,631). *Id*. at ¶3. The federal registration constitutes *prima facie* evidence of the validity and protectability of the mark, and of Plaintiff's ownership and exclusive right to use the mark. 15 U.S.C. § 1057(b); *Brookfield*, 174 F.3d at 1047. Because Plaintiff has a valid and protectable interest in the "RUNWAY MAGAZINE" trademark they can preclude others, including Defendants, from adopting confusingly similar designations.

Plaintiff also has common law rights in the "RUNWAY MAGAZINE" trademark. Common law trademark rights the mark is conclusively established by actual use of the marks. *Brookfield* at 1047 ("The first to use a mark is deemed the 'senior' user and has the right to enjoin 'junior' users from using confusingly similar marks in the same industry and market or within the senior user's natural zone of expansion."); see also *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996) ("It is axiomatic in trademark law that the standard test of ownership is priority of use.").

Plaintiff has been using the "RUNWAY MAGAZINE" trademark for identification of their magazine continuously since as early as May of 2007 in interstate commerce in connection with printed magazines. *Id*. at ¶3. Plaintiff's use also extends internationally to eight countries with its total circulation exceeding 100,000. Further, Plaintiff's first use anywhere of the term "Runway" dates back to as early as January of 2002 in use with an online magazine. *Id*.

11

### 2. Plaintiff Established Their Trademark Rights Prior to Defendants' First Use of "Runway Magazine LA".

Rights in a trademark arise from use and the priority of those rights is established either from the date on which the application for a federal trademark registration was filed or the date on which a trademark was first used, whichever is earlier. *Brookefield*, 174 F.3d at 1047; *see also* 15 U.S.C. §1057 ("[T]he filing of the application to register [a] mark shall constitute constructive use of the mark, conferring a right of priority, nationwide in effect…").  Thus, Plaintiff' rights in the RUNWAY MAGAZINE trademark arose on May of 2007 in connection with printed publications in interstate commerce.  Further, Plaintiff's first use anywhere of the "Runway" mark dates back to as early as January of 2002 for use with an online magazine. *Id*.

It appears that Defendants do not print an actual audited magazine bearing a UPC code. *Id*. at ¶12.  Upon information and belief, Plaintiff is aware of only three actual print issues that were ever published, although Defendants claim to have a bi-monthly print magazine. *Id*.  Upon information and belief, all of those issues bearing the identical trademark and using nearing identical font as Plaintiff's RUNWAY MAGAZINE mark.  To add further confusion as to the number of publications actually printed, Defendants' cleverly created an "online magazine" to give the illusion that they are in actual print production. *Id*.

### 3. Under the Ninth Circuit's *Sleekcraft* Analysis, a Likelihood of Consumer Confusion Exists.

The Ninth Circuit has developed specific factors to guide the determination of likelihood of confusion.  These factors include (1) the similarity of the marks; (2) the relatedness of the two entities' services; (3) the marketing channels used; (4) the strength of the mark; (5) intent in selecting the mark; (6) evidence of actual confusion; (7) the likelihood of expansion into other markers; and (8) the degree of

12

care likely to be exercised by "purchasers." *AMF, Inc. v. Sleekcraft Boats*, 599 F. 2d 341, 348-349 (9th Cir. 1979); *GoTo.com, Inc. v. Walt Disney Co.,* 202 F.3d 1199, 1205 (9th Cir. 2000). These factors are flexible, and some are more important than others, particularly the similarity of the marks and whether the parties' services are related. *Brookfield,* 174 F. 3d at 1054; *see also, Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1265 (Fed. Cir. 2002) (noting the likelihood of confusion analysis may focus on dispositive factors such as similarity of the marks and relatedness of the goods). The "relative importance of each individual factor will be case-specific" and it will often be possible "to reach a conclusion with respect to likelihood of confusion after considering only a subset of factors." *Brookfield*, 174 F.3d at 1054. An analysis of these factors demonstrates that consumers are likely to be confused and have been confused between Plaintiff's "RUNWAY MAGAZINE" trademark and Defendants' infringing use of "Runway Magazine."

### a. Defendants' Name is Identical to Plaintiff's Trademark and Attempts to Duplicate Plaintiff's Design Mark

When comparing the similarity of two trademarks, courts must look at the marks in their entireties and as they appear in the marketplace, considering their appearance, sound, and meaning. *Sleekcraft*, 599 F.2d at 351. Courts should also weigh the marks' similarity more heavily than their differences. *GoTo.com*, 202 F.3d at 1206.

Cases in which the defendants use an identical mark on competitive goods are typically "open and shut" and do not involve protracted litigation to determine liability for trademark infringement. *See Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 5 U.S.P.Q.2d. 1944, 1950 (6th Cir. 1988). Here Defendants' "Runway Magazine" designation incorporates *in its entirety* Plaintiff's "RUNWAY MAGAZINE" trademark. Furthermore, Defendants have attempted to recreate Plaintiff's design

mark. *Id.* at ¶13. As can be seen on Defendants website, they use a similar font with the term "Magazine" below the term "Runway" all in capitalization, with spacing between each letter very similar to Plaintiff's. *Id.*

In some cases, Defendants utilize the addition term "LA" which does nothing to distinguish the marks, as it is non-distinctive and merely descriptive of Defendants' geographical location in Los Angeles. In addition to the rejection of Defendants application on the basis of likelihood of confusion in view of Plaintiff's trademark, the PTO requested Defendants to disclaim "LA" in addition to "Magazine" because it "merely descriptive," which Defendants did. This is compelling evidence that the "LA" portion of their attempt to file their application cannot service to distinguish between the parties. *See Perfumebay.com Inc. v. eBay Inc.*, 506 F.3d 1165, 1174 (9th Cir. 2007) (finding the "requisite similarity" between the marks where plaintiff's mark, "Perfumebay," "completely incorporate[d]" defendant's mark, "eBay"). Thus, the term "LA" does not significantly distinguish one mark from the other.

Accordingly, this factor weighs in favor of a finding of likelihood of confusion and supports a grant of injunctive relief.

### b. Plaintiff and Defendants are Involved in Identical and Services: Fashion Magazine Publications and Websites

Related or complementary services are more likely to confuse the public as to the producers of the services than are unrelated services. *GoTo.Com*, 202 F.3d at 1206, *Sleekcraft*, 599 F.2d at 350. The greater the similarity between marks, the less similarity required in the goods or services of the parties to support a finding of likelihood of confusion. *Sleekcraft*, 599 F.2d at 350. Here, similarity exists between the services as well as the marks.

Plaintiff publishes a magazine whose services relate to the fashion industry. Defendants claim that they too publish a magazine relating to the fashion industry

1  although the reality is that Defendants do not regularly publish any magazine.  *Id*. at

2  ¶12.

3      Here there can be no question that the services are related and

4  complementary.  Accordingly, this factor weighs in favor of a finding of likelihood

5  of confusion.

6          **c.  Plaintiff' and Defendants' Marketing Channels Overlap**

7              **Significantly**

8      Plaintiff and Defendants share a presence on the Internet resulting in a

9  significant overlap of marketing channels.  Further, Defendants attempt to deceive

10  the public by stating that they publish a bi-monthly magazine, when in reality,

11  Plaintiff is aware of only three printed publications to date by Defendant.  *Id*.

12  Upon information and believe, Plaintiff is only aware of three actual print

13  publications by Defendants that was published and used only *intrastate* and more

14  likely only within Los Angeles County.  *Id*.   However, Los Angeles is an extremely

15  important market and a high number of potential clients are located there.  As such,

16  the Los Angeles market is critical to Plaintiff.  *Id*. at ¶11.

17      Further, both organizations market themselves on the Internet.  The Ninth

18  Circuit gives special consideration to use of the Internet as a marketing forum,

19  recognizing that its use exacerbates and is "particularly susceptible to" a likelihood

20  of confusion.  *GoTo.Com*, 202 F.3d at 1207. Although the parties use other

21  marketing channels in addition to the Internet, both rely substantially on their

22  respective websites to disseminate information.  Defendants' web address

23  (www.runwaymagazinela.com and www.runwaymagazineinc.com) infringes upon

24  Plaintiff's trademark.  More significantly, ranking within Google.com plays an

25  extremely part in today's business.  Defendants' website

26  www.runwaymagazinela.com currently ranks #1 organically on the first page of a

27  Google search of the terms "runway magazine".  *Id*. at ¶15.   People searching the

28

15

Internet for "Runway Magazine" typically will assume that the top listed site is the official Runway Magazine, but will instead find Defendants' website and thereby conclude that there is some affiliation between the entities. *See Brookfield*, 174 F.3d at 1057 (noting that consumers looking for plaintiff's "MovieBuff" entertainment database might erroneously believe that the plaintiff was involved with or sponsored defendant's database if it entered defendant's website located at www.MovieBuff.com).

Given that both entities have a competing presence on the Internet, this factor weighs in favor of a finding of likelihood of confusion and supports a grant of injunctive relief.

### d.  The "RUNWAY MAGAZINE" Trademark is a Strong Mark

In trademark law, distinctiveness is the measure for the strength of a mark and the terms "distinctive" and "strength" are considered to be synonymous. *See 2 McCarthy on Trademarks and Unfair Competition* § 11:75 (4th ed. 2007); *see also* Restatement (Third) of Unfair Competition § 21, comment I (1995). "Registered trademarks are presumed to be distinctive and should be afforded the utmost protection." *Americana Trading, Inc. v. Russ Berrie & Co.,* 966 F.2d 1284, 1287 (9th Cir. 1992), *quoting Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 871 (2d Cir. 1986).  As set forth above, Plaintiff own federal registration for "RUNWAY MAGAZINE".  Accordingly, Plaintiff' registered trademark is presumed to be a strong mark.

In addition to the presumption of strength that accompanies Plaintiff's registered trademark, the "RUNWAY MAGAZINE" trademark is strong as a result of widespread availability of the magazine that publishes throughout the world at a high volume.    The magazine's popularity and stature has attracted the attention of consequently results in interviews of national celebrities and prominent individual

16

well known within the high-end fashion industry. *Id.* at ¶8.

The level of market penetration achieved by Plaintiff and the extensive publicity it has received has created a strong nationwide and international association with the "RUNWAY MAGAZINE" trademark, making it a strong mark. "[A] mark with extensive public recognition and renown deserves and receives more legal protection than an obscure or weak mark. . . . As the mark's fame increases, the [Lanham] Act's tolerance for similarities in competing marks falls." *Kenner Parker Toys, Inc. v. Rose Art Indus., Inc.*, 963 F.2d 350, 353 (Fed. Cir. 1992), cert. denied, 506 U.S. 862 (1992); *see also GoTo.com, Inc.,* 202 F.3d at 1207; *Brookfield*, 174 F.3d at 1058.

Accordingly, this factor weighs in favor of a finding of likelihood of confusion and supports a grant of injunctive relief.

### e. Level of Care by Purchasers

The Ninth Circuit has said that the standard of care that a reasonably prudent purchaser will exercise is equal to that of the least sophisticated consumer. *GoTo.Com*, 202 F.3d at 1209. Here, most "purchasers" are members of the general public accessing free websites or hearing or reading information through the media. As can be seen as proof in the actual confusion from the Audigier/Rock incident described in Section II. B. 2., the close proximity of the web addresses within the Google.com's first page ranking and the identical use of the trademark will cause further confusion on the Internet. *See Brookfield*, 174 F.3d at 1060 ("[W]hen dealing with inexpensive products, customers are likely to exercise less care, thus making confusion more likely."). This is particularly true where neither party charges the public for its services. *See Metro Publ'g, Inc. v. Surfmet, Inc.,* No. C02-01833CW, 2002 U.S. Dist. LEXIS 26232, at *27-28 (N.D. Cal. July 3, 2002) (where the parties' respective goods and services were free and easily located, including being available on the Internet, they were "not products for which a

consumer exercises a great degree of care").

The likelihood of confusion is heightened further in cases where the public may not even be aware that the two separate entities exist, due in part to the groups' similar undertakings. *See Watts Health Systems v. United Healthcare., 960 F. Supp. 436 (C.D. Cal 1996)* (finding that the similar names of the plaintiff's and defendant's HMOs could confuse both the public at large and even sophisticated potential members who might not know nor realize that there was a difference between the two programs). That is certainly true in this case, as such this factor weighs in favor of a finding of likelihood of confusion and supports a grant of injunctive relief.

### f. Intent

Defendant's intent in this matter is nothing short of egregious. The laundry list of Defendant's bad faith intent is endless. First, Defendants continued to proceed with its infringing active even after receiving notice by way of Plaintiff's cease and desist letter of August 21, 2008. In addition to constructive notice, Defendant received actual notice and was thus aware of that Plaintiff received its federal trademark registration on the Principal Registration when Plaintiff's registration was cited in the July 19, 2009 Office Action rejecting Defendant's trademark application U.S. Serial No. 77/612008 for "Runway Magazine LA. Defendants' continued use of Plaintiff's RUNWAY MAGAZINE mark, after the PTO refused registration based upon Plaintiff own registration, is indicative of bad faith and a likelihood of confusion. *See National Customer Engineering v. Lockheed Martin Corp.,* 43 U.S.P.Q.2d 1036 (C.D. Cal. 1997). At no time did Defendant move for Opposition or Cancellation of Plaintiff's trademark application/registration.

Prior to filing a trademark application, it is common to conduct a search of the U.S. Trademark Office database to determine if any confusingly similar

18

trademarks have already been registered or filed.  Assuming even a preliminary online search was done in this case for "Runway Magazine," Plaintiff's federal trademark application, filed July 31, 2008, would have appeared.

Notwithstanding the above, Defendants *were aware* of Plaintiff's existence and magazine by virtue of the sequence of events.  Registration of the domain names alone shows a remarkable time gap between Plaintiff and Defendants.  Because a third party not related to this litigation registered the domain name www.runwaymagazine.com and www.runwaymagazine.net in1999, Plaintiff instead registered www.runwaybeauty.com on July 2004, which displayed Plaintiff's trademark and information relating to Plaintiff's publications.  Defendant thereafter registered www.runwaymagazinela.com and www.runwaymagazineinc.com on April 2007 and December 2007 respectively.  Further, as described earlier, Plaintiff's first use dates in commerce are superior to Defendants use dates, which appear to be only intrastate, if at all, in connection with a magazine publication.

Further, as described in detail earlier, Defendants adoption of the identical trademark and inferior attempt to duplicate the same design mark as Plaintiff, as well as the evidence of actual confusion as such as in the Audigier/Rock incident, all weighs heavily in favor of a finding of likelihood of confusion and supports a grant of injunctive relief.

### i.  Actual Confusion

As thoroughly documented in the Audigier/Rock incident, there is no doubt that actual confusions exists and will continue to persist.  This factor alone may be determinative. *See E. Remy Martin & Co., S.A. v. Shaw-Ross International Imports, Inc.*, 756 F.2d 1525, 1529, 1530 (11th Cir.1985) (it is "well-settled" that "evidence of actual confusion is not necessary to a finding of likelihood of confusion, although it is the best such evidence;" indeed, "a sufficiently strong showing of

1 likelihood of confusion may by itself constitute a showing of substantial likelihood

2 of prevailing on the merits and/or a substantial threat of irreparable harm"); *World*

3 *Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 489 (5th

4 Cir.1971) ( "[t]here can be no more positive or substantial proof of likelihood of

5 confusion than proof of actual confusion").

6    Based upon Defendants intentional misrepresentations by way of deceiving

7 the public to believe that Defendants are not only affiliated with Plaintiff, but *is*

8 Plaintiff, Defendants have surpassed the line of actual confusion and have

9 committed outright fraud by such actions.

10    Accordingly, this factor, if not determinative of infringement, weighs heavily

11 in favor of a finding of likelihood of confusion and supports a grant of injunctive

12 relief.

13                **j.  Likelihood of Expansion**

14    In a video posted on the Youtube.com, Defendant, James Buccelli, stated that

15 they plan to expand into television shows and create a swimsuit line as well[8].

16 Additionally, although Plaintiff's usage is national and international, Plaintiff and

17 Defendants are already active in the same market in Los Angeles.  *See GoTo.Com*,

18 202 F.3d at 1208 (declining to evaluate whether there was a likelihood of expansion

19 of the parties' product lines because they already competed in the same field);

20 *Brookfield*, 174 F.3d at 1060 ("The likelihood of expansion in product lines factor

21 is relatively unimportant where two companies already compete to a significant

22 extent").

23    Accordingly, this factor weighs in favor of a finding of likelihood of

24 confusion and supports a grant of injunctive relief.

25    Thus, analysis of the *Sleekcraft* factors demonstrates that Plaintiff can

26 successfully demonstrate a likelihood of confusion between their mark and

27

28 _____

[8] http://www.youtube.com/watch?v=S2Pi5uppjT0

PLAINTIFF'S EX PARTE TRO          RUNWAY BEAUTY, INC. vs. RUNWAY MAGAZINE, INC., et. al

Defendants' designation.

## C.    **Plaintiff Faces Irreparable Harm**

"In trademark cases, once the plaintiff establishes a likelihood of confusion between the plaintiff's mark and the defendant's, it is ordinarily presumed the plaintiff will suffer irreparable harm if injunctive relief is not granted." *International Jensen, Inc. v. Metrosound U.S.A., Inc.,* 4 F.3d 819, 827 (9th Cir. 1993). Further, losing exclusive control over the symbol of one's reputation constitutes irreparable injury. *Int'l Olympic Comm. v. San Francisco Arts & Athletics,* 219 U.S.P.Q. (BNA) 982, 986 (N.D. Cal. 1982), aff'd, 707 F.2d 517 (9th Cir. 1983).

Nevertheless, the extent of Plaintiff's potential injury warrants special mention, as the Audigier/Rock incident described above has proved the direct effect of Defendants willful infringement and fraud that has already caused irreparable harm to Plaintiff and its reputation. Plaintiff has and will continue to bear the burnt of explaining to potential clients that the Defendant is not in any way related or affiliated to Plaintiff.

Moreover, it should be noted that Plaintiff's reputation within the high-end fashion industry is crucial to its legitimacy with the public, celebrities, supermodels, designers, and advertisers with whom it works. *Id*. at ¶20. The result of Defendants' poor quality website and lack of sophistication within the fashion area will be misattributed to Plaintiff and would be devastating to its company. *Id*. This loss would threaten Plaintiff's ability to build a brand and to work with those within the fashion world, that are highly sensitive and image conscious. *Id*. Further, this loss would also severely hamper Plaintiff's ability to attract funding from potential inventors which is critical at this stage of Runway Magazine's publication. Particularly in light of the upcoming opening of the theatrical motion

21

picture of the Twilight sequel on November 20, 2009, the injury Plaintiff will suffer is imminent. Additionally, Plaintiff advertising campaign will commence earlier on Tuesday November 17, 2009, with the cover of the Plaintiff's Runway Magazine featuring the stars of the movie. *Id*. at ¶19.

In sum, Plaintiff's distinctive "RUNWAY MAGAZINE" trademark, as well as its reputation and goodwill, are being jeopardized by Defendants' fraudulent use of the identical name and design mark and misrepresentations made by Defendants to the Plaintiff's clients and the public. This is precisely the type of harm the trademark laws are designed to prevent. Accordingly, a temporary restraining order is warranted and necessary.

**D.** **Plaintiff Have Raised Serious Questions and the Balance of Hardships Tips Sharply in its Favor**

The Court need only consider the balance of the hardships if it finds that the probability of success on the merits and irreparable injury alone do not justify issuing a preliminary injunction. *GoTo.Com*, 202 F.3d at 1209. In light of the foregoing, therefore, the Court need not determine whether serious questions exist as to the merits nor the balance of hardships. The foregoing does, however, demonstrate that there are, at a minimum, serious questions as to the legality of Defendants' use of its current name. Further, it also demonstrates that the balance of hardships tips sharply in favor of Plaintiff, who has devoted years and substantial money and resources to developing the goodwill and national and international reputation associated with its "Runway Magazine" Trademarks—goodwill and reputation that will quickly erode if Defendants are permitted to use the identical designation for their alleged magazine and activities.

By contrast, Defendants will suffer little harm if an injunction is entered. Defendants will still be able to engage in activities, just under a different a name. Defendants are free to choose a new name from an infinite number of possibilities.

1    The burden of changing a name it only recently began using is no hardship under

2 the present circumstances, particularly where established trademarks are at a risk of

3 irreparable injury. *See Apple Computer, Inc. v. Formula Int'l, Inc.,* 725 F.2d 521,

4 526 (9th Cir. 1984) (affirming the district court's determination that where a

5 defendant had only recently entered the computer market, the balance of hardships

6 tipped in favor of plaintiff Apple Computer who risked loss of control over its

7 reputation and loss of goodwill from defendant's use of an infringing designation).

8     The equities strongly favor a temporary restraining order, as immediate

9 injunctive relief will protect both Plaintiff and consumers. A temporary restraining

10 order is the only remedy available to preserve the status quo between the parties.

11 **IV**

12 **CONCLUSION**

13     The foregoing demonstrates that Plaintiff will likely succeed in proving that

14 Defendants' use of the "Runway Magazine" designation will cause consumer

15 confusion with Plaintiff' "Runway Magazine" trademark.  In light of the irreparable

16 harm facing it, Plaintiff respectfully request that this Court issue a temporary

17 restraining order to prevent further encroachment by Defendants onto Plaintiff'

18 rights.

19

20 Dated: Nov. 18, 2009     By:_____/s/_____.

21                 Michael N. Cohen

22                 Christopher C. Barsness

                LAW OFFICE OF MICHAEL N. COHEN, P.C.

23                 9025 Wilshire Blvd., Suite 301

24                 Beverly Hills, California 90211

                Telephone: (310) 288-4500

25                 Facsimile: (310) 246-9980

26                 Michael@patentlawip.com

27                 Attorneys for Plaintiff

28

23

LAW OFFICE OF MICHAEL N. COHEN, P.C.
Michael N. Cohen (Cal. Bar. No. 225348)
Christopher C. Barsness (Cal. Bar. No. 222861)
9025 Wilshire Blvd., Suite 301
Beverly Hills, California 90211
Tel: 310-288-4500
Fax: 310-246-9980
michael@patentlawip.com

Attorneys for Plaintiff
RUNWAY BEAUTY, INC.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUNWAY BEAUTY, INC., an Arizona Corporation,<br><br>                    Plaintiff,<br><br>     vs.<br><br>RUNWAY MAGAZINE, INC, a California Corporation; and JAMES BUCCELLI; and DOES 1-10, inclusive,<br><br>                    Defendants. | CASE NO.: CV 09-8333 PA (JEMx)<br><br>**REQUEST FOR ENTRY OF DEFAULT AGAINST DEFENDANT JAMES BUCCELLI** |

1

TO: THE CLERK OF THE ABOVE ENTITLED COURT:

Plaintiff RUNWAY BEAUTY, INC., hereby requests that the Clerk of the above-entitled Court enter default in this matter pursuant to Rule 55(a) of the Federal Rules of Civil Procedure against Defendant JAMES BUCCELLI, an individual, on the ground that said Defendant has failed to appear or otherwise respond to the complaint herein within the time prescribed by the Federal Rules of Civil Procedure.

Plaintiff served the Summons and Complaint on JAMES BUCCELLI, on December 11, 2009, by substituted service, evidenced by the proof of service of summons on file with this Court.

The above facts are set forth in the accompanying declaration of Michael N. Cohen, filed herewith.

DATED: January 12, 2010                    Respectfully submitted,


By:_____/s/_____
             Michael N. Cohen
             Christopher C. Barsness
             LAW OFFICE OF MICHAEL N. COHEN, P.C.
             9025 Wilshire Blvd., Suite 301
             Beverly Hills, California 90211
             Telephone: (310) 288-4500
             Facsimile: (310) 246-9980
             Michael@patentlawip.com

             Attorneys for Plaintiff
             RUNWAY BEAUTY, INC.

2

# PROOF OF SERVICE

I am over the age of 18 years, employed in the County of Los Angeles, and not a party to the above entitled action. My business address is 9025 Wilshire Blvd., Suite 301, Beverly Hills, California 90211.

On January 14, 2010 I served:

**REQUEST FOR ENTRY OF DEFAULT AGAINST DEFENDANT JAMES BUCCELLI ; DECLARATION OF MICHAEL N. COHEN IN SUPPORT OF ENTRY OF DEFAULT AGAINST JAMES BUCCELLI**

by transmitting to:

James Buccelli
3450 Cahuenga Blvd, #305
Los Angeles, CA 90068

[X] BY MAIL: I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid at Beverly Hills, California, in the ordinary course of business. I am aware that on the motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit for mailing shown on this proof of service.

[ ] BY FACSIMILE: I caused a copy of such document to be sent via facsimile machine to the office of the addressee(s) at the phone number shown above.

[X] FEDERAL: I declare, under penalty of perjury under the laws of the United States that the foregoing is true and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 14, 2010, at Beverly Hills, California.


_____/s/_____
Soseh Moghoyan

3

REQUEST FOR ENTRY DEFAULT        RUNWAY BEAUTY, INC. vs. RUNWAY MAGAZINE, INC., et. al

1  COHEN I.P. LAW GROUP, P.C.
   Michael N. Cohen (Cal. Bar. No. 225348)
2  Edward Lara (Cal. Bar. No. 210766)
   9025 Wilshire Blvd., Suite 301
3  Beverly Hills, California 90211
   Tel: 310-288-4500
4  Fax: 310-246-9980
   michael@patentlawip.com
5
   Attorneys for Plaintiff/Counterdefendants
6  RUNWAY BEAUTY, INC., VINCENT MAZZOTTA

7

8

9              **UNITED STATES DISTRICT COURT**

10        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11  RUNWAY BEAUTY, INC., an Arizona          )   Case No.: CVO9-08333-JAK
    Corporation,                             )   (JEMX)
12                                           )   [The Honorable John A. Kronstadt]
                                             )
13  Plaintiff,                               )   **ORDER GRANTING JOINT**
                                             )   **STIPULATION OF DISMISSAL**
14       vs.                                 )   **WITH PREJUDICE AND**
                                             )   **COURT ORDER OF DISMISSAL**
15  RUNWAY MAGAZINE, INC, a                  )   **WHILE RETAINING**
16  California Corporation; and JAMES        )   **JURISDICTION**
    BUCCELLI; and DOES 1-10, inclusive,      )
17                                           )
    Defendants.                              )   **JS-6**
18  _____  )
19  JAMES BUCCELLI, an Individual,           )
                                             )
20  Counterclaimant,                         )
                                             )
21       vs.                                 )
                                             )
22                                           )
23  RUNWAY BEAUTY, INC., an Arizona          )
    Corporation; and VINCENT MAZZOTA,        )
24  an Individual; and ROES 1 through 10     )
    inclusive,                               )
25                                           )
    Counterdefendants.                       )
26  _____  )

27

28

                          **ORDER**

         JOINT STIPULATION OF DISMISSAL WITH PREJUDICE

IT IS HEREBY ORDERED:

1. This matter pending before the Court (*Runway Beauty, Inc. v. Runway Magazine, Inc. et al* Case No.: 2:09-cv-08333-JAK –JEM) is hereby dismissed with prejudice pursuant to the joint settlement and joint request for dismissal by the Parties;

2. This Court will retain jurisdiction to enforce the terms and conditions of the joint settlement between the Parties and of which a sealed copy will be filed with the Court ;

3. The Parties are to bear their own attorneys' fees and costs incurred in connection with this action;

IT IS SO ORDERED.

Dated: October 31, 2011

_____
Hon. John A. Kronstadt
United States District Court Judge



Commissioner for Trademarks
P.O. Box 1451
Alexandria, VA  22313-1451
www.uspto.gov

### Notification of Ceasing of Effect
### According to Articles 6(3) and (4) of the Protocol

The United States Patent and Trademark Office hereby notifies the International Bureau of the ceasing of effect of the basic application/registration during the five-year period of dependency for:

**International Registration No.: 1058209**
**Holder: Runway TV, LLC – Vincent Mazzotta (CEO Of Runway TV, LLC)**
**Holder:**
**Basic application(s) and/or registration(s):**

The purpose of this letter is to announce the CEASING OF EFFECT of any goods and services not listed below based on the following action:

Basic application number 77536081 was cancelled by the USPTO on October 16, 2015, having U.S. Registration Number 3586631.

It is requested that all goods and services in the International Registration be cancelled.


Sincerely,

Ebonie Horne
U.S. Patent & Trademark Office
Madrid Processing Unit
Trademark Specialist

# EXHIBIT I



**Vincent Midnight** @VincentMidnight · 14 Aug 2017

En réponse à @JAMES_BUCCELLI

She is a financial terrorist, we have a nice cell picked out for her. Let's hope for extradition.

🌐 À l'origine en anglais

♡ 1    ⟳    ♡ 1    ⊠

**JAMES BUCCELLI** @JAMES_BUCCELLI · 14 Aug 2017

En réponse à @VincentMidnight

@VincentMidnight man,she actually believes her own lies. She is a different breed for sure. she cant possibly imagine what we went through.

🌐 À l'origine en anglais

♡ 1    ⟳    ♡ 1    ⊠



JAMES BUCCELLI @JAMES_BUCCELLI · 14 Aug 2017

En réponse à @Runway

hey Vince - try it now.... @Runway

A l'origine en anglais

RUNWAY @Runway · 14 Aug 2017
@JAMES_BUCCELLI, I think you are messaging on Facebook but its not letting me answer. Please see your private message for contact info.

A l'origine en anglais



**Vincent Midnight** @VincentMidnight · 14 Aug 2017

Replying to @JAMES_BUCCELLI

I believe I am blocked on that site . Please  email me as I don't know how much of your property was stolen by Degrey.



RUNWAY @Runway · 14 Aug 2017
@JAMES_BUCCELLI , I think you are messaging on Facebook but Its not letting me answer. Please see your private message for contact info.

**RUNWAY MAGAZINE <infodegray@gmail.com>**

---

## Good bye

---

**RUNWAY** <editor@runway.net>                                    23 August 2017 at 02:12
To: infodegray@gmail.com

James is out of jail and he knows you illegally stole all his property. You really are a nasty thief.

Your chances of living are so low that I know longer need to worry about you.

James is extremely dangerous and he is hunting you now.

They know where you have dinner, know what fashion shows your attending and every post you make give them an IP to find you.

We already worked out a coexistence deal, amazing what the money you say I don't have does.

I believe in giving every human a fair chance, this is fair warning that he isn't going to give you.

Each post brings you closer to the end. He is hunting you and I know his skills and what his family is capable of.

You lied to your government on your trademark application, which he has the evidence to now prove, and are wanted for questioning for a criminal case here in the USA.

Don't believe me?

Come on over and see for yourself, they don't tell people they have warrants in my country, it's not obtainable information for criminals such as yourself.

By the way your negative post increase my traffic by 10, people love negative, you drastically increase sale, I will miss you.

You look like such an idiot after people research you are laughing stock here in the USA. I have 40 issues online and you have 3. Duh.

Why don't you think I filed a lawsuit by now, my best friend is an attorney? You aren't too bright are you.

Hey the Coca Cola trademark is Zimbabwe is not filed, you should file that trademark and take over Coca Cola in the USA too. LOL

Goodbye,


Vincent

**FELONY ABSTRACT OF JUDGMENT—DETERMINATE**
**SINGLE, CONCURRENT, OR FULL-TERM CONSECUTIVE COUNT FORM**
*(Not to be used for multiple count convictions or for 1/3 consecutive sentences)*

CR-290.1

SUPERIOR COURT OF CALIFORNIA, COUNTY OF:
**LOS ANGELES - NORTHWEST DICTRICT**

**FILED**
Superior Court of California
County of Los Angeles

**MAR 25 2016**

Sherri R. Carter, Executive Officer/Clerk
By _____ Deputy
A. Bergin

PEOPLE OF THE STATE OF CALIFORNIA vs.
DEFENDANT: **JAMES ANTHONY BUCCELLI**
DOB: 01-17-1970
AKA:
CII NO.: A12573279
CASE NUMBER: **LA081519-01**
BOOKING NO.: 004404829

☐ NOT PRESENT

FELONY ABSTRACT OF JUDGMENT:
☑ PRISON COMMITMENT ☐ COUNTY JAIL COMMITMENT ☐ AMENDED ABSTRACT

| DATE OF HEARING 03-25-2016 | DEPT. NO. NWG | JUDGE RICHARD H. KIRSCHNER |
|---|---|---|
| CLERK MARIA FALCON | REPORTER CHRISTOPHER FEDOROFF | PROBATION NO. OR PROBATION OFFICER X-1905703 ☐ IMMEDIATE SENTENCING |
| COUNSEL FOR PEOPLE KENT C. CAHILL, DDA | COUNSEL FOR DEFENDANT MARK D. MELNICK, PRIVATE COUNSEL ☐ APPOINTED | |

1. Defendant was convicted of the commission of the following felony:

| COUNT | CODE | SECTION NUMBER | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION (MO/DATE/YEAR) | JURY | COURT | PLEA | TERM (L, M, U) | SERIOUS FELONY | VIOLENT FELONY | TIME IMPOSED YRS | MOS. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01 | PC | 530.5(C)(2) | identifying information theft with a prior | 2015 | 01-07-2016 | | X | U | | | | 3 | 0 |

2. ENHANCEMENTS charged and found to be true TIED TO SPECIFIC COUNTS (mainly in the PC 12022 series). List each count enhancement horizontally. Enter time imposed, "S" for stayed, or "PS" for punishment struck. DO NOT LIST ENHANCEMENTS FULLY STRICKEN by the court.

| COUNT | ENHANCEMENT | TIME IMPOSED, "S," or "PS" | ENHANCEMENT | TIME IMPOSED, "S," or "PS" | ENHANCEMENT | TIME IMPOSED, "S," or "PS" | TOTAL |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

3. ENHANCEMENTS charged and found to be true FOR PRIOR CONVICTIONS OR PRISON TERMS (mainly in the PC 667 series). List all enhancements horizontally. Enter time imposed, "S" for stayed, or "PS" for punishment struck. DO NOT LIST ENHANCEMENTS FULLY STRICKEN by the court.

| ENHANCEMENT | TIME IMPOSED, "S," or "PS" | ENHANCEMENT | TIME IMPOSED, "S," or "PS" | ENHANCEMENT | TIME IMPOSED, "S," or "PS" | TOTAL |
|---|---|---|---|---|---|---|
| | | | | | | |

4. Defendant sentenced: ☐ to county jail per PC 1170(h)(1) or (2) ☐ per PC 667(b)-(i) or PC 1170.12 (strike prior)
☑ to prison per PC 1170(a) or 1170(h)(3) due to ☐ current or prior serious or violent felony ☐ PC 290 or ☐ PC 186.11 enhancement
☐ PC 1170(a)(3); Pre-confinement credits equal or exceed time imposed. ☐ Defendant ordered to report to local parole or probation office upon release.

5. FINANCIAL OBLIGATIONS (plus any applicable penalty assessments):
Restitution Fine(s): $_____ per PC1202.4 (b) with/with out PC 2085.5 if prison commitment $_____ per PC 1202.45 suspended unless parole is revoked.
$_____ per PC 1202.44 is now due, probation having been revoked.
Restitution per PC1202.4 (f): ☐ $_____ ☐ Amount to be determined to _____ ☐ victim(s). ☐ Restitution Fund
* ☐ Victim name(s), if known, and amount breakdown in item 8, below. ☐ Victim name(s) in probation officer's report.
Fine(s): $_____ per PC 1202.5, $_____ per VC 23550 or _____ days ☐ county jail ☐ prison in lieu of fine. ☐ concurrent ☐ consecutive
☐ includes: $_____ Lab Fee per HS 11372.5(a) ☐ $_____ Drug Program Fee per HS 11372.7(a) for each qualifying offense.
☑ Court Operations Assess.: $ 40.00 per PC 1465.8. ☑ Conviction Assess.: 30.00 per GC 70373. ☐ Other: $_____ per (specify):

6. TESTING: a. ☐ Compliance with PC 296 verified. b. ☐ AIDS per PC 1202.1 c. ☑ other (specify): DNA PER 296

7. IMMEDIATE SENTENCING: ☐ Probation to prepare and submit a post sentence report to CDCR per PC 1203c. Deft's Race / National Origin WH

8. Other orders (specify):

9. TOTAL TIME IMPOSED: | 3 | 0 |

10. ☐ MANDATORY SUPERVISION: Execution of a portion of the total jail time imposed in item 9 is suspended and deemed a period of mandatory supervision under PC 1170(h)(5)(B) as follows: Suspended portion: _____ Served forthwith: _____

11. ☑ This sentence is to run concurrent with (specify): _____ 12. Registration Required: ☐ per (specify code section): _____

13. Execution of sentence imposed: a. ☑ at initial sentencing hearing. b. ☐ at resentencing per decision on appeal. c. ☐ after revocation of probation.
d. ☐ at resentencing per recall of commitment. (PC 1170(d).) e. ☐ other (specify):

14.

| DATE SENTENCE PRONOUNCED | CREDIT FOR TIME SPENT IN CUSTODY TOTAL DAYS: | ACTUAL LOCAL TIME | LOCAL CONDUCT CREDITS | | TIME SERVED IN STATE INSTITUTION DMH | CDCR | CRC |
|---|---|---|---|---|---|---|---|
| 03-25-2016 | 470 | 235 | 235 | ☑ 2933 ☐ 2933.1 ☐ 4019 | [ ] | [ ] | [ ] |

15. The defendant is remanded to the custody of the sheriff ☐ forthwith ☐ after 48 hours excluding Saturdays, Sundays, and holidays:
To be delivered to ☑ the reception center designated by the director of the California Department of Corrections and Rehabilitation.
☐ county jail ☐ Other (specify):

**CLERK OF THE COURT:** I hereby certify the foregoing to be a correct abstract of the judgment made in this action.

DEPUTY'S SIGNATURE _____

DATE 03-25-2016

This form is prescribed under PC 1213.5 to satisfy the requirements of PC 1213 for determinate sentences. Attachments may be used but must be referred to in this document.

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
CR-290.1 [Rev. July 1, 2012]

**FELONY ABSTRACT OF JUDGMENT—DETERMINATE**
**SINGLE, CONCURRENT, OR FULL-TERM CONSECUTIVE COUNT FORM**

Penal Code,
§§ 1170, 1213, 1213.5

# EXHIBIT J



**Vincent Midnight**
@VincentMidnight

Vincent Midnight - Chief of @RUNWAY, DJ K17 - RUNWAY.net RunwayTV.com runwaylux.com

Hollywood, California

vincentmidnight.com

Joined February 2013

2,547 Photos and videos

**Vincent Midnight**
@VincentMidnight

Follow

Turns out answering a lawsuit complaint from another country is the same as acknowledged service. That saved me a bunch, at least she has a free place to stay when she is in USA , the LA jail #lol #runwaymagazine #runway #magazine finally going to see #justice

7:03 AM - 7 Aug 2018 from Los Angeles, CA

**Vincent Midnight** @VincentMidnight · Jul 29
Any government based on violence will fail every time. A shared cognition society will rise from the ashes of the homosapians over use of violence. How we shape it is the primary question. All the animals are...
facebook.com/10000310376123…



 Gmail

**Legal Department RUNWAY MAGAZINE <legalrunwaymagazine@gmail.com>**

---

## Trademark Infringement

**Customer Success (issuu Support Team)** <support@issuu.com>                Wed, Aug 29, 2018 at 5:28 PM
Reply-To: issuu Support Team <support@issuu.com>
To: RUNWAY MAGAZINE <legalrunwaymagazine@gmail.com>

> ## Please do not write below this line ##

---

       **Customer Success** (Issuu Success)
Aug 29, 17:28 CEST

Dear Sir or Madam:

This email is to notify you that we have received a notification containing a claim that your Runway Magazine page on the Issuu platform, located at https://issuu.com/runwaymagazine, contains material that infringes copyright. Accordingly, we have disabled access to that material pursuant to 17 U.S.C. § 512(c)(1)(C).

If you believe the material to which access has been disabled does not infringe copyright, you have the right to submit a counter notification to Issuu pursuant to 17 U.S.C. § 512(g)(3). That counter notification should be made by electronic mail in reply to this notice and must contain the following elements:

1.  ```
    Your physical or electronic signature;
    ```

2.  ```
    Identification of the material that has been removed or to which access
    has been disabled and the location at which the material appeared before it
    was removed or access to it was disabled;
    ```

3.  ```
    A statement under penalty of perjury that you have a good faith belief
    that the material was removed or disabled as a result of mistake or
    misidentification of the material to be removed or disabled;
    ```

4.  ```
    Your name, address, and telephone number, and a statement that you
    consent to the jurisdiction of Federal District Court for the judicial
    district in which your address is located, or if your address is outside of
    the United States, for any judicial district in which Issuu may be found,
    and that you will accept service of process from the person who provided
    notification under subsection (c)(1)(C) or an agent of such person.
    ```

Please let us know if you have any questions.

Sincerely, etc.



**Legal Department RUNWAY MAGAZINE <legalrunwaymagazine@gmail.com>**

---

## Update from issuu Support Re: Trademark Infringement

**Customer Success (issuu Support Team)** <support@issuu.com>                    Thu, Aug 30, 2018 at 12:22 AM
Reply-To: issuu Support Team <support@issuu.com>
To: RUNWAY MAGAZINE <legalrunwaymagazine@gmail.com>

## Please do not write below this line ##

---

     **Customer Success** (Issuu Success)
Aug 30, 00:22 CEST

Dear Madam,

We have received your counter notification. Pursuant to 17 U.S.C. § 512(g)(2), Issuu has provided a copy of that counter notification to the person who notified us of claimed infringement (the "notifying party"), and Issuu has instructed the notifying party that we will cease disabling access to the disputed material within ten (10) to fourteen (14) business days unless we first receive notice from the notifying party that it has filed an action seeking a court order to restrain you from engaging in infringing activity relating to the disputed material on Issuu's platform.

If we do not receive such notice of court action, we will cease disabling access to the disputed material within ten (10) to fourteen (14) business days.

Please let us know if you have any questions.

Sincerely,

Audrey

---

To learn more about Issuu, check out our Help Center.

Below is the conversation you had with the Issuu Support team
---------------------------------------------------------------------------------------

---

**Customer Success** (Issuu Success)
Aug 30, 00:22 CEST

Dear Madam,

 Gmail

**Legal Department RUNWAY MAGAZINE <legalrunwaymagazine@gmail.com>**

# Update from issuu Support Re: Trademark Infringement

| | |
|---|---|
| **Customer Success (issuu Support Team)** <support@issuu.com> | Fri, Aug 31, 2018 at 8:46 PM |
| Reply-To: issuu Support Team <support@issuu.com> | |
| To: RUNWAY MAGAZINE <legalrunwaymagazine@gmail.com> | |

## Please do not write below this line ##

   **Customer Success** (Issuu Success)
Aug 31, 20:46 CEST

Dear Madam:

We have received notice from the person who notified us of claimed infringement (the "notifying party") of its civil action against you relating to the disputed material on Issuu's platform. Pursuant to Issuu's policy, we will continue to disable access to the disputed material pending the final resolution of the action in court. If that action results in a final judgment that the disputed materials are not infringing, and you then wish to restore access to the disputed material on Issuu's platform, please provide us with a copy of the final judgment at that time.

Sincerely,
Audrey

To learn more about Issuu, check out our Help Center.

Below is the conversation you had with the Issuu Support team
------------------------------------------------------------------------------------

   **Customer Success** (Issuu Success)
Aug 31, 20:46 CEST

Dear Madam:

We have received notice from the person who notified us of claimed infringement (the "notifying party") of its civil action against you relating to the disputed material on Issuu's platform. Pursuant to Issuu's policy, we will continue to disable access to the disputed material pending the final resolution of the action in court. If that action results in a final judgment that the disputed materials are not infringing, and you then wish to

 Gmail

**RUNWAY MAGAZINE <infodegray@gmail.com>**

## Eleonora de Gray - RUNWAY MAGAZINE on issue.com

**Joe Hyrkin** ⬛⬛⬛⬛ 7 September 2018 at 21:58
To: RUNWAY MAGAZINE <infodegray@gmail.com>
Cc: Joe Hyrkin ⬛⬛⬛⬛

Hi Eleonora,

I've looked into where things stand and I've gotten some clarity related to the situation. I'm happy to set up time for a call to discuss next week. You mentioned all legal action against you has been resolved by the courts in the US. If that is the case and you can send us the details, we can easily resolve things here. I don't think we've seen that information yet. I apologize if you have already sent it to my team.

Just so you know, we haven't removed or terminated any of the Runway content. We have just put access to the account on hold. Unfortunately, from what we can tell, it looks like you are still in a legal disagreement with Vincent Mazzotta of Runway TV, LLC. When a dispute like this arises, we request that the parties resolve their dispute and then we are able to move forward.

From what we understand, Runway TV filed a First Amended Complaint in Civil Action No. 2:18-CV-02503-FMO (JCx) (Dkt. 35) on July 30, 2018, and it appears the Court has not issued a final judgment as to which of the parties owns rights in the intellectual property under discussion.

When parties have competing claims in court, as here, Issuu's policy is to disable access to material alleged to be infringing until the court issues its final judgment. Accordingly, Issuu will continue to disable access while the case is pending. If and when the Court issues an order dismissing Runway TV's claims against you with prejudice, please provide us with a copy of that order so we may restore access to your pages at that time.

It's possible, we still don't have the complete information. If you have more documents to share, please do so and I'll work to resolve things quickly.

Thanks, Joe



Joe Hyrkin
CEO

https://www.linkedin.com/feed/update/urn:li:activity:6447652933671624704/



**RUNWAY MAGAZINE OFFICIAL**
2 abonnés
5 h

Did you know RUNWAY averages 3 lawsuits a year on people illegally using our name all over the world, you can even find people so crazy they are listing they are RUNWAY on here. Watch for fakes, Linkedin does not vet anyone for pages. From what we have seen they do no respect the American court at all and even allow unchecked companies to run while in court. 99% of companies will freeze the page until a judge rules. Not Linkedin , they have the middle finger up at the court system. #linkedin #paris #france #news Hopefully we will get our sanctions, also assuming Linkedin doesn't try to take this down again without court consent. Its reasons like this your stock hasn't been doing well @jeffweiner , you need to vet your legal staff better. Challenging ABC/DISNEY, really? They actually sent a take down to us, the real RUNWAY not our licensor who didn't pay. #amazing

🌐 **Voir la traduction**

Law Offices of William D. Goldstein
William D. Goldstein (SBN. 279723)
4030 Sawtelle Blvd.
Los Angeles, CA 90066-5408
Phone: (310) 437-0108
Facsimile: (323) 372-3589
Email: wdgoldstein@wdgoldstein.com

Attorney for PLAINTIFF, RUNWAY TV, LLC.

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUNWAY TV, LLC., A Delaware Limited | Case NO.: 2:18-CV-02503-FMO (JCx) |
| Liability Company | FIRST AMENDED COMPLAINT |
| Plaintiff, | 1. FEDERAL TRADEMARK INFRINGEMENT |
| vs. | 2. FEDERAL TRADEMARK DILUTION |
| EURL ELEONORA DE GRAY, a French | 3. FEDERAL STATUTORY UNFAIR COMPETITION |
| Company; ELEONORA DE GRAY | 4. FRAUD AND DECEIT |
| aka ELEONORA CHRISTENSEN, A | 5. BREACH OF CONTRACT |
| French citizen And DOES 1-10, | 6. CYBERPIRACY |
| INCLUSIVE, | 7. DEFAMATION PER QUOD - LIBEL |
| Defendants. | INJUNCTIVE RELIEF |
| | JURY TRIAL DEMAND |

- 1 -



Linked in

Sign in     Join now

RUNWAY MAGAZINE
OFFICIAL
2 followers

View public profile

+ Follow

2 Followers

RUNWAY MAGAZINE OFFICIAL
2 followers
6h • Edited

Did you know RUNWAY averages 3 lawsuits a year on people illegally using our name all over the world, you can even find people so crazy they are listing they are RUNWAY on here. Watch for fakes, LinkedIn does not yet anyone for pages. From what we have seen they do no respect the American court at all and even allow unchecked companies to run while in court. 99% of companies will freeze the page until a judge rules. Not LinkedIn, they have the middle finger up at the court system. #linkedin #paris #france #news Hopefully we will get our sanctions, also assuming LinkedIn doesn't try to take this down again without court consent. Its reasons like this your stock hasn't been doing well @jeffweiner , you need to vet your legal staff better. Challenging ABC/DISNEY, really? They actually sent a take down to us, the real RUNWAY not our licensor who didn't pay. #amazing

🖒 Like     🗩 Comment     ↱ Share

Share this post with your network

↱ Share

Editor's Picks

**Diverse teams are essential. Here's how you can build them**
Maynard Webb on LinkedIn • 4d

**To find happiness, seek out the 'joy of renewal'**
Ingrid Fetell Lee on LinkedIn • 4d

**The answer to this single question will help you understand a company's entire culture**
Michele Gelfand on LinkedIn • 4d

**I declare UNDER PENALTY OF PERJURY that:** Vincent Mazzotta

**Good Faith Acknowledgement:**

**I have a good faith belief that:** RUNWAY TV LLC owns the trademark registered 4449667 "RUNWAY" a magazine and is the real and only RUNWAY to sell magazine in the USA. This issue has been filed with the California court and is a active lawsuit which LinkedIn is the primary cause of damage. The page RUNWAY MAGAZINE OFFICIAL is protected by US FEDERAL COURT case number 2:18-CV-02503-FMO (JCx) against Mrs Degrey . By taking down the page: https://www.linkedin.com/company/runway-magazine-official/ you will be acting against order of a federal judge. Her company is in default at the moment as she has no attorney and she has not answered the lawsuit in behalf of her company as that requires a lawyer. We have not chose to file damages against Linkedin at the moment but if you take this page down we will be forced to take legal action. Her French trademarks are legally property of RUNWAY TV LLC per US court and she has no right to use them unless she wins this lawsuit. Please wait for the judges orders and not make judgments for the US courts on your own. Our attorney is William Goldstein 310-437-0108 to verify. We have asked you many times to remove Mrs Degrey's fake RUNWAY Magazine account, you should be receiving a court order to take her site down by end of year.

**Digital Signature:**

**Typing your full name in this box will act as your digital signature:** Vincent Mazzotta

**Runway TV**
4 sem

• • •

Con Artist #eleonoraDegrey strikes again, obviously runwaymagazines with and s is fake, you really have to be an idiot to believe this lady. Sending foreign trademarks into the USA with Cease letter is a real is a con. #fbi get off your ass and do something.





**RMG** **Runway Media Group**
4 h

There is only 1 real @runway magazine. RUNWAY MAGAZINE on linkedin is a fake and a con. #eleonoradegrey licensed the name and did not pay, then illegally filed it in France. This does not make the French mark valid. Shame on you LinkedIn for not following US law and forcing the real RUNWAY to bring you to court.



## Runway Media Group
5 h

PUBLIC SERVICE ANNOUNCEMENT: Eleonora DeGrey/Christensen did not pay for her Trademark and illegally filed in it France. RUNWAY MAGAZINE on Linkedin is not the real @runway magazine , This is a definition given by the USA FBI. RUNWAY USPTO.GOV trademarks are upheld by US Federal court CV09 – 8333 RSWL – 2009 - showing Runway Beauty default winner of this case as Runway Magazine Inc and its affiliates have been closed by US authorities for fraud. All copies will be seized by FBI found in US territory.

**VIA US MAIL AND EMAIL**
Ms. Eleonora Christensen
EURL Eleonora de Gray
2, sq du Nouveau Belleville, BL5
Paris, France 75020
pomconfi2@gmail.com

**VIA US MAIL AND EMAIL**
Ms. Stacey Blanchet
1666 Garnet Avenue #205
San Diego, CA 92109
yourowngirlfriday@yahoo.com
Staceyblanchet@yahoo.com

Re:   **Infringement of RUNWAY and Breach of Contract**

Dear Ms. Christensen and Blanchet:

We are Intellectual Property and litigation counsel to Runway Beauty, Inc. (hereinafter "RBI" or "Client") the owner of the RUNWAY publication. As you are well aware, our Client is the owner of the exclusive rights to the family of famous and distinctive RUNWAY trademarks, service marks, and trade names represented by several registered with the United States Patent and Trademark Office ("USPTO"), including without limitation: United States Registration Nos. 4,449,667 (magazines); 4,268,101 (eyewear); 3,964,775 (advertising and publicity services); 3,872,255 (television programs) and 3,423,722 (publishing). More significantly, our Client is the owner of the International Trademark Registration No. 1,183,826 for RUNWAY in connection with general feature magazines (hereinafter "Intl. Reg. '826"). (See Exhibit "A" attached). As you

### Basic facts about trademarks
uspto.gov

 

# EXHIBIT K





**RUNWAY**
@Runway

⌄

#PRINCEWILLIAM reacts to the French trademark courts lack of research in @Runway news agency US court case.
#TheDukeofCambridge at #AstonVilla at #Wembly #Stadium #royals for #runwaymagazine ,
Runway Magazine with an S , an obvious insult on world Intellectual property rights.

Traduire le Tweet

# EXHIBIT L

 **Gmail**

RUNWAY MAGAZINE <infodegray@gmail.com>

---

## RUNWAYMAGAZINES.COM TRADEMARK DISPUTE - [Incident ID: 39964084]

**trademarkclaims@godaddy.com** <trademarkclaims@godaddy.com>
To: infodegray@gmail.com

Fri, Sep 13, 2019 at 1:49 AM

# We've resolved your submission.

**Discussion Notes**
**Support Staff Response**
In reference to RUNWAYMAGAZINES.COM:

PLEASE READ THIS ENTIRE EMAIL CAREFULLY. AS A COURTESY WE HAVE NOT YET SUSPENDED THE HOSTING SERVICES ASSOCIATED WITH THIS WEBSITE.

Dear Customer,

We have received a complete Trademark complaint alleging that trademark infringement is taking place on your hosted site. This notification was submitted pursuant to GoDaddy's Trademark Infringement Policy, which can be found here:

https://www.godaddy.com/agreements/showdoc.aspx?pageid=TRADMARK_COPY

In accordance with this policy, as well as the hosting agreement you consented to upon purchase of the service, we will need to suspend this hosting account if this matter can not resolved by removing this content within the next 24 hours or submitting a complete counter notification as described in the policy.

You have two options at this point:

Option 1 - CONTENT REMOVAL

In order to resolve this situation and avoid suspension of your site you will need to completely remove the content that is the subject of the trademark complaint.

Option 2 - COUNTER NOTIFICATION

If you feel that this complaint has been made in error and you wish to contest the claim, you will need to submit a complete counter notification. Let us know if you require further information and/or instructions on how to file a counter notification.

Please understand that as a web hosting provider, we are not able to make legal determinations as to who is right or wrong in an infringement claim.

Let us know if you have any other questions at this time.

Kindest Regards,

Doug
Trademark Department
Go Daddy Operating Company, LLC
TrademarkClaims@GoDaddy.com

--------ORIGINAL NOTE-----------

DOMAIN: WWW.RUNWAYMAGAZINES.COM

COMPLAINANT:
Full Name: Vincent Mazzotta
Company Name: RUNWAY TV LLC
Street Address: 3616 Barham Blvd, X111
City/State/Country: Los Angeles, CA United States
Phone: 3106946540
Email: runwaychief@gmail.com

TRADEMARK INFO:
Trademark Owner Name: Vincent Mazzotta
Trademark Term: RUNWAY magazine
Trademark Registration Number: 4449667
Jurisdiction Where Trademark is Registered: United States

INFRINGEMENT DETAILS:
Complaint Type: A website selling counterfeit goods
Description of Infringement: Trademark, copyrights, imagery of photographers working for Runway. The company image of RUNWAY. RUNWAY sued this company and they failed to respond, US Federal Court NO.: 2:18-CV-02503-FMO (JCx). Failure to respond shifts hosting, domain registry and any social media page to default to hosting provider.
URL of Infringement: www.runwaymagazines.com
Supporting documentation attached.

CONFIRMATIONS:
I have a good faith belief that use of the trademark in the manner complained of is not authorized by the trademark owner, its agent, or the law.
The information in this notification is accurate.
Under penalty of perjury, I am authorized to act on behalf of the owner of an exclusive right that is allegedly infringed
Digital Signature: Vincent Mazzotta

CLAIM ID: 2408988

If you need further assistance with this matter, please reply to this email and reference [Incident ID: 39964084].

Copyright © 2019. All rights reserved.

Gmail - RUNWAYMAGAZINES.COM TRADEMARK DISPUTE - [Incident ID: 39964084]



RUNWAY MAGAZINE <infodegray@gmail.com>

---

## RUNWAYMAGAZINES.COM TRADEMARK DISPUTE - [Incident ID: 39964084]
3 messages

---

**trademarkclaims@godaddy.com** <trademarkclaims@godaddy.com>
To: infodegray@gmail.com

Fri, Sep 20, 2019 at 11:23 PM

# We've resolved your submission.

**Discussion Notes**

**Support Staff Response**

In reference to RUNWAYMAGAZINES.COM:

Dear Customer,

In accordance with our Trademark Infringement Policy - http://www.godaddy.com/gdshop/legal_agreements/show_doc.asp?se=%2B&pageid=TRADMARK%5FCOPY - we have received your counter notification regarding the website listed above.

In response to the counterclaim and as described in the above-mentioned policy **"Go Daddy will replace the removed material and cease disabling access to it in not less than 10 nor more than 14 business days following receipt of the Counter Notification unless Go Daddy first receives notice from the Complaining Party that such Complaining Party has filed an action seeking a court order to restrain the Infringer from engaging in infringing activity relating to the material on Go Daddy's system or network."**

We will contact you when the 10 to 14 day period has passed or if we are provided with the required court documentation by the complaining party.

Let us know if you have any other questions at this time.

Kindest Regards,

Doug
Trademark Department
Go Daddy Operating Company, LLC
TrademarkClaims@GoDaddy.com

**Customer Inquiry**

Notice: This email is from an external sender. COUNTER NOTIFICATION to CLAIM ID: 2408988   Identification RUNWAYMAGAZINES.COM I state under penalty of perjury that I have a good faith belief that the material was removed or disabled as a result of mistake or misidentification of the material to be removed or disabled. I own following trademarks on the name use : 4044982 ® Runway Magazine , 4240206 ® Runway Magazine, and have all legal rights to use legal own name on our web-site www.RUNWAYMAGAZINES.com, and no trademark of third party has been violated. Eleonora de Gray 23/25, rue Jean Jacques Rousseau 75001 Paris, France +33660329401 infodegray@gmail.com I state that I consent to the jurisdiction of the Federal District Court for the judicial district of Arizona, or for any judicial district in which GoDaddy may be found, and that I will accept service of process from the Complaining Party or an agent of such Party. Eleonora de Gray _____
_____ Please let me know if I filed it correctly. I'm glad to know that GoDaddy does not

## DECLARATION OF ELEONORA DE GRAY

I, Eleonora de Gray, hereby declare :

1. I'm Eleonora de Gray, married Christensen, citizen / resident of France, CEO of EURL ELEONORA DE GRAY, French company, based 23-25 rue Jean-Jacques Rousseau, 75001 Paris, France.
2. I'm Defendant / Defendants in this case.
3. I have personal knowledge of the following facts and if called as a witness I could and would testify competently thereto.
4. I declare that all presented facts, documents and other evidence in DEFENDANT'S MOTION FOR AN EXTENTION OF TIME TO PRESENT AN ANSWER FOR EURL ELEONORA DE GRAY.
5. I declare that I've been psychologically traumatized by Plaintiff's actions during this process since March 2018: distribution original complaint and first amended complaint to my partners, clients in Europe, social media networks with intentions to damage my reputation, damage my online presents and my business; publication of insulting and libel public posts on social media networks; demands for removal of my business accounts from social media networks; publication of first amended complaint on social media networks accounts for public observation with intentions to destroy my reputation; use the name of my company OFFICIAL RUNWAY MAGAZINE, instead of the name of his own business entity RUNWAY TV, since August 2018 until today to advertise and increase the sales of his products.
6. I declare that these actions of Plaintiff and his attorney leaded to serious financial loses of my companies. And as a result several employees lost their jobs and salaries and / or honorers, as my company was no longer able to afford to pay.
7. I declare that I have psychological trauma which seriously affected my health from frivolously, libel groundlessly, unjust and perjurious filed by Mr Goldstein complaints and pleadings filed in front of this Court from March 2018.
8. I declare that me and all my business entities suffer from serious financial losses on a sum 89.950 euros (eighty nine thousands, nine hundred fifty euros) in 2018, as I was not able to function as CEO of my business entities during this proceeding, and dedicate my time to development, government projects my business entities involved, and work with the clients. And financial damages related to resent attack already counted 9.100 euros in 2019 due to malicious organized attack related to false complaint submitted to hosting provider of my web-site, and removal of the vitals of my business.
9. I declare that I informed Mr Goldstein about resent Court Order September 13, 2019.
10. I declare that I did all necessary actions related to research for an attorney.
11. I declare that I received trademark infringement complaint from GoDaddy (hosting provider of my web-site www.RUWNAYMAGAZINES.com) submitted

by Mr Mazzotta September 13, 2019.

12. I declare that I verified terms and conditions of GoDaddy related to trademark / copyright claims. Proceeding time 24/48h. Which is obviously gives a conclusion that this malicious claim has been submitted at the same day Court Order about service of the complaint was issued September 11, 2019. This is also concludes that Plaintiff knew about the Court Order and decided to organize this malicious prosecution attack against me and my business.

13. I declare that I repeated my email to Mr Goldstein September 16, 2019.

14. I declare that I informed Mr Goldstein about URGENT research for an attorney and all possibilities.

15. I declare that I informed Mr Goldstein already in 2018, and repeated in recent Meet and confer that I have very tight business schedule related to fashion weeks in Milan and Paris.

16. I declare that damage of vitals of my business or putting intentionally very high pressure on me, brought me to incapacity to function as a general manager of my companies, and as a result, financial loses, as no contracts has been sign or new clients obtained during this period.

17. I declare that I informed Mr Goldstein September 16, 2019 that I plan to file Motion to dismiss and propose to continue to Meet and confer by email to avoid unnecessary burdensome and costly expenses on telephonic conferences.

18. I declare that I continued to Meet and Confer with Mr Goldstein related to discovery.

19. I declare that September 20, 2019 early in the morning I landed in Milan, Italy

20. I declare that I stayed at friends apartment. French citizens, who do not live in Milan, and have their real estate there, as they visit Milan often.

21. I declare I was alone at the apartment.

22. I declare that I informed Mr Goldstein September 20, 2019 that I'm in Milan and have very limited access to my emails with my mobile phone, and that I'm not able to see pdf attachments.

23. I declare that I informed Mr Goldstein that I'll be back to Paris by September 26, 2019, and will have more time after October 2, 2019.

24. I declare that I informed Mr Goldstein that I have very tight schedule due to my business activities, and multiple daily meetings scheduled every day during my stay.

25. I declare that I was not able to see any pdf attachments Mr Goldstein repeatedly sent to me September 20, 2019. I responded on each email with notification that I can't open and see pdf attachments. And I was not aware about that Mr Goldstein filed Motions to Compel September 20, 2019.

26. I declare that during my stay in Milan, Italy I continued to contact law firms and attorneys by phone and by email in order to find an attorney to file an answer on behalf of one of my companies, named in this complaint as Defendant.

27. I declare that Mr Goldstein maliciously raised my stress by sending repeated

emails every hour without explanation or with the notes that had no explanation about the content of his pdf files.

28. I declare that I was highly exhausted after early flight, meetings, phone calls, repeated emails of Mr Godlstein, who was sending emails every hour, to maliciously increase the pressure.

29. I declare that September 20, 2019, around 1:00 am I received several calls from an assistant of one of my employee in Paris in distress about that our company web-site www.RUNWAY MAGAZINES.com has been disabled, and down, and no one can have an access to admin panel of the web-site.

30. I declare that when I finally was able to open an email from GoDaddy around 01:00 am about that our web-site was disabled / suspended for violation, based on false claim, and no longer online, I had a massive shock, pain in the heart, and I fainted.

31. I declare that I don't know for how long I was unconscious, as I was alone in the apartment.

32. I declare that when I found myself on the floor, it was already around 2:00 am. I was not able to breath and had massive pain in the heart.

33. I declare that I didn't know who to call for urgent medical help.

34. I declare that I didn't have any medication with me, not even aspirin, which could release the pain.

35. I declare that I spent more than 30 min on the floor, trying to breath deeply, so the pain in the heart could go away.

36. I declare that when pain in the heart was reduced to acceptable level, I urgently called to my employee in the panic related to removed web-site.

37. I declare that I woke up my manager, who took urgent actions. She called to web-master who takes care about our web-site, who moved domain www.RUNWAYMAGAZINES.com from GoDaddy to French hosting provider, and used available back up (which was not recent) to restore the web-site.

38. I declare that I wrote to GoDaddy and contested their actions related to removal of our web-site, based on false complaint, and requested to give access to make a copy of our web-site. GoDaddy refused.

39. I declare that restoration of the web-site took more than 10 days, and the web-site was restored manually. And involved many extra working hours of my employees, which have high rates in France, and specially work during the weekend.

40. I declare that I couldn't sleep until 6:00 am due to very high stress and pain in the heart. Some of the scheduled meetings for the next 2 days I was obliged to cancel.

41. I declare that September 21, 2019 in the morning I went to a local pharmacy and asked something available without prescription to calm strong pain in the heart and aspirin.

42. I declare that I don't have Italian medical insurance, so I can't have medical help. Any medical help, not covered by Italian medical insurance is very costly. And I was not able to afford it it. French medical insurance is not valid in Italy.

43. I declare that I felt very weak and dizzy during next 2 days and was not in physical capacities to conduct business. Heart pain since then reduced, but continues until today.

44. I declare that web-site www.RUNWAYMAGAZINES.com was down for 2 days. And due to this absence 2 clients requested refund, as the communication was not done in timely manner.

45. I declare that I'm not a person who visits doctors and / or hospitals often, even if I have pain here and then. And I have high responsibilities in front of my employees, so I refused to consider myself weak, I didn't return to Paris and I continued to conduct business at my best physical capacities.

46. I declare that I was obliged to cancel some of the appointments in Milan, but I continued in very weak physical state to be present at business appointments until September 26, 2019, as these appointments were planned 3-4 months in advance. But these appointments didn't bring positive results, or new clients. Business contracts planned 3-4 months in advance were not signed, or postponed.

47. I declare that September 26, 2019 I came back to Paris, and was obliged urgently to request an appointment with my therapist, and request a medication to calm the heart pain and calm the nerves.

48. I declare that I had to cancel all appointments I scheduled for September 26, 2019, as fashion week in Paris has been already started. But even in very weak state I continued to have email exchanges with the different attorneys who can represent my company in front of this Court.

49. I declare that September 27, 2019 I was able to open my emails and only then I discovered that Mr Goldstein filed Motion to Compel September 20, 2019, and the Court Order with the dates for filing the opposition.

50. I declare that due to these circumstances I canceled my appointments planned until October 2, 2019 in Paris, as I had only 2 days to file an opposition to motion to compel, in my very weak physical state and continued heart pain.

51. I declare that October 4, 2019 I consulted my French attorney, who suggested to take an additional appointment with therapist and request a medical declaration to submit it to this Court, and schedule the ECG examinations.

52. I declare that an appointment is scheduled and Medical declaration will be submitted to this Court shortly in following days, as an Addendum.

53. I declare that announced cost related to removal business vitals, and damages caused by orchestrated malicious prosecution attack of Plaintiff and his attorneys on my business vitals is correct. Total loss = 9,100 euros which is equal to 10,000 $.

54. I declare that my employees also were traumatized by these actions of Plaintiff.
And all business activities and appointments didn't bring any results due to these
circumstances and my physical state.

55. I declare that my managers WITNESSED my physical condition (weakness,
dizziness, and my complains about heart pain) when I came back to Paris
September 26, 2019. One of them took me to the therapist. They observe and
witnessed my condition every day until today and can submit their declaration if
there's any question raised about mentioned events.

56. I declare that I still didn't paid this sum to my employees, as no new clients were
obtained.

57. I declare that all my contracts planned 3-4 months in advance were canceled or
suspended due to malicious prosecution actions described in this Motion.

58. I declare that these continuous malicious prosecution actions of Plaintiff and his
attorneys during this litigation is ruining my business.

I declare under penalty of perjury under the laws of the United States and the State of
California that the foregoing is true and correct.

Executed on October 09, 2019 in Paris, France.

ELEONORA DE GRAY, Declarant

Financial damages related to false complaint submitted to GoDaddy, and sabotage of Defendant's vital business assets presented on www.RUNWAYMAGAZINES.com :

Urgent work of web-master during the weekend September 21-22, 2019 (extra working hours, doubled working pay) = 2,000 euros;

Urgent work of communication manager during the weekend during the weekend September 21-22, 2019 (extra working hours, doubled working pay) = 2,000 euros;

Extra working hours (after hours) of communication manager in urgent restoration of the web-site www.RUNWAYMAGAZINES.com  September 23-27, 2019 (3h extra, every day) = 3,750 euros (250 euros / 1h);

Refund to French and Italian companies for not complying with the agreements and not-timely communication : 550 euros to Italian company, 800 euros to French company.

Total loss = 9,100 euros which is equal to 10,000 $.

**Cabinet Médical Pierre Fontaine**
**38 bis rue Pierre Fontaine, 75009 PARIS - Tél : 01 48 74 44 02**

**Dr. Catherine MAJERHOLC**                                          PARIS, le 11/10/2019
Spécialiste en médecine générale
Maître de stage des Universités
Attachée Hôpital Foch

### Certificat médical

Je, soussigné Jean-Lin Cavalerie, médecin remplaçant, certifie avoir examiné ce jour,
Mme Eleonora Eugenia Platonova Christensen de Gray
Elle me rapporte des douleurs thoraciques, qui sont réveillées à la palpation.
Je constate une anxiété manifeste lors de la consultation, dans un contexte de stress.
Après examen, j'ai remarqué que les symptômes de réponse physiologique au stress
ou à un traumatisme étaient toujours présents.

Elle est déjà venue pour une consultation, le 26 septembre 2019 à cause de douleurs cardiaques,
problèmes respiratoires, vertiges.
Elle m'a expliqué que le 20 septembre 2019, elle souffrait d'un stress élevé qui a entraîné des battements
de cœur rapides, douleurs au cœur, difficultés respiratoires, et perte de conscience.
Après examen, on a observé une pression artérielle élevée, une accélération du rythme cardiaque,
des étourdissements, une faiblesse.
Des symptômes de réponse physiologique au stress ou à un traumatisme.



Jean-Lin Cavalerie
Médecin remplaçant


751590043


1000545656

0

**Membre d'une association de gestion agréée, règlement des honoraires par chèque accepté.**

**Medical Cabinet Fontaine**
**38 bis rue Pierre Fontaine, 75009 PARIS – Tel : 01 48 74 44 02**

**PARIS, October 11, 2019**

**Dr. Catherine MAJERHOLC**
Specialist in General Medicine
University internship supervisor
Attache Hospital Foch

**Medical certificate**

I, undersigned Jean-Lin Cavalerie, substitute physician, certify having examined this day, Mrs. Eleonora Eugenia Platonova Christensen of Gray.
She reported chest pains, which are awakened on palpation.
I notice an obvious anxiety during the consultation, in a context of stress.
After examination, I noticed that the symptoms of physiological response to stress or trauma were still present.
She has already come for a consultation on September 26, 2019 because of heart pain, breathing problems, dizziness.
She explained that on September 20, 2019, she was suffering from high stress that resulted rapid heartbeat, pain in the heart, breathing difficulties, and loss of consciousness.
After examination, high blood pressure, increased heart rate, dizziness, weakness were observed.
Symptoms of physiological response to stress or trauma.

Signature
Jean-Lin Cavalerie

# EXHIBIT M



ELEONORA DE GRAY
OFFICIAL RUNWAY MAGAZINE
23/25 RUE JEAN JACQUES ROUSSEAU
75001 PARIS, FRANCE
INFODEGRAY@GMAIL.COM
www.RUNWAYMAGAZINES.com

Law Offices of Willian D. Goldstein
William D. Goldstein (SBN. 279723)
4030 Sawtelle Blvd.
Los Angeles, CA 90066-5408

September 16, 2019

Mr Goldstein,
Following FRCP and Local Rule 37-1 related to the required Meet and Confer process prior to the filing of Motions to Dismiss, I'd like to inform you that at the beginning of October I plan to file a Motion to Dismiss for lack of merit.

The motion will be filed from me, Eleonora de Gray, a physical person, presented pro se.
As previously discussed, to facilitated the Meet and Confer Rule, the preferred method to do so is by email. As you already been informed, any French citizen, when participate in international litigation, should have his attorney, translator and typist to be present to translate and record the conversation. According to the agreement between the parties communication can be also done by email, as it recorded for any further legal proceedings.
 You accepted this form of conduct in the past, so I continue to follow this agreement and conduct Meet and Confer Rule prior filing of Motion to Dismiss by email.

The motion to dismiss will consist the evidence and facts presented in motion to dismiss September 12, 2018 (Doc.48).

And in addition I'll present :

– Several screenshots of Mr Mazzotta instagram and facebook accounts, related to his activities;

– Demand of Mr Mazzotta to GoDaddy – hosting provider for my web-site www.RUNWAYMAGAZINES.com, to remove my web-site based on false information and statements, made at the beginning of September 2019. Mr Mazzotta claimed that he owns trademark RUNWAY MAGAZINE, and that complaint he submitted in March 28, 2018 was never answered by me, so he has default decision of the Court about all intellectual properties own by me and my company, that hosting, social media accounts etc should be removed by the providers.

Please let me know if you have any questions or matters about Motion to Dismiss you'd like to discuss before filing.

September 16, 2019
Paris, France

Eleonora de Gray

 **Gmail**

**Eleonora de Gray <pomconfi2@gmail.com>**

## Meet and Confer

**William Goldstein** <wdgoldstein@wdgoldstein.com>  Mon, Sep 16, 2019 at 5:17 PM
To: RUNWAY MAGAZINE <infodegray@gmail.com>

Dear Ms. De Gray:

Please be advised that the Court's Order establishing **"Ms. De Gray's previously filed Answer to the FAC (Dkt. 40) will be deemed the operative answer to plaintiff's FAC"** prohibits you personally from filing yet another Motion to Dismiss. That said, Your attorney MAY file such a motion on behalf EURL Eleonora De Gray.

Please consult your attorney to confirm this information.

I look forward to communications from this attorney.

As to Court ordered Telephonic Meet and Confers, it is NOT within my discretion to waive the Rules of the Court. Nor is it required that I follow your interpretation of French Law. When required, I will advise you of my wish to Meet and Confer and propose days and times for me to call. You have already advised me and the Court in sworn filings that you are fluent in English hence a translator will not be required. It is my hope that your new attorney will take on the personal case as well hence Meet and Confer sessions will be between the two of us.

Thank You,

William D. Goldstein

LAW OFFICES OF WILLIAM D. GOLDSTEIN

4030 Sawtelle Blvd.

Los Angeles, CA 90066

Phone: (310) 437-0108

FAX:   (323) 372-3589

Mobile:(310) 569-3049

email  wdgoldstein@wdgoldstein.com

CONFIDENTIAL / PRIVILEGED



ELEONORA DE GRAY
OFFICIAL RUNWAY MAGAZINE
23/25 RUE JEAN JACQUES ROUSSEAU
75001 PARIS, FRANCE
INFODEGRAY@GMAIL.COM
www.RUNWAYMAGAZINES.com

Law Offices of Willian D. Goldstein
William D. Goldstein (SBN. 279723)
4030 Sawtelle Blvd.
Los Angeles, CA 90066-5408

September 18, 2019

Mr Goldstein,
I'm glad that you decided to responded to FRCP and Local Rule 37-1 related to the required Meet and Confer process prior to the filing of Motions to Dismiss for lack of merit, I, defendant pro se, plan to file at the beginning of October.

Although it is not clear to me why you came to discussion about discovery requests. All discoveries were suspended until further Court Order about the proceeding. This includes special Order for discoveries. Please consult Court Order at November 29, 2018, and Court Order September 12, 2019 : "The court will issue a further *proceedings order* upon the filing of the declaration referenced in paragraph 2 above."
You interpreted the Court Order one way, I interpreted it differently – I follow exactly the instructions of the Order from September 2019.

So this discussion should be related to the Motion to Dismiss I plan to file at the beginning of October.

If you plan to file a Motion to Compel it is of course your choice.
Concerning my responses under US law. Mr Goldstein, in Federal cases when citizen / business entities of other countries are involved, Federal Court follows INTERNATIONAL law, it means when US law accepts laws of other countries in proceedings. I already responded to your discovery requests : many of them are not related to the case, they are related to my business and abusive as they directed to recover client database, another ones simply impossible to deliver as they don't exist, and another ones related to international journalists multiple laws, they are also US law (please see my responses), and another ones related to criminal file submitted to LAPD (Los Angeles Police Department – US law). You may consult US law about how criminal cases should be publicly exposed, shared with third party, you, this Court (this is civil Court, not criminal) etc. They needed special permission / authorization and really to be necessary and RELATED to the case.

If you really would like to discuss an amicable agreement before bring it before Judge, we can start from very beginning. You stated false fact that I registered my trademarks AFTER I gave my signature on "license" contract. You perfectly know the dates of the trademarks registered – November 6, 2013. It is a 4 months BEFORE I gave my signature. You wrote multiple allegations without any material facts to support them etc. You know that all allegations should be supported by material facts. You also know that this contract has no legal value, as Mr Mazzotta signed it in April 2017, after my attorney noted to him that on the contract he sent to her there's no his signature. In addition there's no legal witness's signatures presented in this contract from the side of Mr Mazzotta, neither from my side. In addition original copy of the contract has never been sent to me. So the contract didn't create any bond, and can't be a legal ground. These facts are matter to this Court, even I presented them pro se.
We can of course continue to argue before Judge but please be prepared that in my Motion to Dismiss I'll file additional information related to abuses of process: report of Mr Mazzotta to GoDaddy under perjury – US law, in September 2019, where he included false facts about that he owns RUNWAY MAGAZINE trademark (James Buccelli until today owns it, and uses it at his own will, the way he finds it necessary), and that I didn't responded to his complaint, and Court ORDERED already the default decision.
And what is most important I'll file multiple screenshots of Mr Mazzotta's PUBLIC instagram account. In your complaint you stated that audience of Mr Mazzotta is about million followers. So these posts of Mr Mazzotta were promoted to 1 million followers.
I believe that you know what posts I plan to file – different promotions of porno actresses and porno models (including promotion of their porno accounts on instagram and twitter), public promotion of self-harm, and public promotion of **OPIOIDS** (illegal drug - heroin). These posts are not related to fashion, or activities you claimed before this Court Mr Mazzotta exercises.
If you believe that these screenshots of business activities of Mr Mazzotta's and use of his trademarks RUNWAY / RUNWAY TV for promotion related to pornography and drugs will only help to this Court to give decision in his favor, than there's no matter to discuss it further.
I'll obviously file them in my Motion to Dismiss for lack of merit.


PLEASE NOTE If you really would like to open amiable discussion – I'm open to do so.
I propose following :
A MUTUAL AGREEMENT which will be presented to Judge with Motion to cancel the complaint, as mutual agreement has been achieved.
This mutual agreement should include several points :

- Peaceful co-existence on the market. It means Mr Mazzotta should use his trademarks RUNWAY / RUNWAY TV on his web-sites, communications, and on the web-sites he distributes his pdf files (Magcound and Magster). He is only interested in possession of the trademark RUNWAY MAGAZINE, as you mentioned yourself in one of your filings. So until than he can't use RUNWAY MAGAZINE in his communication and his web-sites, as it stays in USPTO CEASE AND DESIST ORDER (US law) addressed to him, and which is NOT respected by Mr Mazzotta until today as he continues to use RUNWAY MAGAZINE name of all his web-sites and social media accounts. I'll use my trademarks RUNWAY MAGAZINE / OFFICIAL RUNWAY MAGAZINE / RUNWAY FRANCE / RUNWAY MAGAZINE FRANCE .... on my web-sites and all social media accounts, as I own them from November 2013 ( First Use in commerce registered 1995, International commerce registered  2007). Mr Mazzotta would have to remove RUNWAY MAGAZINE name from his web-sites and social media accounts. I'll remove RUNWAY name from my web-sites. So no confusion between our media can be made.
- Mr Mazzotta will have to remove defamatory statement from runwayfrance.com, I'll remove articles published on runwaymagazines.net with mentioned screenshots of Mr Mazzotta's business activities related to porno and drugs (I'm not responsible / administrating any other publications).
- Mr Mazzotta will have to swear that he'll stop sending defamatory requests to social media networks related to my accounts, to my hosting providers etc. I'll swear that I'll do the same – not myself, nor my French attorney or her assistant will contact parties involved in Mr Mazzotta's business activities, or sending requests to social media networks.

You are more than welcome to come with additional points which would help peaceful co-existence in the market, and come with different propositions and a first draft of this agreement.

If you would really like to go for amiable agreement you probably would like to discuss it with Mr Axelrod and Mr Mazzotta's family before getting back to me with an answer.

I believe that my proposition is very reasonable according to circumstances. Otherwise we'll proceed the way we both plan to proceed.
Please also note that in addition to my Motion to Dismiss and a Motion to Dismiss from an attorney, who'll represent my company, there's also matter in discussion to proceed with demand of penalties for perjury in front of this Court. All of this could be avoided if MUTUAL AGREEMENT can be achieved.

Kind regards

September 18, 2019
Paris, France



**Eleonora de Gray <pomconfi2@gmail.com>**

---

## Meet and Confer

**William Goldstein** <wdgoldstein@wdgoldstein.com>        Mon, Sep 16, 2019 at 8:00 PM
To: RUNWAY MAGAZINE <infodegray@gmail.com>

Ms. De Gray,

Do as you wish on MTD. Don't say I didn't warn you.

As to Meet and Confer I refer you to the Order on the Motion to Compel (attached). Sepcifically LR 37-1

L.R. 37-1 Pre-Filing Conference of Counsel. Prior to the filing of any motion relating to discovery pursuant to F.R.Civ.P. 26-37, counsel for the parties shall confer in a good faith effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible. It shall be the responsibility of counsel for the moving party to arrange for this conference. If both counsel are located within the same county of the Central District, the conference shall take place in person at the office of the moving party's counsel, unless the parties agree to meet someplace else. **If both counsel are not located within the same county of the Central District, the conference may take place telephonically.** Unless relieved by written order of the Court upon good cause shown, counsel for the opposing party shall confer with counsel for the moving party within ten (10) days after the moving party serves a letter requesting such conference. The moving party's letter shall identify each issue and/or discovery request in dispute, shall state briefly with respect to each such issue/request the moving party's position (and provide any legal authority which the moving party believes is dispositive of the dispute as to that issue/request), and specify the terms of the discovery order to be sought.

I will Email you dates and times and request you select one in the next few days for a telephonic Meeting of Counsel regarding your discovery responses. The time for you to allow said phone call expired 1 day after the Court stayed this case. Hence I again request that we arrange such a call.

William D. Goldstein

LAW OFFICES OF WILLIAM D. GOLDSTEIN

4030 Sawtelle Blvd.

Los Angeles, CA 90066

Phone: (310) 437-0108

FAX:   (323) 372-3589

Mobile:(310) 569-3049

email  wdgoldstein@wdgoldstein.com

CONFIDENTIAL / PRIVILEGED

The contents of this email may contain privileged, confidential or otherwise restricted information, and are intended solely for the use of the person or entity to which it is addressed. Copying this email or disclosing its contents to anyone other than its intended recipient is strictly prohibited under the laws of the United States and of the various States. In the event you have received this communication by mistake, please delete or otherwise destroy it and advise the sender at wdgoldstein@wdgoldstein.com

**From:** RUNWAY MAGAZINE <infodegray@gmail.com>
**Sent:** Monday, September 16, 2019 10:43 AM
**To:** William Goldstein <wdgoldstein@wdgoldstein.com>
**Subject:** Re: Meet and Confer

Mr Goldstein,

There's nothing in the Court Order states that this Court PROHIBIT to me to file a Motion to Dismiss.

In addition please consult the Rules about filing Motion to Dismiss.

Motion to Dismiss can be filed at any moment during the Court proceeding, even after the Answer has been filed.

This Court NEVER ordered any telephonic Meet and Confer.

And as we already discussed this subject, meet and confer is accepted by email, at this Court.

I didn't propose to follow a French law, please follow Federal law concerning Meet and confer with resident of other country during the litigation.

In addition I don't see the need to have unnecessary expenses for me to have my French attorney, translator and typist to be present during this phone conversation.

This discussion and explanation has been done already. And Meet and confer has been done by email as well. And this form of Meet and Confer was accepted by this Court,

in order TO AVOID UNNECESSARY EXPENSES.

I took a good note that you refuse to conduct Meet and Confer prior filing of my Motion to Dismiss for lack of merit.

Please note that I informed you about the filing, and I informed you about what will be included.

[Quoted text hidden]
[Quoted text hidden]

LAW OFFICES OF

**WILLIAM D. GOLDSTEIN**

4030 Sawtelle Blvd.
LOS ANGELES, CALIFORNIA 90066
TELEPHONE: (310) 437-0108
FACSIMILE: (323) 372-3589

E-MAIL: WDGOLDSTEIN@WDGOLDSTEIN.COM

September 18, 2019

MEET AND CONFER LETTER-MTD

ELEONORA DE GRAY                                    Via Email: infodegray@gmail.com
OFFICIAL RUNWAY MAGAZINE
23-25, rue Jean Jacques Rousseau
75001 Paris, France

Dear Ms. De Gray:

This letter is intended to conform with both the FRCP and Local Rule 37-1 related to the required Meet and Confer process prior to the filing of Motions to Compel, et al under FRCP Rule 37.

I am on notice of your intent to file yet another Motion to Dismiss the personal case and your proposed instructions to Counsel to file a Motion to Dismiss for EURL Eleonora De Gray. That said, to simplify matters, please keep any discussion of said motions, especially Meet and Confer letters, separate from those related to discovery issues. This will create a much cleaner record for the Court.

Please state explicitly the basis for your Motion to Dismiss. In doing so, I humbly request that your letter stay strictly to the factual basis and omit the often derogatory comments in your previous filings on the matter. Also, please note that the Court in its Order of September 11, 2019 has stated "Ms. De Gray's previously filed Answer to the FAC (Dkt. 40) will be deemed the operative answer to plaintiff's FAC." This means that you have placed yourself under the Jurisdiction of the Court. Hence, both the Service issues and the Jurisdictional arguments in your previous Motions to Dismiss are moot and you should not waste your time repeating them.

As relates to the case against the EURL, your selected Counsel will be the party required to instigate and participate in the Meet and Confer process. Once he has noticed his participation, I will not be allowed to discuss that aspect of case with you as you will then be a represented party. Please limit out Meet and Confer discussions to the case against you personally for which you have filed an answer.

If you have retained Counsel for EURL Eleonora De Gray at this time I would very much appreciate it if you would advise me of his name and contact information so that I can call to say hello and discuss the case. This will, by law, start the Rule 26 process again for the EURL aspects of the case. This begins despite his filing of MTD as per the April 16, 2018 Order:

"**discovery shall not be stayed while any motion is pending, including any motion to dismiss and/or motion for protective order**"

      I look forward to your response to this Meet and Confer letter.

      Nothing herein is a waiver of any of my client's rights, all of which are expressly reserved herein.

Sincerely:

William D. Goldstein
Attorney for Runway TV, LLC

 Gmail

**Eleonora de Gray <pomconfi2@gmail.com>**

---

## Meet and Confer

**William Goldstein** <wdgoldstein@wdgoldstein.com>                    Tue, Sep 17, 2019 at 4:46 PM
To: RUNWAY MAGAZINE <infodegray@gmail.com>

Ms. De Gray:

Thank you for notice of your intent to file a Motion to Dismiss. Please advise me, as required by a Meeting of Counsel, the specific basis for said motion to see if we can come to an amical agreement prior to the Court getting involved.

In that regard, please see and respond to the attached Meet and Confer letter related to the discovery suspended when the Court issued a stay on this case back in December.

FYI: As far as I am informed, you do not need to sign and file with the Court copies of the Summons received by Email yesterday. In that you have written that the documents were, "Well received" is sufficient so long as you are not going to renew you service of summons and complaint objections now that the Order of the Court on 9/11/2019, has been satisfied.

[Quoted text hidden]

---

 **Meet and Confer Post Stay.pdf**
524K

LAW OFFICES OF
**WILLIAM D. GOLDSTEIN**
4030 Sawtelle Blvd.
LOS ANGELES, CALIFORNIA 90066
TELEPHONE: (310) 437-0108
FACSIMILE: (323) 372-3589

E-MAIL: WDGOLDSTEIN@WDGOLDSTEIN.COM

September 19, 2019

MEET AND CONFER LETTER-MTD

ELEONORA DE GRAY                                          Via Email: infodegray@gmail.com
OFFICIAL RUNWAY MAGAZINE
23-25, rue Jean Jacques Rousseau
75001 Paris, France

Dear Ms. De Gray:

        This letter is intended to conform with both the FRCP and Local Rule 37-1 related to the required Meet and Confer process prior to the filing of Motions to Compel, et al under FRCP Rule 37.

        The purpose for a Meeting of Counsel, also known as a Meet and Confer exchange is to examine the issues in the proposed motion to see if they can be rectified without the need for the Courts involvement. That said I repeat my prior request.

        Please state explicitly the basis for your Motion to Dismiss. In doing so, I humbly request that your letter stay strictly to the factual basis and omit the often derogatory comments in your previous filings on the matter. Also, please note that the Court in its Order of September 11, 2019 has stated "Ms. De Gray's previously filed Answer to the FAC (Dkt. 40) will be deemed the operative answer to plaintiff's FAC." This means that you have placed yourself under the Jurisdiction of the Court. Hence, both the Service issues and the Jurisdictional arguments in your previous Motions to Dismiss are moot and you should not waste your time repeating them.

        Nothing herein is a waiver of any of my client's rights, all of which are expressly reserved herein.

Sincerely:

William D. Goldstein
Attorney for Runway TV, LLC



ELEONORA DE GRAY
OFFICIAL RUNWAY MAGAZINE
23/25 RUE JEAN JACQUES ROUSSEAU
75001 PARIS, FRANCE
INFODEGRAY@GMAIL.COM
www.RUNWAYMAGAZINES.com

Law Offices of Willian D. Goldstein
William D. Goldstein (SBN. 279723)
4030 Sawtelle Blvd.
Los Angeles, CA 90066-5408

September 19, 2019

Mr Goldstein,
Thank you very much for your notification. Motion to Dismiss can be filed any time during the litigation. Please consult Local Rules, even the Answer had been filed. This Court only noted that Answer had been filed.
Please note that I didn't propose any settlement, I proposed " amicable agreement".
I appreciate that you decided separate Meet and Confer discussions prior 2 different motions you and me plan to file, so please don't mix matters from one meet and confer with another. As I read you continue to discuss matters of MTD in Meet and confer letter related to Motion to compel (discovery) you plan to file.

So please let me know should I take a note that you REFUSED my proposition made in good faith to solve this matter with  amicable agreement before bring it before Judge.

If not, and you still would like to discuss this subject, please note that you can discuss it only with me, and let me know if you'd like me to resubmit it in separated letter with note of confidentiality.

An attorney who'll enter to represent the company will proceed with other matters. I leave this at the discretion at the moment.

Kind regards

September 18, 2019
Paris, France

Eleonora de Gray



ELEONORA DE GRAY
OFFICIAL RUNWAY MAGAZINE
23/25 RUE JEAN JACQUES ROUSSEAU
75001 PARIS, FRANCE
INFODEGRAY@GMAIL.COM
www.RUNWAYMAGAZINES.com

Law Offices of Willian D. Goldstein
William D. Goldstein (SBN. 279723)
4030 Sawtelle Blvd.
Los Angeles, CA 90066-5408

September 20, 2019

Mr Goldstein,
PLEASE NOTE that I'll have limited access to my email. I'm in Milan, Italy for the fashion week, and I won't be able to respond to you until September 26, 2019.

PLEASE NOTE that from September 26, 2019 I'll be at Paris fashion week. And I won't be able to respond to you daily either.

PLEASE NOTE that I proposed amiable solution and you refused it. The amiable solution do not related to any settlement.

PLEASE NOTE that any discussion related to settlement related to malicious prosecution action against me and my company in this Court, as you and plaintiff aware that complaint is meritless. will be discussed with an attorney who'll enter and represent my company.

PLEASE NOTE that October 12, 2019 an attorney on behalf of my company will have to file an answer. That would be motion to dismiss. So it means he'll have to conduct meet and confer at the beginning of October. An attorney needs time to study the case.

PLEASE NOTE that I consider this Meet and confer conduction over, as during our exchange you didn't willing discuss any subject related to motion to dismiss I plan to file, you repeated your opinion about my legal rights to file Motion to Dismiss, and your interpretation of Court Order.


Kind regards

Time stamp : 08:35 am
September 20, 2019
Milan, Italy


Eleonora de Gray

Name: ELEONORA DE GRAY

Address: 23/25 RUE JEAN JACQUES

ROUSSEAU, 75001 PARIS, FRANCE

Phone: +33660329401

Fax: _____

In Pro Per

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| Runway TV, LLC, Vincent Mazzotta | CASE NUMBER: |
|---|---|
| Plaintiff | 2:18-cv-02503-FMO-JC |
| v. | |
| Eleonora De Gray, Does and Eurl Eleonora De Gray | **PROOF OF SERVICE BY EMAIL** |
| Defendant(s). | |

Court: California Central District Court

Referring Judge: Jacqueline Chooljian

Presiding Judge: Fernando M. Olguin

I, Eleonora de Gray, declare as follows :

My address is 23-25 rue Jean Jacques Rousseau, 75001, Paris, France , where the mailing described below took place.

CV-127 (09/09)                **PLEADING PAGE FOR A SUBSEQUENT DOCUMENT**

1  On October 16th, 2019, I served the documents described as :

2

3  DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF MERIT

4  AND MALICIOUS PROSECUTION

5  DECLARATION OF ELEONORA DE GRAY

6  PROPOSED ORDER

7  EXHIBITS

8

9  on all interested parties in this action by Email, I caused such envelope to be delivered electronically

10  to the offices of the bellow named addressee(s):

11

12  William Goldstein <wdgoldstein@wdgoldstein.com>

13  Law Offices of Willian D. Goldstein

14  William D. Goldstein (SBN. 279723)

15  4030 Sawtelle Blvd.

16  Los Angeles, CA 90066-5408

17  Attorney of Plaintiff, Runway Beauty Inc, Vincent Mazzotta, DOCs 1-10

18

19  I declare under penalty of perjury that the foregoing is true and correct.

20

21  EXECUTED ON : October 16th, 2019 at Paris, France.

22  Time stamp: 22:30h

23

24  By _____

25  Eleonora de Gray

26

27

28